**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **VINCENT DOAN,** | : | |
| | : | |
| **Petitioner,** | : | |
| v. | : | **Case No.  00-CV-727** |
| | : | |
| **HAROLD CARTER, WARDEN,** | : | **JUDGE BECKWITH** |
| | : | |
| **Respondent.** | : | **MAGISTRATE JUDGE HOGAN** |

---

**PETITIONER VINCENT DOAN'S TRAVERSE**
PART I

---

Kort Gatterdam (0040434)
KRAVITZ & KRAVITZ, LLC
145 E. Rich St.
Columbus, Ohio 43215
Tel:  (614) 464-2000
Fax:  (614) 464-2002

Counsel for Petitioner

# TABLE OF CONTENTS

*STATEMENT OF THE CASE AND FACTS*................................................................. *1*

*STANDARD OF REVIEW & PROCEDURAL ISSUES* ................................................ 5

*SUMMARY OF ARGUMENT* ................................................................... 8

*GROUNDS FOR RELIEF* .....................................................................*10*

    FIRST GROUND FOR RELIEF .........................................................10

    PETITIONER WAS DEPRIVED OF HIS RIGHT TO DUE PROCESS
    AND THE RIGHT TO A FAIR TRIAL, UNDER THE FIFTH AND
    FOURTEENTH AMENDMENTS, WHEN THE TRIAL COURT GAVE
    THE JURY AN IMPROPER, MISLEADING, AND CONFUSING
    INSTRUCTION WHICH LESSENED THE STATE'S BURDEN OF
    PROOF FOR A CONVICTION.  THE TRIAL COURT'S ERRORS ARE
    STRUCTURAL, NOT SUBJECT TO HARMLESS ERROR ANALYSIS. ...................10

        A.    The Ohio Court of Appeals acted contrary to clearly
        established federal law by subjecting a defective reasonable doubt
        instruction to harmless error analysis when automatic reversal was
        required under *Sullivan v. Louisiana*, 508 U.S. 275 (1993). ...............10

        B.    The Ohio Court of Appeals acted contrary to clearly
        established federal law in upholding Petitioner's conviction
        because the facts of this case are materially indistinguishable from
        *Sullivan, supra*. ...............................................................15

        C.    Even if the defective jury instruction in Petitioner's case did
        not fall within the automatic reversal rule of *Sullivan*, the
        instructions at Petitioner's trial were still constitutionally defective
        and the Ohio Court of Appeals acted contrary to clearly established
        federal law by failing to apply the "harmless beyond a reasonable
        doubt" standard of *Chapman v. California*, 405 U.S. 1020 (1972). ...............17

        D.    Even if the Ohio Court of Appeals applied the correct rules
        of law from United States Supreme Court precedent, the
        application was objectively unreasonable and Petitioner is
        accordingly entitled to relief under *Williams v. Taylor, supra*. ...............19

E.    Conclusion. ........................................................................20

SECOND GROUND FOR RELIEF .................................................20

THE STATE VIOLATED PETITIONER'S RIGHTS UNDER THE DUE
PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT AND
THE RIGHT TO COUNSEL CLAUSE OF THE SIXTH AMENDMENT
BY SUPPRESSING FAVORABLE EVIDENCE MATERIAL TO THE
ISSUE OF HIS GUILT. ...................................................................20

A.    Evidence that would have impeached the only state's
witness who claimed that Doan was the man seen hitting Culberson
just before she disappeared. .........................................................22

B.    Evidence of prior inconsistent accounts given to police and
prosecutors by crucial state's witness Lori Baker. .........................24

C.    Evidence that a prosecutor promised state's witnesses Lori
Baker and Vicki Watkins that they would not be prosecuted if they
implicated Doan. ..........................................................................27

D.    Evidence that Carrie Culberson confided in a friend that
she wanted to leave Blanchester and make a new start elsewhere. ....28

E.    Statements from two witnesses that contradict key aspects
of the testimony of state's witnesses Lori Baker and Vicki
Watkins. .......................................................................................29

F.    Evidence that would have impeached the testimony of a
lead sheriff's investigator. ............................................................31

G.    Evidence that a key state's witness was hypnotized in an
effort to refresh her memory and given a voice stress test for
veracity. .......................................................................................32

H.    Evidence that the prosecution made promises to jailhouse
informant Mitchell Epperson in exchange for his testimony against
Petitioner. ....................................................................................34

I.    Conclusion. .........................................................................37

THIRD GROUND FOR RELIEF .....................................................40

PETITIONER'S CONVICTIONS WERE OBTAINED IN VIOLATION OF HIS FEDERAL CONSTITUTIONAL RIGHTS BECAUSE, CONSIDERED COLLECTIVELY, THE STATE SUPPRESSED MATERIAL EXCULPATORY EVIDENCE. ................................................................40

FOURTH GROUND FOR RELIEF ...........................................................................40

THE GOVERNMENT'S FAILURE TO DISCLOSE MATERIAL IMPEACHMENT AND EXCULPATORY EVIDENCE RENDERED PETITIONER'S COUNSEL UNABLE TO PROVIDE EFFECTIVE ASSISTANCE OF COUNSEL AT HIS TRIAL IN VIOLATION OF PETITIONER'S RIGHTS UNDER THE SIXTH AND FOURTEENTH AMENDMENTS................................................................................................................40

## SEE SECTION 2 OF BRIEF FILED CONCURRENTLY

FIFTH GROUND FOR RELIEF ....................................**Error! Bookmark not defined.**

PETITIONER WAS DEPRIVED OF HIS FEDERAL CONSTITUTIONAL RIGHTS TO CONFRONTATION, CROSS-EXAMINATION AND A FAIR TRIAL BECAUSE THE TRIAL COURT ALLOWED THE STATE TO ADMIT UNRELIABLE HEARSAY STATEMENTS WHICH DID NOT CONFORM TO THE HEARSAY EXCEPTIONS IN THE RULES OF EVIDENCE.**Error! Bookmark not defined.**1

SIXTH GROUND FOR RELIEF ..................................................................................49

PETITIONER WAS DEPRIVED OF HIS DUE PROCESS CLAUSE RIGHT TO A FAIR TRIAL BECAUSE THE TRIAL COURT ALLOWED THE STATE TO ADMIT   REPEATED TESTIMONY ABOUT ALLEGED PRIOR ABUSIVE ACTS BY PETITIONER DOAN AGAINST CARRIE CULBERSON.............................................................................49

SEVENTH GROUND FOR RELIEF ..........................................................................53

REPEATED MISCONDUCT OF THE PROSECUTION THROUGHOUT PETITIONER'S TRIAL DEPRIVED HIM OF THE RIGHT TO A FUNDAMENTALLY FAIR TRIAL GUARANTEED BY THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT........................................................................................................53

    A.      Repeated introduction of others acts evidence and hearsay. ...................54

B. Improper closing argument. ...................................................................54

C. Introduction of a photograph of Doan's tattoo. ......................................55

D. Introduction of the photograph of Carrie Culberson. ..............................56

E. Miscellaneous misconduct. ....................................................................57

F. Conclusion. ............................................................................................57

EIGHTH GROUND FOR RELIEF ...................................................................58

PETITIONER WAS DENIED HIS SIXTH AND FOURTEENTH
AMENDMENT RIGHTS TO CONFRONTATION, CROSS-
EXAMINATION, AND DUE PROCESS WHEN THE STATE COURTS
REFUSED TO ALLOW TRIAL OR APPELLATE COUNSEL TO VIEW
WITNESS STATEMENTS FOR INCONSISTENCIES PRIOR TO
CROSS EXAMINATION AND ON DIRECT APPEAL. ................................58

NINTH GROUND FOR RELIEF ......................................................................61

PETITIONER WAS DEPRIVED OF HIS FIFTH, SIXTH, AND
FOURTEENTH AMENDMENT RIGHTS TO DUE PROCESS AND A
FAIR AND IMPARTIAL TRIAL WHEN MEDIA COVERAGE SO
PERMEATED THE COMMUNITY THAT VENUE SHOULD HAVE
BEEN CHANGED SINCE A FAIR AND IMPARTIAL JURY COULD
NOT BE SEATED AND THE TRIAL COURT'S HANDLING OF VOIR
DIRE ONLY MAGNIFIED THE PREJUDICE. ............................................61

A. Introduction. .........................................................................................61

B. Caselaw. ...............................................................................................62

C. Presumed Prejudice. ............................................................................63

D. Actual Prejudice. ..................................................................................69

TENTH GROUND FOR RELIEF .....................................................................72

MISCONDUCT BY MEMBERS OF THE JURY DENIED PETITIONER
HIS RIGHTS TO DUE PROCESS UNDER THE FOURTEENTH
AMENDMENT AND HIS RIGHT TO A DETERMINATION BY A

FAIR AND IMPARTIAL JURY UNDER THE SIXTH AND
FOURTEENTH AMENDMENTS. ...............................................................................72

    A.    Affidavit of Carolyn Evans. ...................................................................72

    B.    Affidavit of Tony Frazier. .......................................................................72

    C.    Affidavit of Woody Schlicht. ..................................................................73

ELEVENTH GROUND FOR RELIEF ...........................................................................75

WHEN THERE IS INSUFFICIENT EVIDENCE TO SHOW PROPER
VENUE AND NO EVIDENCE TO SHOW THAT THE ALLEGED
KIDNAPPING WAS MORE THAN INCIDENTAL TO THE CHARGED
CRIME OF AGGRAVATED MURDER, PETITIONER'S
CONVICTIONS FOR KIDNAPPING AND AGGRAVATED MURDER
ARE NOT SUFFICIENTLY PROVED IN ACCORDANCE WITH THE
DUE PROCESS CLAUSE. ...........................................................................................75

TWELFTH GROUND FOR RELIEF ............................................................................77

PETITIONER DOAN WAS DEPRIVED OF HIS SIXTH AND
FOURTEENTH AMENDMENT RIGHTS TO THE EFFECTIVE
ASSISTANCE OF COUNSEL AT TRIAL. ...................................................................77

THIRTEENTH GROUND FOR RELIEF ......................................................................79

PETITIONER'S CONVICTIONS ARE INVALID AS A RESULT OF
THE CUMULATIVE EFFECT OF THE CONSTITUTIONAL ERRORS
SET OUT IN GROUNDS ONE THROUGH ELEVEN. .................................................79

**<u>STATEMENT OF THE CASE AND FACTS</u>**

Petitioner, Vincent Doan (Doan), is currently confined in the Mansfield Correctional Institution.[1]  He was capitally indicted and convicted in Clinton County, Ohio.  He was sentenced to life without parole (LWOP) in Clinton County Common Pleas Court on November 17, 1997.

This case arises from the disappearance of Clarissa Ann (Carrie) Culberson of Blanchester, Ohio.  Culberson was allegedly last seen in Blanchester in the late night/early morning hours of August 28 – 29, 1996.  Doan was Culberson's boyfriend at the time of her disappearance.

Culberson's disappearance was a *cause celebre* in Clinton County and the surrounding southwest Ohio area.  Doan was the focus of suspicion early on.  The story of the investigation dominated the local media for months.  It was the subject of intense coverage by local and area newspapers, radio stations and television stations – including national television talk shows – that served Clinton County.  It is not overstatement to say that there was saturation coverage in the media of every detail of the investigation into Culberson's disappearance and Doan's subsequent arrest, indictment and prosecution.

A Clinton County grand jury indicted Doan on two counts of aggravated murder in Culberson's death.  The first count under R.C. §2903.01(A) charged aggravated murder with prior calculation and design.  Two capital specifications charging killing to escape detection and killing of a witness to prevent testimony, R.C. §§2929.04(A)(3), (8) were attached to count one.  A second count under R.C. §2903.01(B) charged aggravated felony murder.  Three capital specifications charging killing to escape detection, killing while committing a felony and killing

---

[1]     At the time of filing the habeas petition, Doan was confined in the Southern Ohio Correctional Facility but has recently been transferred.

of a witness to prevent testimony, R.C. §§2929.04(A)(3), (7), (8) were attached to count two. Doan was also charged with four separate counts of kidnapping under R.C. §§2905.01(A)(3), (A)(5), (B)(1) and (B)(2).

Doan's trial began on July 14, 1997 and went to the jury on August 4, 1997. Fifty-two total witnesses testified for the prosecution and defense in a case where the issue of whether Culberson was dead was hotly contested. The state presented numerous witnesses who testified about alleged prior incidents where Doan allegedly abused Culberson. It was the State's theory that Carrie, who had left home several times for North Carolina, was killed by Doan. State's witnesses also testified that Culberson claimed she would never leave Blanchester because of fear that Doan would harm her family if she did. E.g. (Trial Transcript at 1942 –1944, 2031-2036; 2063-2066; 2078-2095; 2146; 2191-2196; hereafter T.r. __).

Key state's witnesses were: Billie Jo Brown, who said she saw Culberson fighting with a man identified as Doan in the early morning hours of August 29, 1996, the last time Culberson was seen in Blanchester. (T.r. 1485-1493); Vicki Watkins and Lori Baker, who claimed that Doan came to Tracey Baker's (his brother) home around 3:15 a.m., August 29th, with blood smeared on his arms, chest and face (T.r. 1544-1553, 1577, 1671-1688); and Mitchell Epperson, a jailhouse informant who claimed Doan made incriminating statements about killing Culberson. (T.r. 2316-2319).

The defense countered with over twenty witnesses who testified, among other things, that they had seen Culberson and/or her car, a red Honda CRX, after the date she disappeared. (T.r. 2512-2863). The defense case focused on the fact that a number of disinterested and unbiased persons, including a police officer, believed they had seen either Carrie or her car since the time she disappeared (T.r. 2509-2870). The defense presented contradictory evidence about the

alleged argument the night Carrie disappeared and testimony that Carrie left Doan's house in a new black pickup truck (T.r. 2870-2934). Doan's father and stepmother provided alibi testimony (T.r. 2958-3023). The defense also presented evidence that contradicted several key State's witnesses (T.r. 3023-3110). The defense concluded by calling the State's crime lab expert to testify there was no physical evidence (blood, DNA, hair, etc.) to show Carrie was deceased or, if deceased, that Doan was responsible for her death (T.r. 3111-3135).

Jurors agonized over the conflicting evidence. Finally, on August 7, 1997, after four days of deliberations, the jury found Doan not guilty of one count of aggravated murder (count 1), guilty of one count of aggravated murder with one death penalty specification (count two), guilty of three counts of kidnapping (counts three, five, and six) and not guilty of one count of kidnapping (count four).

The penalty phase began on November 3, 1997 and concluded on November 5, 1997 with a jury recommendation of life without parole. (T.r. 3852). On November 17, 1997, the trial court sentenced Doan to life without parole consecutive to nine years for kidnapping. (T.r. 3857 – 3864).

Doan timely appealed his convictions. The state court of appeals denied Doan's direct appeal by opinion dated February 2, 2000. Doan exhausted his direct appeals on July 19, 2000 when the Ohio Supreme Court denied his Memorandum in Support of Jurisdiction.

Meanwhile, however, Doan's post-conviction claims languished in the trial court. The trial court finally issued a decision on the post-conviction in August, 2001 but that was well after Doan had moved this Court to hold that he had constructively exhausted due to the delay. On December 31, 2000, Doan filed a petition for writ of habeas with this Court asserting Thirteen grounds for relief. (Record Entry 1, Petition, hereafter, R. __) Doan's post conviction claims

were hopelessly stalled in state court when Doan filed his habeas petition with this Court. On April 2, 2002, the District Court ruled that Doan had exhausted his state remedies and could proceed directly to the Ohio Courts without further delay by the Ohio Courts. (R. 15, Memorandum and Order)

On July 15, 2002, Respondent filed its Return of Writ. (R. 22, Return of Writ) On August 1, 2002, a scheduling conference was held. On August 5, 2002, this Court issued a scheduling Order setting deadlines for the various proceedings to follow. (R. 26, Scheduling Order)

On September 20, 2002, Doan filed a Motion for Leave to Conduct Discovery. (R. 29, Motion) On October 3, 2002, Doan filed a Motion for a Complete Record Pursuant to Habeas Rule Five. (R. 31, Motion) On June 10, 2003, this Court issued an Order denying Doan's Motion for Leave to Conduct Discovery and partially granting Doan's Motion for a Complete Record. (R. 48, Order) Doan filed timely objections to this Court's Order. (R. 49, Objections) On April 28, 2004, the District Court overruled Doan's objections. (R. 53, Order)

Since the Discovery and Rule Five issues are now completed in the District Court, Doan submits his brief in support of the Grounds for Relief set forth in his Petition for Writ of Habeas Corpus.

## STANDARD OF REVIEW & PROCEDURAL ISSUES

Pursuant to 28 U.S.C. § 2254, habeas relief is warranted if the challenged state court decision is "contrary to, or an unreasonable application of, clearly established law as determined by the Supreme Court of the United States." The "contrary to" and "unreasonable application" clauses of AEDPA have independent meaning. *Williams v. Taylor*, 529 U.S. 362, 405-06, 406 (2000) (O'Connor, J., writing for the majority). A decision will be "contrary to" clearly established law if the state court utilized a rule of law that contradicts Supreme Court precedent. *Id.* Relief will also be available under the "contrary to" clause if the state court reaches a result differing from Supreme Court precedent despite the presence of materially indistinguishable facts. *Id.*

Habeas corpus relief is warranted under the "unreasonable application" clause if the state court applied Supreme Court precedent in an objectively unreasonable manner. *Id.* at 409. The "unreasonable application" clause also provides for relief if the state court unreasonably refused to extend Supreme Court precedent to a context where it clearly should have been controlling. *Ramdass v. Angelone*, 530 U.S. 156, 166 (2000) (plurality opinion of Kennedy, J.); 180 (O'Connor, J., concurring).

As an initial matter, Doan takes issue with Respondent's argument that certain findings of fact by the State Court's are entitled to a presumption of correctness. Respondent has forgotten that on April 2, 2002, the District Court held that Doan had constructively exhausted his state post conviction and motion for new trial remedies due to the delay by the state courts in considering Doan's pleadings. (R. 15, Memorandum and Order) Therefore, any findings of fact or conclusions of law by the state trial court or state court of appeals denying Doan's post

conviction and new trial motions are irrelevant and are not entitled to a presumption of correctness, they are entitled to no weight whatsoever. This Court must conduct a de novo review of the post conviction and new trial claims. [2]

Doan does not believe there are any procedural default issues with the exception of trial counsel's failure to object to several issues. (See Twelfth Ground for Relief) As to these issues, the four prong test for determining whether to preclude a habeas petitioner's claim for failure to observe a state procedural rule was set forth by the Sixth Circuit in *Maupin v. Smith*, 785 F.2d 135 (6th Cir. 1986). First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule. *Id.* at 138. Under the second prong of the *Maupin* test, this Court must decide whether the State courts actually enforced the procedural sanction. *Id.* at 138. The United States Supreme Court has held that it will presume the state court's ruled on the merits of the petitioner's federal claims unless the last state court to review the claims clearly and expressly rules its judgment is based on a state procedural bar. *Harris v. Reed*, 489 U.S. 255 (1989); *Coleman v. Thompson*, 501 U.S. 722 (1991); *Ylst v. Nunnemaker*, 501 U.S. 797 (1991); *Michigan v. Long*, 463 U.S. 1032 (1983).

The third prong of *Maupin* is a determination of whether the state procedural forfeiture is an adequate and independent state ground on which the state can rely to foreclose review. *Id.* at 137. If this Court finds against Doan on the first three prongs of the *Maupin* test, he must demonstrate there was "cause" for him not to follow the procedural rule and that he was actually

---

[2]    While the case was pending before the District Court, the trial court on August 2001 issued its opinion from which Doan timely appealed. Before the appeal was decided, the District Court held that Doan had constructively exhausted his claims. Doan, as a matter of caution and to leave no doubt as to procedural default, finished the appeal to the Ohio court of appeals and the Ohio Supreme Court both of which ruled against Doan.

prejudiced by the alleged constitutional error. *Maupin*, 785 F.2d at 138; *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Engle v. Isaac*, 456 U.S. 107 (1982); *Reed v. Ross*, 468 U.S. 1 (1984).

      Although not conceding the first three prongs of *Maupin*, the cause for Doan's default is trial counsel's ineffectiveness in failing to object and failing to properly raise issues pretrial and during trial. The United States Supreme Court and Sixth Circuit Court of Appeals have previously held that ineffective assistance of counsel at trial is cause for a procedural default. *Murray v. Carrier,* 477 U.S. 478 (1986), *Coleman v. Thompson,* 501 U.S.722 (1991); *White v. Schotten*, 201 F.3d 743 (6th Cir. 2000); *Gravely v. Mills*, 87 F.3d 779 (6th Cir. 1996). "If the procedural default is the result of ineffective assistance of counsel the Sixth Amendment itself requires that responsibility for the default be imputed to the State, which may not 'conduc[t] trials at which persons who face incarceration must defend themselves without adequate legal assistance.'" *Carrier*, 477 U.S. at 488 *citing Cuyler v. Sullivan*, 446 U.S. 335, 344 (1980). Moreover, in *Gravley*, the Sixth Circuit found "the most compelling evidence of counsel's incompetence was her failure to object to very serious instances of prosecutorial misconduct." *Id.* at 785.

      The prejudice prong has been summarized by the Sixth Circuit in *Maupin*.

      First, it is clear that the prejudice that must be shown must be a result of the alleged constitutional violation and not a result of the trial counsel's failure to meet state procedural guidelines. ...

      Second, the burden is on the petitioner to show that he was prejudiced by the alleged constitutional error. ...

      Third, in analyzing a petitioner's contention of prejudice, the court should assume that the petitioner has stated a meritorious constitutional claim.

*Maupin*, 785 F. 2d at 139.

In addition to the *Maupin* test, the failure to consider the claim of trial counsel's ineffectiveness will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750; *Engle*, 456 U.S. at 135; *Dugger v. Adams*, 489 U.S. 401 (1989); *Carrier*, 477 U.S. at 496 (where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default).

## SUMMARY OF ARGUMENT

This brief represents a combination of grounds for relief raised in state court both on direct appeal and in post-conviction. The post-conviction grounds (Grounds Two, Three, Four, and Ten) must be reviewed de novo because the State courts did not consider these issues in a timely fashion and the District Court held that Petitioner had constructively exhausted these issues.

The direct appeal issues involve a number of serious errors that occurred during Doan's trial including:  Jurors being instructed that they could infer facts if the facts were proven by the greater weight of the evidence thus allowing the jury to find guilt on less than proof beyond a reasonable doubt (Ground One); Numerous instances of hearsay where witness after witness testified to what Carrie Culberson told the witness about Doan, days, weeks and months prior to her disappearance (Ground Five); Repeated introduction, through other witnesses, of other acts of alleged physical abuse by Doan against Carrie, despite no evidence of such acts, no prior convictions and acts that occurred weeks and months before Carrie's disappearance (Ground Six); Prosecutorial misconduct in the form of introducing irrelevant but highly prejudicial evidence throughout trial and committing misconduct during closing argument (Ground Seven);

Failing to allow defense counsel the opportunity to review multiple inconsistent statements of witnesses after they testified (Ground Eight) and; Failing to change venue despite the fact that Clinton County was inundated with news coverage and could not possibly provide Doan a fair trial (Ground Nine).  The media frenzy made the trial a circus where rules of evidence were thrown out the window and as a result, Doan was convicted not based on evidence he committed the crimes charged, but on defective instructions, hearsay, and other acts all of which was considered by a jury who thought he was guilty before the first witness took the stand.

The post conviction issues involve an astounding amount of exculpatory evidence that the defense stumbled upon because Carrie's mother filed a civil suit against the City of Blanchester. Had it not been for the lawsuit, it is unclear whether Doan's counsel would ever have known about the exculpatory evidence set forth in the Second Ground for Relief.  Witnesses unable to identify Doan, giving materially inconsistent statements at trial and prior to trial; witnesses changing their story to avoid prosecution; witnesses being offered reward money in exchange for their testimony are just a few of the numerous pieces of exculpatory evidence not provided to the defense prior to trial.

Doan's Traverse is lengthy but this case was fraught with error.  This was a capital case in which the jurors took four days to deliberate.  If the improperly admitted evidence was not admitted and if the prosecution complied with *Brady*, there is no doubt whatsoever, Doan would not have been convicted.  This case cries out for a new trial.

## GROUNDS FOR RELIEF

### FIRST GROUND FOR RELIEF

**PETITIONER WAS DEPRIVED OF HIS RIGHT TO DUE PROCESS AND THE RIGHT TO A FAIR TRIAL, UNDER THE FIFTH AND FOURTEENTH AMENDMENTS, WHEN THE TRIAL COURT GAVE THE JURY AN IMPROPER, MISLEADING, AND CONFUSING INSTRUCTION WHICH LESSENED THE STATE'S BURDEN OF PROOF FOR A CONVICTION. THE TRIAL COURT'S ERRORS ARE STRUCTURAL, NOT SUBJECT TO HARMLESS ERROR ANALYSIS.**

A.    **The Ohio Court of Appeals acted contrary to clearly established federal law by subjecting a defective reasonable doubt instruction to harmless error analysis when automatic reversal was required under** *Sullivan v. Louisiana***, 508 U.S. 275 (1993).**

The Constitution of the United States mandates that the State prove a defendant's guilt beyond a reasonable doubt before obtaining a proper conviction. *In Re Winship*, 397 U.S. 358, 364 (1970). The presumption of innocence and proof beyond a reasonable doubt are cornerstones of our criminal justice system. A jury must be instructed properly on the definition of proof beyond a reasonable doubt. *See generally Sullivan v. Louisiana*, 508 U.S. 275 (1993). If a trial court's general instruction on the meaning of reasonable doubt amounts to a lesser burden of proof than that which is constitutionally required, the error will amount to a structural defect in the proceedings requiring automatic reversal. *See generally Id.* In contrast, if the instruction is erroneous only as it relates to a single offense or element, reversal will be required unless the inclusion of the improper instruction was harmless beyond a reasonable doubt. *See generally Neder v. United States*, 527 U.S. 1 (1999); *accord Mitchell v. Esparza*, 124 S.Ct. 7 (2003). However, if a deficient reasonable doubt instruction is presented to the jury in such a manner that it dilutes the government's burden of proof with regard to the entire case, any conviction returned will be invalid as a matter of law. *See generally Sullivan, supra*; *Esparza, supra,* 124 S.Ct. at 11.

- 10-

In the instant case, the trial court erred, on two separate occasions, by lessening the State's burden of proof from beyond a reasonable doubt to the greater weight of the evidence. Prior to reading the instructions to the jury, the defense asked for an instruction that the jury not be permitted to draw one inference from another inference (T.r. 3157-3158). The State brought to the trial court's attention OJI 5.10, which discusses inferences in civil cases (T.r. 3158-3159). After defining direct and circumstantial evidence, the trial court instructed the jury pursuant OJI civil jury instructions as follows:

> To infer or to make an inference is to reach a reasonable conclusion of fact which you may but you are not required to make from other facts which you find have been established by direct evidence. Whether an inference is made rests entirely with you. You may infer a fact or facts or reach a reasonable conclusion about a fact or facts only from other facts or circumstances that have been proved by the greater weight of the evidence, but you may not infer a fact or facts, or make inferences – just a second – you may infer a fact or facts or reach a reasonable conclusion about a fact or facts only from other facts or circumstances that have been proved by the greater weight of the evidence, but you may not infer a fact or facts, or make inferences or reach a conclusion about a fact or facts from a speculative or remote basis that has not been established by a greater weight of the evidence.

(T.r. 3330-3331).

The trial court admitted it had given a civil jury instruction (T.r. 3354). Defense counsel did not initially object to the trial court's improper instruction. However, defense counsel did again ask the trial court to instruct the jury that they could not make one inference from another (T.r. 3354). The trial court overruled defense counsel's request (T.r. 3354).

After approximately one and one half days of deliberations, the jury, obviously confused, asked the trial court to reread its instructions on evidence (T.r. 3374). The trial court again instructed the jury that they could infer facts from the greater weight of the evidence:

> To infer or to make an inference is to reach a reasonable conclusion of fact which you may but you are not required to make from other facts which you find have been established by direct evidence. Whether an inference is made rests entirely

with you.  You may not make an inference upon an inference.  You may infer a fact, or facts, or reach a reasonable conclusion about a fact or facts only from other facts or circumstances that have been proved by the greater weight of the evidence, but you may not infer a fact, or facts, or make inferences, or reach a conclusion about a fact, or facts, from a speculative or remote basis that has not been established by the greater weight of the evidence.

(T.r. 3375).

Immediately after the jury was returned to the jury room, defense counsel realized the erroneous instruction the trial court had given the jurors for the second time and lodged his objection (T.r. 3376).  Defense counsel indicated it was his intent to have the court simply give the instruction on not making one inference from another, not to have an instruction from the civil jury instructions (T.r. 3375).  The parties attempted to place blame on one another but defense counsel correctly noted that since the jury was still out, there was time to correct the misstatement of law (T.r. 3376-3380).  The trial court overruled the defense request reasoning it would only draw attention to the instruction (T.r. 3380).  The next day, prior to deliberations, defense counsel again asked the trial court to correct the jury instruction or to declare a mistrial (T.r. 3382-3385).  The trial court overruled both requests (T.r. 3384).

The trial court's repeatedly incorrect jury instructions deprived Doan of the right to have the state prove its case beyond a reasonable doubt.  The trial court's instruction confused the jury as to the State's burden of proof.  The trial court did instruct the jury on proof beyond a reasonable doubt (T.r. 3329-3330).  However, immediately after the instruction on reasonable doubt, the trial court told the jury that they could infer facts, if the facts were proven by the greater weight of the evidence (T.r. 3330-3331).  This, of course, lessens the State's burden of proof from beyond a reasonable doubt to a preponderance of the evidence.  The instruction was not only confusing, it was absolutely improper in a criminal case.

The State and trial court were more concerned with who asked for the instruction than correcting the faulty instruction. Despite the State's argument and the trial court's ruling, the record actually supports defense counsel's assertion that his concern was to make sure the jury was instructed not to draw one inference from another (T.r. 3157-3158). It was the State that referred the trial court to a different book which contained the civil instruction (T.r. 3158-3159).

However, who suggested the instruction is immaterial. The trial court has a duty to correctly charge the jury according to the law. The trial court never should have permitted an instruction that confused the jury and lessened the State's burden of proof. In addition, any error on the part of defense counsel was cured when counsel realized the faulty jury instruction, called it to the court's attention, and asked that the jury receive the proper curative instructions (T.r. 3376). At that time it was incumbent upon the trial court to either clarify the instructions for the jury or declare a mistrial.

In this case the improper reasonable doubt instruction given at Doan's trial related to all factual inferences, and as a result the jury was free to apply the instruction to every single element of every single offense in the indictment. *See State v. Doan*, 2000 WL 221963 (Ohio App. 12 Dist). at *7, quoting the instruction read at Doan's trial. The Ohio Court of Appeals nevertheless held that "The question is did the instructions, as a whole, correctly convey the concept of reasonable doubt to the jury...If they did, the erroneous instruction can be considered harmless error." *Id.* The Court conceded that the instructions were flawed, but nevertheless concluded that reversal was not required because "...the correct standard of proof, beyond a reasonable doubt, was properly defined for the jury and that standard was repeated throughout the instructions." *Id.*

The holding of the Twelfth Appellate District is incompatible with *Sullivan* on its face. The instructions at Doan's trial violated the requirements of the Federal Constitution on two separate levels.  First, the instructions expressly permitted the jury to return a conviction based on any factual inference which was supported by the greater weight of the evidence, even if the inference was the sole basis utilized by the jury in concluding that an element of an offense had been proven.  Second, the instructions prohibited the jury from entertaining a reasonable doubt based on a factual inference unless they concluded that the inference was supported by the greater weight of the evidence.  United States Supreme Court precedent unequivocally mandates that any conviction returned by a jury instructed in this manner is not a proper verdict within the meaning of the Sixth Amendment, and the error therefore may not be subjected to harmless error analysis.  *See generally Sullivan, supra.*

Despite the assertions of the Ohio Court of Appeals to the contrary, the fact that the proper definition of reasonable doubt can be excised from the instructions (thus appearing to be a correct statement of law when viewed in isolation) does absolutely nothing to mitigate the severity constitutional defect in this case; viewed in their entirety, the jury instructions utilized at Doan's trial impermissibly diluted the definition of reasonable doubt by requiring the jury to utilize a preponderance of the evidence standard in its consideration of factual inferences.  The unconstitutional instruction was applicable to every single charge submitted to the jury, not merely to an isolated offense or element; the issue of prejudice is therefore wholly irrelevant to the determination of Doan's entitlement to relief.  *Compare Neder, supra* at 10-11 *with Sullivan* at 280-81; *see also Esparza, supra,* 124 S.Ct. at 11.  The unlawful reasonable doubt instruction given at Doan's trial constituted a fundamental structural defect in the proceedings which required automatic reversal of the resulting convictions.  *Sullivan, supra.*

The Ohio Court of Appeals acted contrary to clearly established federal law by subjecting Doan's claim to harmless error analysis. *See Doan, supra* at 7. The constitutional flaw in the instruction related to the entire indictment, not to a single offense or element of an offense. *Sullivan* therefore controls and automatic reversal is required. *See generally Sullivan, supra*; *Arizona v. Fulminante*, 499 U.S. 279 (1991). The Twelfth Appellate District nevertheless subjected Doan's claim to harmless error analysis. *See Doan, supra* at 7. Accordingly, the determination of the Ohio Court of Appeals was contrary to clearly established federal law within the meaning of *Williams v. Taylor*, 529 U.S. 362 (2000) and 28 U.S.C. § 2254. Habeas corpus relief is therefore warranted.

**B.     The Ohio Court of Appeals acted contrary to clearly established federal law in upholding Petitioner's conviction because the facts of this case are materially indistinguishable from *Sullivan, supra*.**

The determination of the Twelfth Appellate District also falls within the "contrary to" clause of § 2254 because the facts of this case are materially indistinguishable from those present in *Sullivan, supra*. The reasonable doubt instruction given at Doan's trial was, if anything, far more egregious than that which was utilized in *Sullivan*:

| Objectionable portion of the instructions in reprinted from *State v. Sullivan*, 596 So.2d 177, FN 3 (La. 1992). | Objectionable portion of the instructions, utilized at Doan's trial. |
|---|---|
| It must be such a doubt as would give rise to a grave uncertainty, raised in your minds by reason of the unsatisfactory character of the evidence; one that would make you feel that you had not an abiding conviction to a moral certainty of the defendant's guilt. If, after giving a fair and impartial consideration to all of the facts in the case, you find the evidence unsatisfactory upon any single point indispensably necessary to constitute the defendant's guilt, this would give rise to such a reasonable doubt as would justify you in rendering a verdict of not guilty...A reasonable doubt is not a mere possible doubt. It should be an actual or | To infer or to make an inference is to reach a reasonable conclusion of fact which you may but you are not required to make from other facts which you find have been established by direct evidence. Whether an inference is made rests entirely with you. You may infer a fact or facts or reach a reasonable conclusion about a fact or facts only from other facts or circumstances that have been proved by the greater weight of the evidence, but you may not infer a fact or facts, or make inferences- just a second - you may infer a fact or facts or reach a reasonable conclusion about a fact or facts only from other facts or circumstances that |

| substantial doubt. It is such a doubt as a reasonable person would seriously entertain. It is a serious doubt, for which you could give good reason. | have been proved by the greater weight of the evidence, but you may not infer a fact or facts from a speculative or remote basis that has not been established by a greater weight of the evidence. |
|---|---|

As the foregoing quotation demonstrates, the reasonable doubt error in the *Sullivan* instructions arose from the inclusion of imprecise terms, such as "moral certainty" and "grave uncertainty," which implied a lesser standard of proof than that required by *Winship* and *Jackson*.  In contrast, the instructions at Doan's trial not only implied but expressly mandated that the jury utilize an unconstitutional standard of proof in considering the strength of the government's evidence.  The jury was instructed in no uncertain terms that it could infer any fact so long as the inference was supported by the greater weight of the evidence.  The jury was further instructed that it was prohibited from drawing any factual inference which was not supported by the greater weight of the evidence.  As a result, the jury instructions at Doan's trial provided that:

1. The jury could return a conviction predicated upon a factual inference, even if the inference in question was supported only by a preponderance of the evidence, and even if the inference was the sole basis for concluding that an element of an offense had been proven; but,

2. The jury could not rely upon a factual inference as a basis for a finding of reasonable doubt, unless the inference in question was supported by a preponderance of the evidence.

As stated previously, a defective reasonable doubt instruction requires automatic reversal under *Sullivan*, regardless of the factual circumstances in which the instruction was utilized.  It necessarily follows that the only "materially indistinguishable fact" that matters for the purposes of federal habeas corpus proceedings is the fact that a defective reasonable doubt instruction was given at trial.  The determination of the Ohio Court of Appeals was contrary to clearly

established federal within the meaning of § 2254 and *Williams v. Taylor, supra*; habeas corpus relief is accordingly warranted.

C.    **Even if the defective jury instruction in Petitioner's case did not fall within the automatic reversal rule of *Sullivan*, the instructions at Petitioner's trial were still constitutionally defective and the Ohio Court of Appeals acted contrary to clearly established federal law by failing to apply the "harmless beyond a reasonable doubt" standard of *Chapman v. California*, 405 U.S. 1020 (1972).**

Even assuming that the defective instructions at Doan's trial did not fall within the structural error framework of *Sullivan*, the decision of the Twelfth Appellate District upholding Doan's conviction would still directly contradict controlling United States Supreme Court precedent because the Ohio Court of Appeals failed to apply the correct standard of harmless error analysis.  If a state court has adjudicated a petitioner's constitutional claim by applying a rule of law which contradicts United States Supreme Court precedent, pre-AEDPA standards will control the subsequent habeas corpus proceedings. As a result, even if the unlawful instruction at Doan's trial did not constitute a fundamental defect in the proceedings within the meaning of *Sullivan*, Doan will still be entitled to relief under the "contrary to" clause of § 2254 because the error at his trial clearly had a substantial and injurious effect on the verdict.  *See Penry v. Johnson*, 532 U.S. 782, 795 (2001), citing *Brecht v. Abrahmson*, 507 U.S. 619, 637 (1993).

A constitutionally defective jury instruction which does not rise to the level of a *Sullivan* structural error must be reviewed under the harmless error analysis established in *Chapman v. California*, 405 U.S. 1020 (1972).  *Neder, supra* at 9-10, 18-19; *Esparza, supra* at 11.[3]  The

---

[3]    It is important to note that while the Ohio Court of Appeals decision at issue in *Esparza* did not expressly cite the *Chapman* standard in addressing the petitioner's jury instruction claim, *see State v. Esparza*, 1994 WL 395114 (Ohio App. 6th Dist.) at *7, a subsequent section of the opinion does state the correct standard of constitutional harmless error review, explaining that "error of constitutional dimension must be harmless beyond a reasonable doubt."  *Id.* at 9

Twelfth Appellate District did not apply the *Chapman* standard, but instead appears to have asserted that a defective reasonable doubt instruction constitutes per se harmless error so long as the correct definition of reasonable doubt is included somewhere in the jury instructions. *See Doan, supra,* 2000 WL 221963 at *7. It is difficult to imagine a trial court completely failing to give a reasonable doubt instruction which is the only way the Twelfth District would apparently grant relief.

The analysis conducted by the Ohio Court of Appeals is clearly incompatible with the holding of *Neder*, which was controlling at the time Doan's appeal was litigated in the Ohio courts. *Neder* unequivocally and unambiguously mandates that a constitutionally defective jury instruction that does not rise to the level of structural error requires reversal unless the instruction is demonstrated to have been harmless beyond a reasonable doubt. 527 U.S. at 10-11, 19. The Twelfth Appellate District did not apply the "harmless beyond a reasonable doubt" standard to Doan's claim for relief. *Doan, supra* at *7. As a result, the decision of the Ohio Court of Appeals is governed by the "contrary to" clause of § 2254, and Doan is entitled to relief if he satisfies the pre-AEDPA "substantial and injurious effect" standard of review. *Penry, supra* at 795.

Doan has clearly demonstrated that the error at his trial had a substantial and injurious effect on the verdict. The jury, after substantial deliberation, requested that the Court reread the instruction in question. *Doan, supra* at *7. The Court reinstructed the jury, over the objection of

---

(citations and internal quotations omitted). The United States Supreme Court appears to have concluded that the Ohio Court of Appeals had correctly applied the *Chapman* standard to the petitioner's jury instruction claim, even though the Sixth Appellate District did not articulate the "harmless beyond a reasonable doubt" standard in that particular section of the opinion; the Supreme Court accordingly concluded that federal habeas review was governed by the "unreasonable application" clause rather than the "contrary to" clause. *See Esparza*, 124 S.Ct. at 11-12.

the defense, knowing that the instruction in question was applicable to civil rather than criminal cases. *Id.* The jury subsequently returned a conviction. *See generally Id.* The only conclusion that can be drawn from the record in this case is that the unlawful instruction resulted in a conviction. Doan has accordingly demonstrated that the constitutional error at his trial had a substantial and injurious effect on the verdict, and as a result habeas corpus relief is warranted under the "contrary to" clause of § 2254. *See, e.g. Penry, supra* at 795.

**D.    Even if the Ohio Court of Appeals applied the correct rules of law from United States Supreme Court precedent, the application was objectively unreasonable and Petitioner is accordingly entitled to relief under *Williams v. Taylor, supra.***

The Ohio Court of Appeals did not apply the correct legal standards required by controlling United States Supreme Court precedent. *See Neder, supra.* Nevertheless, assuming for the sake of argument that the correct rules of law were applied, the application was objectively unreasonable within the meaning of *Williams v. Taylor, supra.* Doan is therefore entitled to habeas corpus relief under the "unreasonable application" clause of § 2254.

The jury was given an instruction which indicated that they were to apply the evidentiary standard applicable to civil cases with regard to factual inferences. *See Doan, supra* at *7. The Ohio Court of Appeals concluded that Doan had not been prejudiced by the error, despite the fact that the jury expressly requested reinstruction after extensive deliberation, and despite the fact that the jury subsequently convicted Doan only after being instructed for a second time that they were required to apply an unconstitutional burden of proof. *Id.* Under these circumstances, the determination of the Ohio Court of Appeals that Doan had not been prejudiced was an objectively unreasonable application of controlling United States Supreme Court precedent. Doan is therefore entitled to relief under the "unreasonable application" clause of § 2254 and *Williams v. Taylor, supra.*

E.    **Conclusion.**

The defective instruction was on a critical part of the case, the State's burden of proof. The jury was obviously confused by the changing burdens of proof because they asked the trial court to reread the instructions on evidence (T.r. 3374-3375).  Instead of correcting the improper initial instruction, the trial court reread it to the jury, further emphasizing the reduction in the State's burden of proof.  This magnifies the prejudice to Doan.  The jury was left with the distinct impression that the State had to prove facts or circumstances by the greater weight of the evidence, not beyond a reasonable doubt.

Criminal defendants must be convicted upon proof beyond a reasonable doubt.  Due to the faulty instructions in the instant case, Doan is serving a sentence of life without parole and was nearly placed on death row because the State obtained a conviction upon proof beyond the greater weight of the evidence.  The improper instructions denied Doan his Federal Constitutional rights to due process and a fair trial.  The error in this case is one of the few classes of errors for which prejudice need not be shown.  *Sullivan, supra; Fulminante, supra*. For all these reasons, his convictions must be reversed.


**SECOND GROUND FOR RELIEF**

**THE STATE VIOLATED PETITIONER'S RIGHTS UNDER THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT AND THE RIGHT TO COUNSEL CLAUSE OF THE SIXTH AMENDMENT BY SUPPRESSING FAVORABLE EVIDENCE MATERIAL TO THE ISSUE OF HIS GUILT.**

Prior to trial, Doan's counsel filed a motion specifically requesting that the state provide discovery of all exculpatory and impeachment material under Ohio R. Crim. P. 16 and *Brady v. Maryland*, 373 U.S. 83 (1963).  The failure to disclose the information listed below, which

contained favorable evidence material to Doan's innocence was both a discovery violation and a denial of due process and a fair trial under *Brady*.

The suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment, regardless of the good or bad faith of the prosecution. *Brady*, 373 U.S. at 87. Such evidence is deemed material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceedings would have been different. *Bagley,* 473 U.S. at 682.

> The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence. A "reasonable probability" of a different result is accordingly shown when the government's evidentiary suppression "undermines confidence in the outcome of the trial." *Bagley*, 473 U.S., at 678, 105 S. Ct., at 3381.

*Kyles v. Whitley*, 514 U.S. 419, 434 (1995).

Such omitted evidence must be evaluated in the context of the entire record. *United States v. Stifel*, 594 F.Supp. 1525 (N.D. Ohio 1984). 1540, citing *Agurs*, 427 U.S. at 112. Since *Agurs* requires the omissions to be evaluated in the context of the entire record, it follows that the effect of all the omissions must be considered cumulatively. *Stifel,* supra. The cumulative effect of the nondisclosures may require reversal even though, standing alone, each bit of omitted evidence may not be sufficiently material to justify a new trial. *Kyles,* 514 U.S. at 434; *United States ex rel. Marzeno v. Gengler*, 574 F.2d 730, 736-737 (3rd Cir. 1978), cited in *Stifel,* supra.

Furthermore, where the undisclosed evidence demonstrates that the prosecution's case included perjured testimony, the existence of which the prosecution knew or should have known, the tainted conviction must be set aside if there is **any** reasonable likelihood that the false testimony could have affected the judgment of the jury. *Agurs,* 427 U.S. at 103-104, cited in *Stifel,* supra. For purposes of this standard, "false" testimony has been interpreted to include that

which is materially misleading. *United States v. McClintic*, 570 F.2d 685, 692 (8th Cir. 1978). Convictions obtained through use of false evidence, known to be such by the state, must fall under the Fourteenth Amendment. *Napue v. Illinois*, 360 U.S. 264, 267 (1959) citing *Mooney v Holohan*, 294 U.S. 103 (1935).

Impeachment material falls under the *Brady* rule, *United States v. Bagley*, 473 U.S. 667, 676 (1985), because, "if disclosed and used effectively, it may make the difference between conviction and acquittal." *Id.* The credibility of four key witnesses: Billie Jo Brown, Lori Baker, Vicki Watkins and Mitchell Epperson was critical. *Giglio v. United States*, 405 U.S. 150, 154, 155 (1972). "The jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence, and it is upon such subtle factors as the possible interest of the witness in testifying falsely that a defendant's life or liberty may depend." *Napue* 360 U.S. at 269.

Below are the acts of misconduct by the prosecution which either individually or cumulatively deprived Doan of due process and a fair trial.

**A.    Evidence that would have impeached the only state's witness who claimed that Doan was the man seen hitting Culberson just before she disappeared.**

One of the key prosecution witnesses at Doan's trial was Billie Jo Brown. Ms. Brown testified that around 12:30 a.m. on August 29, 1996 she saw Doan chase, grab and strike Carrie Culberson in the yard in front of Brown's house. Brown testified that she went to her bedroom to awaken her husband and, when she returned to the front of her house, Doan and Culberson were gone. Brown claimed that she heard a car pull away. Culberson's red car was gone, but Doan's Mustang was still parked in front of his house. (T.r. 1491 – 1492).

Brown's testimony was crucial to the state's case because it portrayed Culberson in a violent encounter with Doan the last time she was seen before her disappearance.

What the state did not disclose to the defense was the fact that Brown was *unable* to make a positive identification of Doan as the man she saw when she was given the photo line-up by police shortly after this alleged incident.

Blanchester Police Officer W. Dan Nichols, Jr. discussed a photo line-up with assistant prosecutor Richard Moyer, and Moyer told Nichols to go ahead and do it. Nichols got six photos, including one of Doan, and took them to Brown. After looking at the photos, Brown could **not** positively identify the man she saw fighting with Culberson in her front yard that night, despite the fact that Doan lived across the street from Brown. *Respondent's Return of Writ, Exhibit 25, Motion for Leave to File Amended Post-Conviction Petition and Second Amended Post-Conviction Petition, Exhibit A - Affidavit of W. Daniel Nichols, Jr. (hereafter, Mot. for Leave & Second Amend. Pet., Ex. __).*

The state also failed to disclose the fact that Brown's prior description of the man she saw that morning differed from the description she gave at Doan's trial. The inconsistency could have been used to impeach her trial testimony. Brown gave a written statement to Officer Nichols on September 1, 1996. In this statement, Brown described the man she saw in her front yard as wearing "a ball hat, T-shirt and jeans." *Mot. for Leave & Second Amend. Pet., Ex. B - Statement of Billie Jo Brown.*

Brown's trial testimony differed from this description. At trial, Brown stated that the man she saw was wearing a muscle shirt and shorts. (T.r. 1511). Brown never stated that the man was wearing a hat, much less a "ball hat". Since defense counsel never received the pretrial statement, they could not use it to impeach Brown on this critical piece of evidence.

Prosecutors also interfered with defense counsel's attempts to investigate Brown's testimony. At some point after Officer Nichols interviewed Brown, he saw her again while he

was working a security detail.  At that time, Brown told Nichols that the prosecution told her not to talk to anyone about the case.  *Mot. for Leave & Second Amend. Pet., Ex. A.*

The prosecution has a Constitutional duty under the Due Process Clause of the Fourteenth Amendment to disclose exculpatory and impeaching evidence.  The state's failure to disclose Brown's prior statement and photo line up, as well as its effort to prohibit Brown from talking to anyone, was a knowing suppression of exculpatory evidence that was material to the issue of Doan's guilt.  The state's knowing suppression of this evidence violated Doan's rights under the Due Process Clause and state-induced ineffective assistance of trial counsel which violated Doan's rights guaranteed by the Sixth and Fourteenth Amendments.  *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194 (1963); *United States v. Bagley*, 473 U.S. 667, 105 S.Ct. 3375 (1985); *Kyles v. Whitley*, 514 U.S. 419, 115 S.Ct. 1555 (1995); *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984).  In this case, disclosure of the suppressed evidence to reasonably competent counsel would have made a different result reasonably probable.  *Mot. for Leave & Second Amend. Pet., Ex. C - Affidavit of John Rion.*

**B.    Evidence of prior inconsistent accounts given to police and prosecutors by crucial state's witness Lori Baker.**

Lori Baker was unquestionably among the most important, if not the most important, state's witness.  Baker testified that Doan came to the door of her home around 3:15 a.m., on August 29, 1996 with blood smeared on his body.  According to Baker, Doan asked for his brother Tracey and went to see Tracey in the bedroom.  Baker testified that Doan took a shower and got dressed, then left with Tracey, taking garbage bags and a gun.  Baker claimed that Doan and Tracey returned about 6 a.m. and that Tracey ordered her to wash his clothes.  Baker said that Doan and Tracey showered and left for work.  (T.r. 1671 – 1688).  Baker also claimed that

Doan later told her "I can't imagine hurting someone and holding her until she died", testimony obviously meant to reference Culberson. (T.r. 1706).

Prior to cross-examination, the trial judge allowed defense counsel to use a small, one-paragraph excerpt of what was apparently a Baker pre-trial statement in "October or November sometime of '96". (T.r. 1726 – 1727, 1744- 1747). In the excerpt (Defense Exhibit II, not admitted) Baker denied seeing Doan covered in blood. (T.r. 1726).

What the prosecution did not disclose was the fact that Lori Baker gave information on more than one occasion that was self-contradictory and inconsistent with her trial testimony. Baker was interviewed by investigators and assistant prosecutor Richard Moyer on November 7, 1996 and again on November 12, 1996. *Mot. for Leave & Second Amend. Pet., Ex. D - Memorandum of Interview November 7, 1996; Mot. for Leave & Second Amend. Pet., Ex. E - Memorandum of Interview November 12, 1996.*

In the November 7th interview, Baker was interviewed with her twin sister Vicki Watkins, who stated at that time that she saw no blood on Doan the morning of August 29th, 1996. Baker did not contradict her sister and in fact made no mention of seeing blood on Doan on August 29, 1996 when he came to her home.

In the November 12th interview Baker stated that she "did not observe blood" at the time Doan came to her door at 3:15 a.m. on August 29, 1996.

Thus, not once, but on two separate occasions, when interviewed by the prosecutor and investigators, Baker failed to mention that Doan was covered in blood. Indeed, she affirmatively denied it. Defense counsel never had access to these statements, which undoubtedly would have affected Baker's credibility.

Baker also testified that she had briefly spoken with Sheriff's detective Brian Edwards after Culberson disappeared. Baker said Edwards asked her where her car was and if she knew anything about Carrie "and I told him no." (T.r. 1709).

That was not, however, the full extent of Baker's conversation with Edwards. The prosecution failed to disclose Edwards' ten-page "Report of Investigation", *Mot. for Leave & Second Amend. Pet., Ex. F.* The first page of that report states that Edwards also specifically asked Baker if "Doan had been to her house the night of Wednesday August 28, 1996 or the morning of Thursday August 29, 1996 and she said no." This was yet another prior inconsistent statement of Baker's that the state failed to disclose to defense counsel.

Furthermore, the prosecution was aware that the day after Culberson disappeared, Baker talked to Diana Shelton, wife of Clinton County Sheriff's Deputy Tim Shelton, and told Shelton that Doan had come to her house on August 29, 1996 with blood all over him. Baker told this to Shelton and then wrote it out in letter form.[4] Baker testified to this at Tracey Baker's trial. *Mot. for Leave & Second Amend. Pet., Ex. G - (T.r. 1244 – 1246).* The prosecution failed to disclose the existence of this statement made by Baker to Shelton.

Thus, in this case the prosecution failed to disclose a whole series of self-contradictory statements Lori Baker made prior to her trial testimony she gave against Doan.

The prosecution's failure to disclose these statements was extremely prejudicial to Doan. The jurors believed Lori Baker's testimony. As jury spokesperson Kathleen Jachimowicz stated on the Court TV broadcast about Doan's trial, "Trial Story – Missing": "We believed that Lori Baker's testimony was truthful for the most part." *Mot. for Leave & Second Amend. Pet., Ex. T.*

---

[4] Baker later told her sister Vicki to retrieve the letter from Shelton and Baker burned it.

Defense counsel should have had the ability to impeach Baker with the parade of her prior self-contradictory and inconsistent statements in order to undermine the credibility of this most important state's witness. The state's knowing suppression of this evidence violated Doan's rights under the Due Process Clause and state-induced ineffective assistance of trial counsel which violated Doan's rights guaranteed by the Sixth and Fourteenth Amendments. *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194 (1963); *United States v. Bagley*, 473 U.S. 667, 105 S.Ct. 3375 (1985); *Kyles v. Whitley*, 514 U.S. 419, 115 S.Ct. 1555 (1995); *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984). In this case, disclosure of the suppressed evidence to reasonably competent counsel would have made a different result reasonably probable. *Mot. for Leave & Second Amend. Pet., Ex. C.*

**C.    Evidence that a prosecutor promised state's witnesses Lori Baker and Vicki Watkins that they would not be prosecuted if they implicated Doan.**

On November 7, 1996 Clinton County Sheriff's Detective Brian Edwards and assistant prosecutor Richard Moyer met with Lori Baker and her sister Vicki Watkins in the prosecutor's office. According to the Memorandum of that Interview written by Detective Edwards, *Mot. for Leave & Second Amend. Pet., Ex. D* , assistant prosecutor Moyer "reassured Lori and Vicki that they would not be charged unless they flat out lied to us. Moyer then pointed out a couple of lies that Lori had already told and she admitted the same and she wouldn't hold anything back in the future."

At this interview, and an interview five days later, *Exhibit E*, again attended by Edwards and Moyer, Ms. Baker said that she did <u>not</u> see any blood on Doan when he supposedly came to her home at 3:15 a.m. August 29, 1996.

Shortly after being promised by assistant prosecutor Moyer that she would not be prosecuted as long as she did not "lie" to investigators, Baker changed her story and began

telling investigators that Doan was covered in blood when he came to her house.  The import of prosecutor Moyer's remark to Baker and Watkins was a promise not to prosecute them as long as they gave investigators information they could use to prosecute Doan.

The prosecution's failure to disclose this promise, deal or bargain with Baker and Watkins was prejudicial to Doan.  Defense counsel should have had the ability to impeach Baker and Watkins with the fact that they were essentially promised that they would not be prosecuted as long as they gave testimony that hurt Doan and his brother Tracey.   The state's knowing suppression of this evidence violated Doan's rights under the Due Process Clause and state-induced ineffective assistance of trial counsel which violated Doan's rights guaranteed by the Sixth and Fourteenth Amendments.  *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194 (1963); *United States v. Bagley*, 473 U.S. 667, 105 S.Ct. 3375 (1985); *Kyles v. Whitley*, 514 U.S. 419, 115 S.Ct. 1555 (1995); *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984).  In this case, disclosure of the suppressed evidence to reasonably competent counsel would have made a different result reasonably probable.  *Mot. for Leave & Second Amend. Pet., Ex. C.*

**D.    Evidence that Carrie Culberson confided in a friend that she wanted to leave Blanchester and make a new start elsewhere.**

The state's theory was that Carrie Culberson's disappearance was not a disappearance at all, but rather a homicide.  The prosecution presented a number of witnesses and argued that Culberson would never have left her home and family despite the alleged abuse she suffered at Doan's hands.  (T.r. 2093 – 2095; 2196; 2425 – 2426).

On September 4, 1996 detective Brian Edwards interviewed one of Culberson's steady beauty salon customers, Mandy Bogan.  Bogan told Edwards that Culberson had commented that perhaps she ought to "just leave everything behind and start over."  Culberson also told Bogan that she knew a person who had rental properties out of town, possibly named "Frisch", and

talked about calling to rent one of those properties. *Mot. for Leave & Second Amend. Pet., Ex. F - Report of Investigation, page 3.*

The prosecution failed to disclose Bogan's statement to defense counsel. This statement was exculpatory because it contradicted the state's theory that Culberson would never leave Blanchester, and supported the defense theory that Culberson was not killed, but rather chose to leave town and not return. The state's knowing suppression of this evidence violated Doan's rights under the Due Process Clause and state-induced ineffective assistance of trial counsel which violated Doan's rights guaranteed by the Sixth and Fourteenth Amendments. *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194 (1963); *United States v. Bagley*, 473 U.S. 667, 105 S.Ct. 3375 (1985); *Kyles v. Whitley*, 514 U.S. 419, 115 S.Ct. 1555 (1995); *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984). In this case, disclosure of the suppressed evidence to reasonably competent counsel would have made a different result reasonably probable. *Mot. for Leave & Second Amend. Pet., Ex. C.*

**E.    Statements from two witnesses that contradict key aspects of the testimony of state's witnesses Lori Baker and Vicki Watkins.**

Prosecution witnesses Lori Baker and Vicki Watkins claimed at trial that Doan came to the door of Tracey Baker's home in Blanchester at 3:15 a.m. on August 29, 1996. (T.r. 1544, 1671). Baker testified that Doan had blood smeared on his body. (T.r. 1673).

On September 8, 1996, Blanchester Police Sgt. William Wells took statements from two young women, Christa Lynn Pendleton of Fayetteville and Karrie Donovan of Goshen.

In her statement, Ms. Pendleton said that she was on her way to work in Blue Ash, driving along Glady road on Thursday August 29, 1996 at 3:12 a.m. when she saw two people walking on the left hand side of the road. They were walking toward Hunt Road. She had to swerve to miss them. Ms. Pendleton described the pair as a woman wearing a dark long-sleeved

- 29-

shirt, light colored shorts and long brown hair. The man was wearing a baseball hat and a black shirt. She estimated he was 5' 11" tall and weighed 175 – 180 pounds. *Mot. for Leave & Second Amend. Pet., Ex. J - Statement of Christa Pendleton.*

Pendleton's description of the woman matches closely that of Carrie Culberson, who had long dark hair and was last seen wearing a pair of shorts and a Cincinnati "Moeller" sweatshirt. (T.r. 1414). Her description of the man's build generally fits that of Doan but could also have fit other potential suspects. She also noted a baseball hat which is consistent with Billie Jo Brown's statement which was also never given to defense counsel.

Pendleton's statement was exculpatory material that should have been disclosed to the defense. If the couple she described was Culberson and Doan, or Culberson and someone else, then Lori Baker and Vicki Watkins, two of the state's most important witnesses, were lying. Doan could not have been walking along the roadside near Hunt Road in Clermont County at 3:12 a.m. on August 29, 1996 and also have been in Blanchester, Ohio in Clinton County knocking on Tracey Baker's door at 3:15 a.m. on August 29, 1996 with blood on or about his person. At the least, this witness could have been used to impeach the testimony of Baker and Watkins and to cut a gaping hole into the prosecutions case.

In her statement, Karrie Donovan explained that she and Pendleton rent movies on Thursday nights. After watching the videos, she was on her way home Friday morning (which would have been August 30, 1996) between 1 a.m. and 3 a.m. on Hunt Road when she saw a man and woman at a junk yard. The woman was slender, wore shorts and had long dark hair. The man was "medium build". *Mot. for Leave & Second Amend. Pet., Ex. K - Statement of Karrie Donovan.* Donovan's description of the woman matches Culberson's. The "medium build" man could be anyone.

Donovan's statement was exculpatory because it indicated that Culberson may well have been alive and well on Friday morning, August 30, 1996 – the day <u>after</u> the state contended that she was killed. The state's knowing suppression of Pendleton and Donovan's statements violated Doan's rights under the Due Process Clause and state-induced ineffective assistance of trial counsel which violated Doan's rights guaranteed by the Sixth and Fourteenth Amendments. *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194 (1963); *United States v. Bagley*, 473 U.S. 667, 105 S.Ct. 3375 (1985); *Kyles v. Whitley*, 514 U.S. 419, 115 S.Ct. 1555 (1995); *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984). In this case, disclosure of the suppressed evidence to reasonably competent counsel would have made a different result reasonably probable. *Mot. for Leave & Second Amend. Pet., Ex. C.*

**F.    Evidence that would have impeached the testimony of a lead sheriff's investigator.**

Clinton County Sheriff detective Brian Edwards was one of the lead law enforcement investigators involved in Doan's arrest, indictment and prosecution. Edwards testified for the prosecution and stated that he suspected Culberson's body was concealed at some point in a junkyard owned by Doan's father. Despite the fact that Edwards had no experience whatsoever, he was allowed to give his "expert" opinion that something had been removed from a pond at the junkyard, implying that the "something" was Culberson's body.

Edwards began his Clinton County law enforcement career as a patrolman with the Blanchester police department. In 1987, Edwards' superior, Sgt. Gerald Bowman, recommended disciplinary action against Edwards for lying to a supervisor and abusing sick time. The infractions included conducting an extra-marital station house romance with a young dispatcher when he should have been out on patrol. Edwards was suspended and the Blanchester Chief of Police, Richard Payton, recommended his probationary termination from the force. *Mot. for*

*Leave & Second Amend. Pet., Ex. L - Memo to Chief Richard Payton from Sgt. Gerald Bowman, Letter from Chief Richard Payton.*

The prosecution failed to disclose this information which could have been used to impeach Edwards' testimony and the integrity of the state's investigation. The state's knowing suppression of Pendleton and Donovan's statements violated Doan's rights under the Due Process Clause and state-induced ineffective assistance of trial counsel which violated Doan's rights guaranteed by the Sixth and Fourteenth Amendments. *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194 (1963); *United States v. Bagley*, 473 U.S. 667, 105 S.Ct. 3375 (1985); *Kyles v. Whitley*, 514 U.S. 419, 115 S.Ct. 1555 (1995); *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984). In this case, disclosure of the suppressed evidence to reasonably competent counsel would have made a different result reasonably probable. *Mot. for Leave & Second Amend. Pet., Ex. C.*

**G.    Evidence that a key state's witness was hypnotized in an effort to refresh her memory and given a voice stress test for veracity.**

On March 9, 1997, a Sunday, prosecution investigator Larry Handorf brought a key state's witness, Vicki Watkins, to the Cincinnati office of Dr. William C. Wester, Director of the Behavioral Science Center. Watkins was there so that Dr. Wester could use hypnosis to refresh her recollection of a conversation she claimed to have overheard between Doan and his brother Tracey in the early morning hours of August 29, 1996. *Mot. for Leave & Second Amend. Pet., Ex. M & U.*

Watkins was hypnotized. The hypnosis session was videotaped. At the end of the session, after Dr. Wester brought Watkins out of the state of hypnosis, Watkins said her recollection had been hypnotically refreshed on two details: that she heard Doan give a little

giggle while he was standing with Tracey on the patio and that she knew Tracey left with Doan that morning because she could hear Tracey's boots as he walked.

In addition, Watkins made several statements during the course of her session with Dr. Wester that could have been used as impeachment against her at trial, including a statement that she could tell the person at the door was Doan by the tattoo on his left shoulder  (Doan's tattoo is on his *right* shoulder, T.r. 106) and the fact that she considered a discussion with her sister, Lori Baker, about "parting Carrie out" to have been completely "harebrained".

It was bad enough that the prosecution failed to disclose this evidence prior to trial despite an absolute duty to do so.  The prosecution, knowing that the post-conviction investigation by the defense was checking everything that had occurred, deliberately concealed the fact that Watkins was hypnotized. During the trial phase, the prosecution supplied Doan's trial counsel, John Rion and Jon Paul Rion, with a copy of expenses submitted to Clinton County by investigator Handorf.  The copy of Handorf's March 24, 1997 billing statement contained in trial counsel's file contains the word "Expert" under billing expenses.  *Mot. for Leave & Second Amend. Pet., Ex. V & W - Affidavits of Jane Perry and Joe Bodenhammer.*

After the trial phase was completed, investigator Joe Bodenhammer of the Office of the Ohio Public Defender obtained Mr. Handorf's statements from the Clinton County Auditor's office.  On the March 24, 1997 billing statement obtained by Mr. Bodenhammer, the statement contains an expense denominated as "Dr. Wester (Hypnotist)" at the same spot where the word "Expert" appears on the copy the prosecution gave to the Rions.  *Mot. for Leave & Second Amend. Pet., Ex. W.*

Further, when Watkins testified at Doan's trial, the prosecution admitted that it had done a voice stress analyzer test on Watkins shortly after her first interview with investigators and that

the test indicated she was lying.  (T.r. 1614).  When defense counsel John Rion asked the prosecutors "What else are you not giving the Court?", prosecutor Peelle responded, "That's (the voice stress test) the <u>only single</u> thing I'm aware of in terms of that…."  (T.r. 1614 – 1615).

However, at the trial of Doan's brother Tracey Baker, at page 935 of the transcript, assistant prosecutor Richard Moyer stated as follows:  "We voice stressed <u>all</u> our witnesses." *Mot. for Leave & Second Amend. Pet., Ex. N.*  Thus, the prosecution failed to disclose that not only Vicki Watkins had been given a voice stress analyzer test but all its witnesses were tested. As stated previously, the conduct is so egregious not just because it was not disclosed, but because the prosecution then tried to cover it up by whiting out the area on the bill that said hypnotist.  The state's knowing suppression of the Vicki Watkins and voice stress analyzer test information violated Doan's rights under the Due Process Clause and state-induced ineffective assistance of trial counsel which violated Doan's rights guaranteed by the Sixth and Fourteenth Amendments. *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194 (1963); *United States v. Bagley*, 473 U.S. 667, 105 S.Ct. 3375 (1985); *Kyles v. Whitley*, 514 U.S. 419, 115 S.Ct. 1555 (1995); *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984).  In this case, disclosure of the suppressed evidence to reasonably competent counsel would have made a different result reasonably probable. *Mot. for Leave & Second Amend. Pet., Ex. C.*

**H.     Evidence that the prosecution made promises to jailhouse informant Mitchell Epperson in exchange for his testimony against Petitioner.**

One of the state's important witnesses against Doan was career criminal and jailhouse informant, Mitchell Epperson.  Epperson testified that Doan allegedly made incriminating statements to him while the two were incarcerated together at the Queensgate Correctional Facility in Hamilton County, Ohio.  (T.r. 2307-2333). At trial, Epperson **denied** having received any consideration for his testimony.  (T.r. 2322, 2327).

However, the state did not disclose the fact that prosecution investigator William Hidy had, on several occasions, promised Epperson that he would receive the money from the Carrie Culberson reward fund at the First National Bank of Blanchester if Epperson testified and Doan was convicted. *Mot. for Leave & Second Amend. Pet., Ex. X - Affidavit of Mitchell Epperson.*

Epperson decided to testify against Doan before the grand jury after he asked for and received assurances from Hidy that he would receive the reward money. *Id.* at *Exhibit X.*

Epperson then decided to go ahead and testify against Doan at trial again after being promised by Hidy that he, Epperson, would receive the reward money and should work through the prosecutor's office to collect the money. *Id.* at *Exhibit X.*

Moments before he testified, Epperson again discussed the reward with Hidy in the presence of Debbie Culberson in the witness room. At that time, Hidy promised Epperson that if he testified and Doan was convicted, Epperson would receive the reward and would collect it through the prosecutor's office. *Id.* at *Exhibit X.* Debbie Culberson did not dispute Hidy's promise.

After he testified, Epperson waited until he learned that Doan was convicted and sentenced to life without parole, and then called Hidy both at home and at work on numerous occasions in order to collect the reward money. Epperson also wrote two letters to Hidy stating that Hidy should make good on the promise to pay Epperson the reward money. *Id.* at *Exhibit X.*

Hidy did not return Epperson's phone calls or respond to his letters.

Epperson also called the Clinton County Prosecutor's Office and asked for prosecutors Peelle and Moyer in his effort to collect the reward as he was promised. His calls were not returned. *Id.* at *Exhibit X.*

Finally, Epperson contacted an attorney in the Cincinnati area for purposes of considering a lawsuit to enforce Hidy's promise to pay him the reward money. *Mot. for Leave & Second Amend. Pet., Ex. X.* The attorney wrote letters on Epperson's behalf demanding that prosecutors make good on their promise of the reward fund money. *Mot. for Leave, Ex. 2 - Demand Letter from Attorney Robert Karl; Mot. for Leave, Ex. 3 - Affidavit of Jane Perry Regarding Epperson and Karl's Statments.*

It also appears that Epperson's sentence was shortened in return for implicating Doan. Epperson received a 180 day sentence for a probation violation on November 20, 1996. *Mot. for Leave & Second Amend. Pet., Ex. O - Judgment Entry Revoking Probation.* With credit for days served, Epperson had 131 days left to serve on November 20, 1996.

However, on January 27, 1997, just three weeks after giving a statement to Detective Brian Edwards, Epperson was released. This release was approximately two months earlier than he should have been released. The fact that Epperson's release was early was not disclosed to defense counsel. Neither was there any disclosure of any connection between Epperson's early release and the inculpatory information he gave to investigators.

The state also failed to disclose to defense counsel that Epperson had, at the time of his testimony against Doan, a charge of burglary pending against him in Norwood, Hamilton County, Ohio. *Mot. for Leave & Second Amend. Pet., Ex. P - Warrant, Complaint, Indictment and Bill of Particulars.*

The prosecution further failed to disclose to defense counsel that it was protecting Epperson against arrest on the outstanding burglary warrant when he came to the courthouse to testify against Doan. Assistant Prosecutor Moyer assured Epperson "you're with us now" and Epperson understood that meant he would not be arrested while in Clinton County. *Mot. for*

*Leave & Second Amend. Pet., Ex. X.*   Subsequent to his testimony Epperson was arrested and taken to the Norwood police station where he saw a note on his file folder indicating that Clinton County had requested he not be arrested until after his testimony in Doan's case.  *Id.* at *Exhibit X.*

Furthermore, Epperson entered a plea of guilty to the 1997 Hamilton County burglary charge in November, 1997, after he testified against Doan.  Documents from the court file in Epperson's burglary case show that investigator Hidy appeared as a witness at Epperson's plea hearing.  *Mot. for Leave & Second Amend. Pet., Ex. Q.*

The prosecution had a duty to disclose the aforementioned evidence to defense counsel both as exculpatory and impeachment evidence.  The prosecution did not do so.  *Mot. for Leave & Second Amend Pet., Ex Y, Affidavit of John Rion.*  The prosecution also suborned perjury when it sat silent after Epperson testified he was receiving nothing in exchange for his testimony as it is clear he was promised both reward money and leniency on his pending cases.  This egregious conduct should not be condoned.  The state's knowing suppression of the Epperson information violated Doan's rights under the Due Process Clause and state-induced ineffective assistance of trial counsel which violated Doan's rights guaranteed by the Sixth and Fourteenth Amendments.  *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194 (1963); *United States v. Bagley*, 473 U.S. 667, 105 S.Ct. 3375 (1985); *Kyles v. Whitley*, 514 U.S. 419, 115 S.Ct. 1555 (1995); *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984).  In this case, disclosure of the suppressed evidence to reasonably competent counsel would have made a different result reasonably probable.  *Mot. for Leave & Second Amend. Pet., Ex. C & Y.*

## I.    Conclusion.

In other cases, conduct less egregious than committed in this case warranted a new trial.  *Nuckols v. Gibson*, 233 F3d 1261 (CA 10, 2000); *Bragg v. Norris* 128 F. Supp. 2d 587 (E.D.

Arkansas. 2000); *Faulkner v. Cain*, 133 F. Supp. 2d 449 (E.D. La. 2001); and *United States ex. rel. Harding v. Cowan*, 152 F. Supp. 2d 995 (N.D. Ill. 2001).

This case is similar, although much more egregious, than the recent case of *Jamison v. Collins*, 291 F.3d 389 (6th Cir. 2002), decided by the Sixth Circuit Court of Appeals. In *Jamison*, the Sixth Circuit found the police failed to turn over documents to the prosecution. Such is not the case here as it is clear the prosecution had the evidence in its files. The Sixth Circuit found the prosecution's conduct violated *Brady v. Maryland*, 373 U.S. 83 (1963); *Kyles v. Whitley*, 514 U.S. 419 (1995); and *Strickler v. Greene*, 527 U.S. 263 (1999). The Sixth Circuit affirmed the District Court's grant of habeas corpus and ordered Jamison's death sentence reversed and remanded for a new trial. *Id.* at 392.

Another recent Ohio case is *Beckett v. Haviland*, No. 3:01CV7374, slip. op. (N.D. Oh), attached, affirmed *Beckett v. Haviland*, 76 Fed. Appx. 726 (6th Cir. 2003). There, the District Court granted habeas relief because the State did not disclose that it told a key witness it would provide a favorable recommendation to the parole board. *Beckett* shows that Doan should be given a new trial because of the deal struck with Mitchell Epperson. Epperson's perjury, suborned by the State is itself certainly enough for relief. Add in the deception and lies told by other witnesses which were contradicted by their earlier statements and the misconduct is that much worse. See also *Castleberry v. Brigano*, 349 F3d 286 (6th Cir. 2003), where the Sixth Circuit granted habeas relief due to Brady violations by the prosecution, including an inconsistent statement related to the issue of identity.

In *Napue v. Illinois*, 360 U.S. 264 (1959), Chief Justice Warren commented on such deception. He quoted from a New York Court of Appeals case involving false testimony from a witness who had been given consideration for his testimony:

> A lie is a lie, no matter what its subject, and, if it is in any way relevant to the case, the district attorney has the responsibility and duty to correct what he knows to be false and elicit the truth.

*Id.* at 269-270 (quoting *People v. Savvides*, 136 N.E. 2d 853, 854-855 (1956)).  The *Savvides* case held that where a witness for the prosecution falsely testified that there was no agreement that he was to receive lenient treatment for testifying against the defendant, the Assistant District Attorney should have exposed the lie of the witness.

The foregoing evidence described in subsections A – H was exculpatory evidence which prosecutors should have disclosed to Doan's trial counsel.  However, prosecutors did not disclose this evidence to the defense.  *Mot. for Leave & Second Amend. Pet., Ex. C & Y - Affidavits of Lead Trial Counsel John Rion, Esq.*  As United States District Judge Krenzler put it in *Stifel*, "Finally, the most persuasive indication that the defense did not possess this evidence is the fact that the defense never used this evidence at trial."  *United States v. Stifel*, 594 F.Supp. 1525 (N.D. Ohio 1984).

The suppression of the exculpatory and impeaching evidence as specified in this Ground for Relief is material in the sense that its disclosure to competent defense counsel would have made a different result at Doan's trial reasonably likely.  *Kyles v. Whitley*, 514 U.S. 419 (1995).  Doan was denied his rights under the Due Process Clause of the Fourteenth Amendment and the right to effective assistance of counsel guaranteed by the Sixth Amendment.

## THIRD GROUND FOR RELIEF

**PETITIONER'S CONVICTIONS WERE OBTAINED IN VIOLATION OF HIS FEDERAL CONSTITUTIONAL RIGHTS BECAUSE, CONSIDERED COLLECTIVELY, THE STATE SUPPRESSED MATERIAL EXCULPATORY EVIDENCE.**

Considered collectively, as it must be under *Kyles*, the prosecution's suppression of the exculpatory and impeachment evidence specified in the Second Ground for Relief and accompanying exhibits from the post-conviction petition, is material in the sense that its disclosure to competent defense counsel would have made a different result at Doan's trial reasonably likely. *Mot. for Leave & Second Amend. Pet., Ex. C & Ex. Y; Kyles,* 514 U.S. at 419. Doan was denied his rights under the Due Process Clause of the Fourteenth Amendment. *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194 (1963); *United States v. Bagley*, 473 U.S. 667, 105 S.Ct. 3375 (1985); *Kyles v. Whitley*, 514 U.S. 419, 115 S.Ct. 1555 (1995); *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984).

The state's suppression of this exculpatory and impeachment evidence violated Doan's rights under the Due Process Clause of the Fourteenth Amendment and the right to effective assistance of counsel guaranteed by the Sixth Amendment.

## FOURTH GROUND FOR RELIEF

**THE GOVERNMENT'S FAILURE TO DISCLOSE MATERIAL IMPEACHMENT AND EXCULPATORY EVIDENCE RENDERED PETITIONER'S COUNSEL UNABLE TO PROVIDE EFFECTIVE ASSISTANCE OF COUNSEL AT HIS TRIAL IN VIOLATION OF PETITIONER'S RIGHTS UNDER THE SIXTH AND FOURTEENTH AMENDMENTS.**

The state violates a defendant's right to the effective assistance of counsel "when it interferes in certain ways with the ability of counsel to make independent decisions about how to conduct the defense." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). The right to the

effective assistance of counsel is the right of the accused to require the prosecution's case to survive the crucible of meaningful adversarial testing.

In this case, the prosecution violated Doan's right to the effective assistance of trial counsel by failing to disclose to defense counsel material exculpatory and impeachment evidence as set out in the Second Ground for Relief.  The state's suppression of material exculpatory evidence interfered with defense counsel's ability to make independent decisions about how to conduct Doan's defense and denied Doan the right to subject the prosecution's case to meaningful adversarial testing.

The state's failure to disclose the aforementioned evidence constituted state-induced ineffective assistance of trial counsel in violation of Doan's rights under the Sixth and Fourteenth Amendments.  In this case, disclosure of this suppressed evidence to reasonably competent trial counsel would have made a different result at both trial and penalty phases reasonably probable. *Mot. for Leave and Second Amend. Pet. At Ex. C & Y.*

Alternatively, to the extent that the Court finds, after additional facts are developed at an evidentiary hearing on this matter, that any of the foregoing exculpatory and impeachment evidence discussed in the Second Ground for Relief could have been discovered by defense counsel or was discovered by defense counsel, then defense counsel's performance was unreasonably deficient and prejudicial to Doan for failing to investigate and present such evidence to the jury.  (See Twelfth Ground for Relief)