LEXSEE 2004 U.S. APP. LEXIS 11418

**Rodney Clay Evans, Appellant, v. Allen Luebbers, Superintendent, Potosi Correctional Center, Appellee.**

No. 03-1900

UNITED STATES COURT OF APPEALS FOR THE EIGHTH CIRCUIT

*371 F.3d 438; 2004 U.S. App. LEXIS 11418*

**January 14, 2004, Submitted**
**June 10, 2004, Filed**

**PRIOR HISTORY:** [*1] Appeal from the United States District Court for the Western District of Missouri. *State v. Evans, 992 S.W.2d 275, 1999 Mo. App. LEXIS 522 (Mo. Ct. App., 1999)*

**DISPOSITION:** Affirmed.

**LexisNexis(R) Headnotes**

**COUNSEL:** For Rodney Clay Evans, Appellant: Elizabeth Unger Carlyle, Lee's Summit, MO.

For Allen Luebbers, Superintendent, Potosi Correctional Center, Appellee: Stephen David Hawke, Jeremiah W. (Jay) Nixon, Attorney General, Cassandra Kaye Dolgin, ATTORNEY GENERAL'S OFFICE, Jefferson City, MO. Lisa J. Berry, Jefferson, City, MO.

**JUDGES:** Before LOKEN, Chief Judge, FAGG and BOWMAN, Circuit Judges.

**OPINIONBY:** BOWMAN

**OPINION:** BOWMAN, Circuit Judge.

Rodney Clay Evans was convicted of first-degree murder in Missouri and was sentenced to life in prison for killing his estranged wife, Sheilah, by drowning her in the family pool. After he exhausted his state appellate and post-conviction remedies, he filed this *28 U.S.C. § 2254 (2000)* habeas corpus petition by which he sought to have his conviction vacated. The District Court n1 denied the petition but granted a certificate of appealability, which we enlarged. We affirm.

n1 The Honorable Dean Whipple, Chief Judge, United States District Judge for the Western District of Missouri.

[*2]
In his appeal, Evans raises five issues for our consideration. Our review of these claims is governed by the Anti-Terrorism and Effective Death Penalty Act of 1996, pursuant to which we may not grant a writ of habeas corpus with respect to any issue decided by a state court unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court" or the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court." *28 U.S.C. § 2254(d)(1), (2)*; see also *Penry v. Johnson, 532 U.S. 782, 792-93, 150 L. Ed. 2d 9, 121 S. Ct. 1910 (2001)* (explaining § *2254(d)(1)*'s legal standard). n2 In reviewing a district court's decision denying a § 2254 petition, we review any findings of fact for clear error and conclusions of law de novo. *King v. Bowersox, 291 F.3d 539, 540 (8th Cir.)*, cert. denied, *537 U.S. 1093 (2002)*.

n2 In Penry, the Court reiterated its interpretation of § *2254(d)(1)*'s "contrary to" and "unreasonable application of" federal law standards.

A state court decision will be "contrary to" our clearly



established precedent if the state court either "applies a rule that contradicts the governing law set forth in our cases," or "confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent." A state court decision will be an "unreasonable application of" our clearly established precedent if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case."

. . . Distinguishing between an unreasonable and an incorrect application of federal law, we clarified that even if the federal habeas court concludes that the state court decision applied clearly established federal law incorrectly, relief is appropriate only if that application is also objectively unreasonable.

*532 U.S. at 792-93* (citations omitted).

[*3]

Evans first argues that there was insufficient evidence to find him guilty beyond a reasonable doubt. Therefore, he claims, his conviction is constitutionally invalid. See *In re Winship, 397 U.S. 358, 364, 25 L. Ed. 2d 368, 90 S. Ct. 1068 (1970)*. In the § 2254 setting, we must consider "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia, 443 U.S. 307, 319, 61 L. Ed. 2d 560, 99 S. Ct. 2781 (1979)* ("Under 28 U.S.C. § 2254 . . . the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Id. at 324*). We also presume that the findings of fact made by a state court are correct unless the petitioner rebuts that presumption by clear and convincing evidence, *28 U.S.C. § 2254(e)(1)*; *Hall v. Luebbers, 341 F.3d 706, 712 (8th Cir. 2003)*, which Evans has not done. Based on the evidence presented at trial, the [*4] Missouri Court of Appeals held that a jury could properly convict Evans of first-degree murder and could have found:

1. That [Evans] had told people he had thought about killing Sheilah.

2. That Sheilah was planning to get a divorce and that [Evans] was upset about the possibility of the divorce and having to divide the marital property and perhaps lose his home.

3. That [Evans] had been informed by his attorney that he would be better off financially if something were to happen to his wife before the divorce.

4. That [Evans] made statements to a number of people about his wife ending up in the swimming pool and to one person that if his wife did not forget about the divorce "they're liable to find her floating in the pool."

5. That Sheilah was frightened of [Evans], she had gotten an ex parte restraining order against him at one point; she told various people that if something happened to her they should not assume it was an accident.

6. That [Evans] picked Sheilah up at the Tulsa Airport on the night of September 8, 1994; on the way back to Springfield Sheilah had told [Evans] that she was planning on going [*5] through with the divorce; [Evans] and Sheilah arrived home between 1:00 and 1:30 a.m. on September 9, 1994; and paramedics arrived at 2:55 a.m. to find that Sheilah had drowned in the pool.

7. That the autopsy revealed fresh bruising on Sheilah's head consistent with blows from a human fist. The bruises were made within approximately two hours prior to death. The bruises were inconsistent with a fall into the pool. They resulted from "pretty good blows [causing] this amount of hemorrhage." According to the pathologist such bruising showed a "significant possibility" of homicide.

8. That [Evans's] versions of the events of that night weren't consistent.

*State v. Evans*, 992 S.W.2d 275, 294-95 (Mo. Ct. App. 1999). Based on the evidence, and applying to it the Jackson v. Virginia standard (as did the Missouri Court of Appeals), we are satisfied that the Missouri Court of Appeals' resolution of this issue was not contrary to, or an unreasonable application of, clearly established federal law. The District Court did not err when it denied the petitioner relief on this claim.

Evans next raises his sufficiency-of-the-evidence claim in [*6] another form and insists that the trial court erred when it admitted his numerous incriminating statements into evidence without sufficient independent proof of the *corpus delicti*. See *State v. Edwards*, 116 S.W.3d 511, 544 (Mo. 2003) (en banc) ("Out-of-court confessions, statements, or admissions by the accused are generally not admissible unless they are corroborated by independent evidence, either circumstantial or direct, showing the *corpus delicti* of the crime."), cert. denied, 158 L. Ed. 2d 92, 124 S. Ct. 1417 (2004); *State v. McQuinn*, 361 Mo. 631, 235 S.W.2d 396, 397 (Mo. 1951) (en banc). As already noted, a conviction obtained without proof beyond a reasonable doubt is constitutionally invalid and we may review a claim that a conviction is wanting for lack of such proof under the standard established in Jackson v. Virginia. Regarding the *corpus delicti* issue as it is pled by Evans, however, no constitutional rights are at stake. Rather, his claim is based on Missouri's *corpus delicti* requirement that the prosecution present *some* independent proof of the death of the victim and that the death was caused [*7] by human agency (i.e., not by accident or suicide), usually prior to introducing incriminating statements made by the defendant. *McQuinn*, 235 S.W.2d at 397 ("It is undoubtedly the rule that confessions of a crime not made in open court or before a committing magistrate and without proof aliunde that a crime has been committed will not sustain a conviction. However, . . . full proof of the corpus delicti independent of the defendant's extrajudicial confessions is not required. 'On the contrary, what seemed to be only slight corroborating facts have been held sufficient.'" (citations omitted)). Missouri's particular formulation of the *corpus delicti* rule is of an evidentiary nature and we may not review any evidentiary rulings unless they implicate federal constitutional rights. *Estelle v. McGuire*, 502 U.S. 62, 68, 116 L. Ed. 2d 385, 112 S. Ct. 475 (1991). n3 The abstract constitutional right at issue here is the *Fourteenth Amendment's* requirement that Evans be found guilty only where there is evidence to convince a reasonable trier of fact beyond a reasonable doubt. As we already explained, the Missouri Court of Appeals' determination that this requirement was [*8] fulfilled was not contrary to, or an unreasonable application of, clearly established federal law. Accordingly, this claim was properly denied.

n3 Evans argues that our prior decisions, see, e.g., *Howard v. Caspari*, 99 F.3d 895, 897 (8th Cir. 1996), cert. denied, 520 U.S. 1234, 137 L. Ed. 2d 1037 (1997), and *Lufkins v. Leapley*, 965 F.2d 1477, 1482 (8th Cir.), cert. denied, 506 U.S. 895, 121 L. Ed. 2d 200 (1992), show that the *corpus delicti* doctrine is of a constitutional dimension. We pause here to note that these earlier cases--and the Supreme Court decisions from which they stem--*Wong Sun v. United States*, 371 U.S. 471, 488-89, 9 L. Ed. 2d 441, 83 S. Ct. 407 (1963), and *Smith v. United States*, 348 U.S. 147, 152, 99 L. Ed. 192, 75 S. Ct. 194 (1954)--announce a rule with somewhat different bounds than the rule Evans now urges upon us. Though the phrase *corpus delicti* permeates these cases, the clear constitutional rule announced in these decisions is the requirement that a defendant's conviction not rest solely upon his or her confession or extra-judicial statements; that is, there must be independent evidence that corroborates these statements. Whatever Missouri's *corpus delicti* rule might require, it is clear that the federal constitutional requirements have been met in this case, for these merely necessitate "that the corroborative evidence does not have to prove the offense beyond a reasonable doubt, or even by a preponderance, as long as there is substantial independent evidence that the offense has been committed, and the evidence as a whole proves beyond a reasonable doubt that defendant is guilty." *Smith*, 348 U.S. at 156.

[*9]

As his third point, Evans urges that the prosecution violated Brady v. Maryland's requirement that the prosecution disclose evidence favorable to the accused. 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194 (1963). Specifically, Evans argues that his rights as defined by Brady were violated because the State did not disclose that Dr. Spindler, the State's pathologist, was previously disciplined for illegally prescribing narcotics and had his license suspended in Illinois. We agree with the District Court that this claim was procedurally defaulted, notwithstanding the fact that the Missouri Court of Appeals reviewed the claim for plain error after it concluded that the issue had not been raised at trial. *Evans*, 992 S.W.2d at 293-94. Although procedurally defaulted, we may review this claim if Evans can show cause for the default and prejudice from the alleged violation of his rights. *Coleman v. Thompson*, 501 U.S. 722, 750, 115 L. Ed. 2d 640, 111 S. Ct. 2546 (1991).

Evans has shown neither. On the record presented to us, Evans has not made a showing that the prosecution knew of this information prior to, or during, the trial and deliberately withheld it; that is, he has not shown [*10] cause. Cf. *Strickler v. Greene, 527 U.S. 263, 281-82, 144 L. Ed. 2d 286, 119 S. Ct. 1936 (1999)* (explaining components of a Brady violation). We therefore do not reach the issue of prejudice and the District Court did not err when it denied Evans relief on his Brady claim.

Evans next urges that his *Sixth Amendment Confrontation Clause* rights were violated when the trial court admitted--through the testimony of some ten different witnesses--numerous out-of-court statements made by Evans's wife, the victim. The trial court admitted statements suggesting that Sheilah Evans was scared of the petitioner (e.g., "I'll be like another Nicole Simpson." Trial Tr. at 486; "This might be another O.J. Simpson case." Trial Tr. at 341), that Sheilah Evans was verbally and physically abused by the petitioner, that Sheilah Evans intended to divorce the petitioner, and that Sheilah Evans obtained a protective order against the petitioner. Until recently, Ohio v. Roberts, permitted the introduction of hearsay statements against a criminal defendant if the evidence was shown to be dependable because it "falls within a firmly rooted hearsay exception" or "it contains 'particularized guarantees [*11] of trustworthiness.'" *Lilly v. Virginia, 527 U.S. 116, 125, 144 L. Ed. 2d 117, 119 S. Ct. 1887 (1999)* (plurality opinion) (quoting *Ohio v. Roberts, 448 U.S. 56, 66, 65 L. Ed. 2d 597, 100 S. Ct. 2531 (1980))*. The District Court determined that the admission of these statements did not involve an unreasonable application of clearly established federal law because the bulk of the statements fell within firmly rooted exceptions to the hearsay rule. We agree. Some of Sheilah Evans's statements were properly admitted as statements made by her for the purpose of obtaining a medical diagnosis. See *White v. Illinois, 502 U.S. 346, 355 n.8, 116 L. Ed. 2d 848, 112 S. Ct. 736 (1992); United States v. Sumner, 204 F.3d 1182, 1185 (8th Cir. 2000)*. And, as the Missouri Court of Appeals determined, the bulk of the statements were properly admitted as evidence of Sheilah Evans's mental state--which the defense put into question when it implied she committed suicide--under the state-of-mind exception. *Lenza v. Wyrick, 665 F.2d 804, 810 (8th Cir. 1981)* (holding that victim's "statements were hearsay admissible under the 'state of mind' exception to the hearsay rule and [*12] constitutionally permissible under Ohio v. Roberts." (citations omitted)); see also *Hayes v. York, 311 F.3d 321, 324-25 (4th Cir. 2002)*, cert. denied, *538 U.S. 979 (2003)*. The District Court and the Missouri Court of Appeals both noted that some of the statements regarding physical abuse should not have been admitted, but because the substance of most of these statements came into evidence through the petitioner's own inculpatory statements, any unfair prejudice was negligible.

We are cognizant that the Supreme Court's recent decision in *Crawford v. Washington, -- U.S. --, 158 L. Ed. 2d 177, 124 S. Ct. 1354 (2004)*, arguably bears on this case. In Crawford, the Court overruled *Ohio v. Roberts* and held that "testimonial" hearsay is inadmissable against a criminal defendant unless the declarant is unavailable and the defendant had a prior opportunity to cross-examine the declarant. *Crawford, 124 S. Ct. at 1374.* We doubt Crawford's application to the case at hand for at least two reasons. First, the Crawford Court did not suggest that this doctrine would apply retroactively and the doctrine itself does not appear to fall [*13] within either of the two narrow exceptions to Teague v. Lane's non-retroactivity doctrine. *489 U.S. 288, 103 L. Ed. 2d 334, 109 S. Ct. 1060 (1989)*; see also, *Williams v. Taylor, 529 U.S. 362, 411-13, 146 L. Ed. 2d 389, 120 S. Ct. 1495 (2000)* (discussing Teague and AEDPA). n4 Second, even if Crawford's rule could apply retroactively as a general proposition, by the strict terms of its holding, Crawford does not apply to this particular case. We recognize that there is language in Crawford that could arguably encompass some of Sheilah Evans's statements. See *Crawford, 124 S. Ct. at 1364* (discussing "various formulations of this core class of 'testimonial' statements"). We also recognize that the Court declined to give a full definition of what "testimonial" statements are, specifically saving that question for another day. *Id. at 1374.* Still, by its terms, Crawford's holding applies "to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations. These are the modern practices with closest kinship to the abuses at which the *Confrontation Clause* was directed." *Id.* The hearsay statements [*14] of Sheilah Evans do not fit this definition. See *United States v. Reyes, 362 F.3d 536, 540 n.4 (8th Cir. 2004)* (noting testimonial vs. non-testimonial statement distinction).

---

n4 The two exceptions to Teague's non-retroactivity rule are for: (1) new rules that place "'certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe,'" *Teague, 489 U.S. at 311* (plurality opinion) (quoting *Mackey v. United States, 401 U.S. 667, 692, 28 L. Ed. 2d 404, 91 S. Ct. 1160 (1971)* (Harlan, J., concurring in part and dissenting in part)), and (2) "watershed rules of criminal procedure" that increase the accuracy of the judicial process, *id. at 311* (plurality opinion).

371 F.3d 438; 2004 U.S. App. LEXIS 11418, *

In sum, because the decision of the Missouri Court of Appeals denying Evans relief on his *Confrontation Clause* claims was not contrary to, or an unreasonable application of, clearly established federal law, the District Court did not err when it denied this claim. [*15]

As his final claim, Evans urges that his *Sixth Amendment* right to effective assistance of counsel was violated because his *trial* counsel failed to present expert testimony to refute the State's expert witness, Dr. Spindler. The District Court concluded that this claim was procedurally defaulted because it had not been presented to the Missouri Court of Appeals during Evans's direct appeal. We agree. Still, we may review this claim if Evans can show cause for the default and prejudice from the alleged violation of his rights. *Coleman, 501 U.S. at 750*. Evans contends that the ineffective assistance of his *appellate* counsel is the cause for his failure to properly present the issue in state court. In order for ineffective assistance of counsel to itself be cause to excuse a procedural default, the ineffective assistance must rise to the level of an independent constitutional violation. *Edwards v. Carpenter, 529 U.S. 446, 451-52, 146 L. Ed. 2d 518, 120 S. Ct. 1587 (2000)*. Thus, the assistance rendered must have been constitutionally substandard and prejudice must have resulted therefrom. *Strickland v. Washington, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984)*. [*16] Evans concedes, however, that his direct-appeal counsel's omission of the claim was a strategic decision made after "considering the relative strength of all of the issues." Appellant's Supp. Br. at 6. This concession is fatal to Evans's claim of ineffective assistance of counsel, inasmuch as we have frequently recognized that the strategic and tactical decisions made by counsel, though they may appear unwise in hindsight, cannot serve as the basis for an ineffective-assistance claim under Strickland. See, e.g., *Graham v. Dormire, 212 F.3d 437, 440 (8th Cir. 2000)*. Because Evans cannot show his counsel's actions on direct appeal fell below the level guaranteed by the constitution, he cannot show cause that will excuse his procedural default. n5 We conclude that the District Court properly refused to reach this claim.

> n5 We also reject Evans's claim that he has passed through the "actual innocence" gateway on the strength of, inter alia, the deposition of Dr. Dix, another pathologist. See *Schlup v. Delo, 513 U.S. 298, 327, 130 L. Ed. 2d 808, 115 S. Ct. 851 (1995)* ("Petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.").

[*17]

For the foregoing reasons, the judgment of the District Court is affirmed.

LEXSEE

CHARLES ANDREW DORCHY, Petitioner, v. KURT JONES, Respondent.

CASE NO. 02-CV-74662-DT

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN, SOUTHERN DIVISION

*2004 U.S. Dist. LEXIS 9436*

May 26, 2004, Decided

**PRIOR HISTORY:** *People v. Dorchy, 466 Mich. 856, 643 N.W.2d 575, 2002 Mich. LEXIS 657 (2002)*

**DISPOSITION:** Petition for writ of habeas corpus conditionally granted.

**LexisNexis(R) Headnotes**

**COUNSEL:** [*1] Charles Dorchy, Petitioner, Pro se.

For Charles Dorchy, Petitioner: Federal Defender, Federal Defender Office, Detroit, MI.

For Kurt L. Jones, Warden, Respondent: Laura G. Moody, Michigan Department of Attorney General, Habeas Corpus Division, Lansing, MI.

**JUDGES:** ARTHUR J. TARNOW, UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** ARTHUR J. TARNOW

**OPINION:**

OPINION AND ORDER CONDITIONALLY GRANTING PETITION FOR WRIT OF HABEAS CORPUS n1

---

n1 Staff Attorney Cheryl Takacs Bell provided quality research assistance.

---

Petitioner Charles Andrew Dorchy, a state prisoner presently confined at the Carson City Correctional Facility in Carson City, Michigan, has filed a petition for writ of habeas corpus pursuant to *28 U.S.C. § 2254*. Petitioner was convicted of first-degree premeditated murder and felony firearm following a jury trial in the Oakland County Circuit Court in 1998. He also pleaded guilty to being a felon in possession of a firearm. Petitioner was sentenced to life imprisonment without the possibility [*2] of parole on the murder conviction, a concurrent term of two to seven years imprisonment on the felon in possession conviction, and a consecutive term of two years imprisonment on the firearm conviction. He was also ordered to pay $ 20,000 in restitution.

In his pleadings, Petitioner raises claims concerning the admission of statements from unavailable witnesses, the admission of threats against a witness, the bind-over decision, the admission of evidence regarding his flight and his use of an alias, the effectiveness of trial counsel, and cumulative error. Having reviewed the case, the Court concludes that Petitioner's rights under the *Confrontation Clause of the Sixth Amendment* were violated by the admission of statements from unavailable witnesses and conditionally grants the petition for a writ of habeas corpus.

I. Facts

Petitioner's convictions stem from the shooting death of Larry Adams in Royal Oak Township on January 10, 1996. Petitioner was charged with the first-degree murder of Larry Adams, as well as assault with intent to murder Deon McCrary, two counts of felony firearm, and being a felon in possession of a firearm. The prosecution's theory was that Petitioner [*3] killed Adams to nullify a drug debt and shot at McCrary during the incident and that co-defendant Damian Martin provided the murder weapon and fired several shots at



Case 1:00-cv-00727-SSB-TSH    Document 58-2    Filed 07/19/2004    Page 7 of 17

Page 2
2004 U.S. Dist. LEXIS 9436, *

Adams and another man named Ernest Knox. Petitioner fled to Florida and used several aliases following the shooting. Damian Martin was convicted of second-degree murder and felony firearm following a jury trial in July, 1996.

Petitioner's preliminary examination was conducted in June and July of 1998. The prosecution sought to present Ernest Knox as a witness, but could not locate him. Consequently, the prosecution moved to introduce Knox's preliminary examination testimony from co-defendant Martin's case. The state district court concluded that Knox's testimony was admissible under Michigan Rule of Evidence 803(24). At the conclusion of the proceeding, Petitioner was bound over for trial. Prior to trial, Petitioner moved to quash the information on the basis that Knox's testimony was improperly admitted. The prosecution countered the motion and moved to introduce Knox's testimony from Martin's trial at Petitioner's trial. Following a hearing on Knox's availability, the trial court denied Petitioner's motion and granted [*4] the prosecution's motion.

At trial, Melody Hurst testified that Petitioner showed her a black nine-millimeter semi-automatic weapon while they were at a hair salon in Royal Oak Township around 7:10 p.m. on January 10, 1996. Later, while she was driving in a van with Petitioner, Damian Martin, and others, one passenger received a page. Petitioner returned the call on a cellular phone. Hurst heard Petitioner say, "Nigger, I ain't got nothin, Nigger, I'll kill you." She described Petitioner's demeanor as belligerent and angry. Petitioner told her that he was talking to her cousin, Larry Adams. She assumed that they had a monetary dispute. Petitioner called his girlfriend, the mother of his children, and told her to leave their house. Petitioner then asked Martin to hand him "the mag." Martin gave Petitioner a gun which appeared to be the same one he had earlier at the salon. Petitioner, Martin, and another passenger got out of the van when they were a two or three-minute walk from where Adams was killed. Hurst testified that she had asked Petitioner to use his cellular phone before he left the van, but Petitioner refused telling her that he did not want her to give a warning. Later, [*5] when she arrived at her aunt's house, she saw an ambulance and said to the others, "He must have done it," meaning Petitioner. She saw Adams' body lying in front of the house. Hurst stated that she was afraid to testify at trial because she was threatened by Petitioner's girlfriend in the county jail.

Stephanie Hurst testified that she was Larry Adams' cousin and lived in Royal Oak Township. At 7:45 p.m. on January 10, 1996, she was walking from her house to her brother-in-law's house a few houses away when she saw Petitioner and Ernest Knox standing on the sidewalk with Larry Adams and Damian Martin and Deon McCrary standing nearby on a neighbor's porch. The men were talking and she noticed that Larry Adams had a serious look on his face and his hands were in his pockets. When she arrived at her brother-in-law's house, she heard three gunshots and then three more gunshots. She looked outside and saw Adams lying on his stomach with his hands in his pockets.

Robin Hurst testified that she was Larry Adams' cousin and was visiting her aunt's house that evening. She saw the group of five men outside talking, but did not hear anyone yelling. When she heard the gunshots, she looked outside [*6] and saw Adams lying on the ground.

Ernest Knox was scheduled to testify at trial, but police officers were unable to locate him. Following a determination that Knox was unavailable, the trial court admitted his testimony from co-defendant Martin's trial. In Martin's case, Knox testified that he was with Deon McCrary and Larry Adams in Royal Oak Township on the night of January 10, 1996. Petitioner and Martin came to the apartment. Petitioner, carrying a black nine millimeter semi-automatic gun in his hand, walked toward Adams and put the gun in his pocket. Petitioner and Adams then discussed money Petitioner owed Adams. Eventually, they all went outside and the conversation continued with Adams demanding his money and Petitioner insisting that he could not pay. Knox did not hear Adams threaten to kill anyone. At some point, Adams turned his head and Petitioner pulled out his gun and shot Adams in the back of the head about three times. Martin also shot Adams. Knox recalled that Adams' hands were in his pockets at the time of the shooting and that Adams never pulled out a gun. Knox tried to get out of the way of the shots, but Martin fired at him too. Knox ran around the corner to [*7] McCrary's aunt's house. Knox had a 380-caliber handgun and McCrary had a Colt 45, but neither of them pulled out their guns. They hid their guns under a mattress at McCrary's aunt's house, then went to Knox's uncle's house and called the police. Knox and McCrary went to the police station a short time later and gave statements.

On cross-examination, Knox agreed that Adams was angry and looking for Petitioner because Petitioner owed Adams $ 10,000 for drugs. Knox called a pager number with a message for Petitioner that night and overheard Adam's phone conversation with Petitioner in which Adams demanded payment. During a second call, Knox heard Adams say, "What, is your life in danger? No, your life ain't in danger." When Petitioner arrived at the apartment, Knox offered to help Petitioner with the debt, but Petitioner refused.

Royal Oak Township Lieutenant James Thompson testified that he responded to the scene. Larry Adams' hands were in his coat pockets and he had a gun in his belt. Thompson found seven spent shell casings (three nine millimeter and four 380s) and one spent bullet at the scene. No weapons were recovered from McCrary's aunt's house, but police did recover a 380-caliber [*8] handgun and a 45-caliber automatic handgun from a dumpster in Southfield. The guns did not appear to have been fired. Thompson acknowledged that Adams had been convicted of possessing more than 650 grams of cocaine and was evading the police.

Oakland County Deputy Medical Examiner Dr. Mark Fischione testified that Larry Adams suffered six gunshot wounds resulting in his death. One wound was a contact wound. Five of the gunshots were fired in a back to front direction.

Michigan State Police Lieutenant Mike Thomas testified that two bullets recovered from Adams' neck and skull were nine millimeter. The bullets found in Adams' arm and at the scene were 380-caliber. Three nine millimeter fired casings and four 380-caliber shell cases were found at the scene. Thomas believed that only two guns were involved in the shooting and that the guns recovered from Adams' body and the dumpster were not those weapons.

Sergeant Mark Means testified that Petitioner fled Michigan after the shooting and lived in Florida for approximately two and one-half years. He also stated that Petitioner used at least three aliases while in Florida.

Outside the jury's presence, Deon McCrary stated that he would [*9] assert his *Fifth Amendment* right against self-incrimination if called as a witness. The prosecution moved to introduce McCrary's prior police statement as an excited utterance or present sense impression under *Michigan Rule of Evidence 804(b)(6)*. The trial court admitted the statement over defense counsel's objection. Defense counsel then moved to have McCrary's testimony from co-defendant Martin's trial admitted into evidence. The prosecution did not object and that testimony was also admitted.

In his taped police statement, Deon McCrary stated that Petitioner and Damian Martin came to the house on the night of the shooting. Petitioner had a nine millimeter gun which he put in his pocket. He, Petitioner, Adams, Martin, and Knox went outside. McCrary heard Adams say, "I just want my money," and saw Petitioner shoot Adams in the head about three times. Adams fell and then Petitioner turned and shot at him. McCrary ran. He admitted that he had a gun, but never had a chance to fire it. He said that he put his gun and Knox's gun under the bed at his aunt's house after the shooting.

At co-defendant's Martin's trial, McCrary testified that he did not recall what happened that night and [*10] denied seeing the shooting. McCrary testified that he told the police what Knox had told him had happened.

Ira Oldham testified that he was in the van with Petitioner, Damian Martin, Mike Evans, and Melody Hurst on the night of the shooting. He was paged by Knox and Petitioner returned the call from a pay phone. Petitioner was upset and told him to take him to Royal Oak Township. Eventually, Petitioner and Martin exited the van. Later, Oldham and Hurst drove back to the area and saw police cars.

Petitioner testified in his own defense at trial, claiming that the shooting was done in self-defense. Petitioner testified that he worked for his friend Larry Adams selling drugs. Knox and McCrary also worked for Adams. They all carried guns. Petitioner stated that he owed Adams $ 10,000 for fronting him drugs and that he had been avoiding Adams for months because he could not pay the debt. Petitioner said that he did not know if Adams was going to do something to him for not paying, but stated that if someone owed money, "we going to get our money" by doing "whatever we had to do" even "if we had to kill for it." Petitioner recalled speaking to Adams that night and said that Adams told [*11] him to bring his money or he would kill him. Petitioner was upset and felt threatened, but told Adams "you ain't going to do a damn thing to me." Petitioner called his girlfriend and warned her to get out of their house. He then called Adams back and asked if his life was in danger. Adams said no and laughed, but Petitioner believed his life was in danger. Petitioner felt he had no choice but to see Adams.

Petitioner testified that he went to the apartment with his gun out, but put it in his pocket while he and Adams talked. Adams demanded his money, but Petitioner told him he did not have the money and would pay him the next day. Eventually, they all went outside. Adams kept telling Petitioner that he could not let him go. Petitioner believed that if he tried to leave, he would be killed. He felt he had nowhere to run or hide. Petitioner admitted pulling out his gun. When Adams turned to look at Knox, he thought Adams was "going for something" with his hands, so he ducked and fired at Adams. He then ran away. Petitioner stated that he did not want to kill Adams but did so because Adams was going to kill him and he felt he had no choice. On cross-examination, Petitioner stated that [*12] Adams' hands were out of his pockets, but could not explain why his hands were in his pockets when his body was found. Petitioner admitted that he pointed his gun at Adams when his back was turned and conceded that he never saw a gun in Adams' hand. Petitioner acknowledged that he fled to Florida after the shooting and used aliases

while living there for more than two years. Petitioner knew that Adams was wanted on a case involving a potential life sentence. He admitted that he could have gone to Florida and lived under an assumed name.

At the close of trial, the jury acquitted Petitioner of the assault charge and one felony firearm charge, but found him guilty of first-degree premeditated murder and felony firearm. Petitioner pleaded guilty to being a felon in possession of a firearm. The trial court subsequently sentenced him to life imprisonment without the possibility of parole, a concurrent term of two to seven years imprisonment, and a consecutive term of two years imprisonment on those convictions. The court also ordered him to pay $ 20,000 in restitution.

## II. Procedural History

Following sentencing, Petitioner filed an appeal as of right with the Michigan Court [*13] of Appeals, asserting the same claims raised in the present petition. The Michigan Court of Appeals affirmed Petitioner's convictions and sentence. *People v. Dorchy, 2001 Mich. App. LEXIS 2554, No. 217665, 2001 WL 1134733 (Mich. Ct. App. Sept. 18, 2001)* (unpublished). Petitioner filed a delayed application for leave to appeal with the Michigan Supreme Court raising the same claims, which was denied. *People v. Dorchy, 466 Mich. 856, 643 N.W.2d 575 (2002)*.

Petitioner filed the present petition for writ of habeas corpus on November 26, 2002, asserting the following claims:

> I. The trial court erred in admitting alleged threats made to a witness while she was in the county jail.
>
> II. The trial court erred in admitting the prior testimony of missing witness Ernest Knox.
>
> III. The trial court erred in admitting the prior statement of unavailable witness Deon McCrary.
>
> IV. He was denied due process when he was bound over on insufficient evidence.
>
> V. The trial court erred in admitting evidence of his use of an alias. VI. The trial court erred in admitting evidence of flight.
>
> VII. He was denied the effective assistance of counsel because counsel failed to [*14] object to a restitution order.
>
> VIII. He was denied a fair trial by the cumulative effect of the alleged errors.

Respondent filed an answer to the petition on May 5, 2003, asserting that Petitioner's claims should be denied for lack of merit. Petitioner filed a reply to the answer on May 19, 2003. This Court appointed counsel for Petitioner on December 16, 2003 and ordered additional briefing. Petitioner's counsel filed a supplemental brief on March 15, 2004.

## III. Standard of Review

Federal law imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court [*15] proceedings.

*28 U.S.C. § 2254(d)*. Additionally, this Court must presume the correctness of state court factual determinations. *28 U.S.C. § 2254(e)(1)*.

## IV. Analysis

### A. Admission of Ernest Knoxs Prior Testimony

Petitioner asserts that he is entitled to habeas relief because the trial court violated his right of confrontation by admitting unavailable witness Ernest Knox's prior testimony from co-defendant Martin's trial. The trial

Case 1:00-cv-00727-SSB-TSH    Document 58-2    Filed 07/19/2004    Page 10 of 17

Page 5
2004 U.S. Dist. LEXIS 9436, *

court allowed the testimony to be admitted into evidence under the catch-all exception to the hearsay rule, *Michigan Rule of Evidence 804(b)(6)*. The Michigan Court of Appeals concluded that the trial court properly admitted the evidence under state law. Further, the court determined that Petitioner was not denied his right of confrontation by the admission of Knox's testimony because the testimony had sufficient guarantees of trustworthiness. *See Dorchy, 2001 Mich. App. LEXIS 2554, 2001 WL 1134733 at *1-2.*

The *Sixth Amendment to the United States Constitution* provides that "in all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him. [*16] . . ." *U.S. Const. amend. VI*. The United States Supreme Court has explained:

> The primary object of the [*Confrontation Clause*] was to prevent depositions or *ex parte* affidavits . . . being used against the prisoner *in lieu* of a personal examination and cross-examination of the witness in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief.

*Mattox v. United States, 156 U.S. 237, 242-43, 39 L. Ed. 409, 15 S. Ct. 337 (1895)*. The Court has also stated:

> There are few subjects, perhaps, upon which this Court and other courts have been more nearly unanimous than in their expressions of belief that the right of confrontation and cross-examination is an essential and fundamental requirement for the kind of fair trial which is this country's constitutional goal.

*Pointer v. Texas, 380 U.S. 400, 405, 13 L. Ed. 2d 923, 85 S. Ct. 1065 (1965).*

The *Sixth Amendment* protections are [*17] not so broad, however, as to exclude the admission of certain hearsay statements against a criminal defendant despite his or her inability to confront the declarant at trial. *See Maryland v. Craig, 497 U.S. 836, 847-48, 111 L. Ed. 2d 666, 110 S. Ct. 3157 (1990)*. At the time of Petitioner's state proceedings, the Supreme Court case of *Ohio v. Roberts* provided that hearsay can be admitted into evidence without violating the *Confrontation Clause* when the statement: (1) falls within a firmly-rooted exception to the hearsay rule, or (2) contains particularized guarantees of trustworthiness such that adversarial testing would be expected to add little, if anything, to the statement's reliability. *See Ohio v. Roberts, 448 U.S. 56, 66, 65 L. Ed. 2d 597, 100 S. Ct. 2531 (1980); see also Lilly v. Virginia, 527 U.S. 116, 124, 144 L. Ed. 2d 117, 119 S. Ct. 1887 (1999); Byrd v. Collins, 209 F.3d 486, 528 (6th Cir. 2000).*

On March 8, 2004, the United States Supreme Court overruled *Ohio v. Roberts* and held that out-of-court statements which are testimonial in nature are barred by the *Confrontation Clause* unless the witness is unavailable and the defendant had a prior opportunity [*18] to cross-examine the witness, regardless of whether such statements are deemed reliable by the court. *See Crawford v. Washington, _ U.S. _, 158 L. Ed. 2d 177, 124 S. Ct. 1354, 1365-74 (2004)*. Thus, if the Michigan Court of Appeals were to rule the same way today, its decision would unquestionably be contrary to clearly established federal law as determined by the United States Supreme Court.

At the time of Petitioner's direct appeal, however, *Ohio v. Roberts* was controlling law. The phrase "clearly established federal law," for purposes of *§ 2254(d)(1)*, refers to the governing legal principles set forth by the United States Supreme Court when the state court renders its decision. *See Lockyer v. Andrade, 538 U.S. 63, 71-72, 155 L. Ed. 2d 144, 123 S. Ct. 1166 (2003)*. A federal habeas court may therefore look only to the Supreme Court's holdings as they existed at the time of the relevant state court decision to determine whether the state court decision was contrary to, or an unreasonable application of, clearly established federal law. *See Mitzel v. Tate, 267 F.3d 524, 530-31 (6th Cir. 2001)*. Because *Ohio v. Roberts* was in effect when the Michigan Court of Appeals [*19] rendered its decision in this case, the Court must determine whether the Michigan Court of Appeals' decision is contrary to, or an unreasonable application of, that decision. *See Murillo v. Frank, _ F. Supp. 2d _, 2004 WL 1042151, *3-4 (E.D. Wis. April 5, 2004)* (ruling that *Crawford* is a new rule of law which cannot be retroactively applied in a habeas proceeding to determine whether a state court decision is contrary to federal law, and instead considering case under framework set forth in *Roberts*). n2

---

n2 The Court notes, however, that the *Crawford* opinion provides a thorough summary of the United States Supreme Court's pre-*Crawford Confrontation Clause* decisions.

Case 1:00-cv-00727-SSB-TSH    Document 58-2    Filed 07/19/2004    Page 11 of 17

Page 6
2004 U.S. Dist. LEXIS 9436, *

As noted, under *Ohio v. Roberts*, hearsay can be admitted into evidence without violating the *Confrontation Clause* when the statement either falls within a firmly-rooted exception to the hearsay rule or contains particularized guarantees of trustworthiness. *Roberts*, 448 U.S. at 66. The residual [*20] hearsay exception under which Knox's testimony was admitted is not a firmly-rooted hearsay exception for *Confrontation Clause* purposes. See *Idaho v. Wright*, 497 U.S. 805, 817, 111 L. Ed. 2d 638, 110 S. Ct. 3139 (1990). Accordingly, the issue before this Court is whether the Michigan Court of Appeals reasonably determined that Knox's statements had "particularized guarantees of trustworthiness" such that their admission did not violate the *Confrontation Clause*. The particularized guarantees of trustworthiness "must be shown from the totality of the circumstances." *Id. at 819*. The "relevant circumstances include only those that surround the making of the statement and that render the declarant particularly worthy of belief." *Id.* There is no mechanical test for determining reliability and courts have "considerable leeway in their consideration of appropriate factors." *Id. at 822*.

The Michigan Court of Appeals in this case concluded that Knox's statements had sufficient guarantees of trustworthiness because: (1) Knox was an eyewitness to the shooting, (2) Knox's preliminary examination testimony and trial testimony in codefendant Martin's criminal [*21] proceedings were consistent with each other and with Knox's and Deon McCrary's police statements, (3) Knox's testimony was given under oath in court, and (4) Knox was subject to cross-examination by co-defendant Martin's counsel. See *Dorchy*, 2001 Mich. App. LEXIS 2554, 2001 WL 1134733 at *2.

The fact that Knox was an eyewitness to the shooting supports a finding of reliability. *See, e.g., United States v. Barlow*, 693 F.2d 954, 964 (6th Cir. 1982); accord *United States v. Thomas*, 30 Fed. Appx. 277, 279 (4th Cir. 2002) (citing *United States v. McHan*, 101 F.3d 1027, 1037-38 (4th Cir. 1996)), as does the fact that he gave testimony in court under oath. See *California v. Green*, 399 U.S. 149, 165, 26 L. Ed. 2d 489, 90 S. Ct. 1930 (1970) (admission of unavailable witness's preliminary examination testimony where defendant had an opportunity to cross-examine that witness); *Thomas*, 30 Fed. Appx. at 279 (admission of unavailable witness's grand jury testimony). Such circumstances, however, are not sufficient to guarantee trustworthiness. See *United States v. Deeb*, 13 F.3d 1532, 1538 (11th Cir. 1994) (citing *United States v. Lang*, 904 F.2d 618, 623 (11th Cir. 1990)); [*22] *United States v. Gomez-Lemos*, 939 F.2d 326, 330 (6th Cir. 1991); *United States v. Crowder*, 848 F. Supp. 780, 783 (M.D. Tenn. 1994) (fact that witness gave testimony under oath in a grand jury proceeding was "not a significant factor in determining reliability"). The Court must therefore consider the other factors upon which the Michigan Court of Appeals relied in finding that Knox's prior testimony was sufficiently trustworthy.

The Michigan Court of Appeals also based its trustworthiness determination upon the fact that Knox's testimony at co-defendant Martin's trial was consistent with Knox's preliminary examination testimony in Martin's case and with Knox's and McCrary's police statements. The Michigan Court of Appeals' decision in this regard is, at least in part, contrary to well-established United States Supreme Court precedent. In *Idaho v. Wright*, the Supreme Court ruled that unless a hearsay statement comes within one of the exceptions to the hearsay rule, a trial court may only look to the relevant circumstances "that surround the making of the statement and that render the declarant particularly worthy of belief" in determining whether [*23] the hearsay statement possesses particularized guarantees of trustworthiness so as to comport with the *Confrontation Clause* and justify its admission into evidence at trial. *Wright*, 497 U.S. at 819-20, 822. The Michigan Court of Appeals' determination that Knox's testimony from co-defendant Martin's trial was reliable, in part, because of corroborative statements is thus contrary to and/or an unreasonable application of *Idaho v. Wright*. See *Gomez-Lemos*, 939 F.2d at 332-33 (noting that *Wright* overruled cases in which courts considered corroborative evidence in making a reliability determination under *Roberts*); *United States v. Noorlun*, 2002 U.S. Dist. LEXIS 11862, 2002 WL 1401671, *2 (D.N.D. June 20, 2002) (fact that deceased witness's testimony was similar to her police statement was of no consequence in determining reliability). Accordingly, the fact that Knox's testimony from Martin's trial was consistent with other evidence is not a factor to be considered in determining the reliability of Knox's testimony. n3

---

n3 Arguably, the fact that Knox never recanted his testimony could be viewed as a factor bolstering its trustworthiness. See *Curro v. United States*, 4 F.3d 436, 437 (6th Cir. 1993) (upholding admission of grand jury testimony of witness who died before trial where witness had testified consistently before two grand juries).

---

[*24]

Lastly, the Michigan Court of Appeals relied upon the fact that Knox was cross-examined by co-defendant Martin's counsel at Martin's trial in concluding that Knox's testimony possessed particularized guarantees of trustworthiness. The United States Supreme Court has

never ruled that a co-defendant's cross-examination of a witness at a prior proceeding may render that witness's prior testimony sufficiently reliable to satisfy the *Confrontation Clause* and justify its admission at the defendant's trial absent an opportunity for cross-examination by the defendant. n4 To the contrary, as discussed in *Crawford*, Supreme Court precedent indicates that prior trial or preliminary hearing testimony of an unavailable witness is admissible only if the defendant had an adequate opportunity to cross-examine the witness at the prior proceeding. *See Crawford, _ U.S. at _, 124 S. Ct. at 1367-68* (citing cases including *Mancusi v. Stubbs, 408 U.S. 204, 212-16, 33 L. Ed. 2d 293, 92 S. Ct. 2308 (1972); Green, 399 U.S. at 165-68; Pointer, 380 U.S. at 406-08;* and *Roberts, 448 U.S. at 67-70*). The Supreme Court has explained:

> It [*25] is true that there has traditionally been an exception to the confrontation requirement where a witness is unavailable and has given testimony at previous judicial proceedings against the *same defendant* which was subject to cross-examination by *that defendant. E.g., Mattox v. United States, supra* (witnesses who testified in original trial died prior to the second trial). This exception has been explained as arising from necessity and has been justified on the ground that the right of cross-examination initially afforded provides substantial compliance with the purposes behind the confrontation requirement.

*Barber v. Page, 390 U.S. 719, 721-22, 20 L. Ed. 2d 255, 88 S. Ct. 1318 (1968)* (emphasis added). Even in *Roberts*, the Supreme Court upheld the admission of an unavailable witness's preliminary hearing testimony because the earlier testimony had been given under oath in a proceeding at which *the defendant* had an opportunity to cross-examine the witness. *Roberts, 448 U.S. at 71-73*.

> n4 Similarly, the Supreme Court has never addressed whether sworn testimony given before a grand jury is sufficiently trustworthy such that it may be admitted against a defendant absent the test of cross-examination at trial. *See Gomez-Lemos, 939 F.2d at 335* (concurring opinion of Nelson, J.). Under varying circumstances, federal courts have found an unavailable witness's grand jury testimony to be unreliable under *Roberts, see, e.g., Lang, 904 F.2d at 623-24, Noorlun, 2002 U.S. Dist. LEXIS 11862, 2002 WL 1401671 at \*2, Crowder, 848 F. Supp. at 783*, as well as reliable. *See, e.g., United States v. Earles, 113 F.3d 796, 801 (8th Cir. 1997); Curro, 4 F.3d at 437*.

[*26]

Moreover, in *Pointer v. Texas*, the Supreme Court held that the admission of an unavailable witness's preliminary hearing testimony violated the *Confrontation Clause* where the defendant had not been represented by counsel at the preliminary hearing and had made no attempt to cross-examine the witness on his own, even though an unrepresented co-defendant made efforts to cross-examine the witness. *Pointer, 380 U.S. at 406-07; see also Magouirk v. Warden, 237 F.3d 549, 553-54 (5th Cir. 2001)* (defendant's confrontation rights were violated by the admission of an unavailable witness's prior testimony where the defendant was unable to conduct any cross-examination of the witness at the prior proceeding); *Mattes v. Gagnon, 700 F.2d 1096, 1104 (7th Cir. 1983)* (habeas petitioner denied right of confrontation by admission of unavailable witness's prior testimony from witness's own trial where defendant had no opportunity for cross-examination). Thus, the Michigan Court of Appeals' determination that Petitioner's right of confrontation was not violated despite the fact that he was *never* afforded an opportunity to personally confront or [*27] cross-examine Ernest Knox is contrary to and/or an unreasonable application of the Supreme Court precedent set forth in *Crawford, supra*, including *Pointer v. Texas*.

A few federal courts, in applying *Roberts*, have concluded that a co-defendant's cross-examination of a witness at a prior proceeding can serve as the "functional equivalent" of cross-examination by the defendant and render the prior testimony sufficiently reliable so as to satisfy the *Confrontation Clause*. *See United States v. Tellechia, 151 F.3d 1034, 1998 WL 476760, \*3 (7th Cir. 1998)* (unpublished); *United States v. Shaw, 69 F.3d 1249, 1254 (4th Cir. 1995); Deeb, 13 F.3d at 1539-40; United States v. Zannino, 895 F.2d 1, 6 (1st Cir. 1990); Barker v. Morris, 761 F.2d 1396, 1402-03 (9th Cir. 1985)*. Even in such cases, though, the courts have recognized that the reliability determination turns upon "whether the interests of those who were represented during cross-examination were advanced in a manner that was consistent with the interest of the defendant who lacked such representation." *Barker, 761 F.2d at 1402-03*; [*28] *see also Deeb, 13 F.3d at 1539* (holding that cross-examination by co-defendant's counsel serves as the functional equivalent of cross-examination by the defendant if the crossexamination probed the witness's motive to lie and the defendant has not shown that his inability to personally cross-examine the witness deprived him of an opportunity to present evidence

Case 1:00-cv-00727-SSB-TSH    Document 58-2    Filed 07/19/2004    Page 13 of 17

Page 8
2004 U.S. Dist. LEXIS 9436, *

which would have undermined the witness's testimony against him).

In this case, the record reveals that the cross-examination of Knox by co-defendant Martin's counsel at Martin's trial did not render Knox's testimony sufficiently reliable under *Roberts* so as to justify its admission against Petitioner at his trial. While Martin's counsel challenged Knox's credibility and his recall of events generally, Martin's counsel made no effort to further Petitioner's interests or to advance Petitioner's self-defense claim. Martin's counsel had an obvious incentive to implicate Petitioner in the shooting and no incentive to elicit testimony that might exculpate him. *See, e.g., State v. Luzanilla, 179 Ariz. 391, 880 P.2d 611, 615 (1994)* (admission of witness's testimony from co-defendant's prior trial [*29] was not sufficiently reliable under *Roberts* to satisfy the *Confrontation Clause* even though co-defendant's counsel cross-examined the witness at the earlier trial). The transcript shows that Martin's counsel sought to portray Petitioner as the main perpetrator of the shooting and to downplay his own client's involvement, particularly with respect to the fatal shooting of Larry Adams. A more rigorous crossexamination of Knox with Petitioner's interests in mind may have produced favorable evidence to support Petitioner's self-defense claim. *See People v. Carlisle, 1993 WL 128229, *2 (D. Guam April 8, 1993)*. Given these circumstances, the Court concludes that the Michigan Court of Appeals' determination that the cross-examination of Knox by co-defendant Martin's counsel at Martin's trial supported a finding that Knox's testimony had an adequate *indicia* of reliability constitutes an unreasonable application of *Ohio v. Roberts*. The admission of Ernest Knox's testimony from co-defendant Martin's trial, without any opportunity for Petitioner to confront or cross-examine Knox at either proceeding, violated Petitioner's right of confrontation under the *Sixth Amendment*. [*30]

Given this determination, the next issue that must be addressed by the Court is whether the trial court's *Confrontation Clause* error was harmless. For purposes of federal habeas review, a constitutional error that implicates trial procedures is considered harmless if it did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson, 507 U.S. 619, 637, 123 L. Ed. 2d 353, 113 S. Ct. 1710 (1993); see also O'Neal v. McAninch, 513 U.S. 432, 445, 130 L. Ed. 2d 947, 115 S. Ct. 992 (1995)* (habeas court should grant petition if it has "grave doubt" about whether trial error had substantial and injurious effect or influence upon jury's verdict). Harmless error analysis applies to claims concerning *Confrontation Clause* errors. *See Delaware v. Van Arsdall, 475 U.S. 673, 684, 89 L. Ed. 2d 674, 106 S. Ct. 1431 (1986)*.

To determine whether the trial court's *Confrontation Clause* error was harmless, the Court examines the following factors: (1) the importance of the witness's testimony to the prosecution's case, (2) whether the testimony was cumulative, (3) the presence or absence of evidence corroborating or contradicting the testimony of the witness on material [*31] points, (4) the extent of cross-examination otherwise permitted, and (5) the overall strength of the prosecution's case. *See Stapleton v. Wolfe, 288 F.3d 863, 867-68 (citing Delaware v. Van Arsdall, 475 U.S. at 684)*.

As discussed *supra*, Knox's testimony was highly significant to the prosecution's case given that he was an eyewitness to the shooting who provided a detailed description of Petitioner's actions at the time of the incident. The fact that the prosecution fought to have the testimony admitted indicates that the prosecution thought it important. Moreover, Knox's testimony was not merely cumulative. Other than Deon McCrary's acknowledged improperly admitted police statements, Knox's testimony provided the only other direct testimonial evidence demonstrating Petitioner's actions and intent in committing the shooting and negating his self-defense claim. Some evidence, such as Melody Hurst's testimony and the gunshot evidence, corroborated parts of Knox's testimony, but that evidence was not determinative as to Petitioner's intent or his self-defense claim. Petitioner was never provided an opportunity to cross-examine Knox. Although Hurst's [*32] testimony, the gunshot evidence, and Petitioner's own testimony provided some evidence to support Petitioner's conviction, the prosecution's case for first-degree murder would have been significantly weakened without the Knox's eyewitness account. Accordingly, the Court is left with grave doubt about whether the erroneous admission of Knox's testimony had a substantial and injurious effect or influence upon the jury's verdict. Petitioner is therefore entitled to habeas relief on this claim.

B. Admission of Deon McCrary's Prior Statements

Petitioner also claims that he is entitled to habeas relief because the trial court erred in admitting Deon McCrary's prior statements into evidence. The Michigan Court of Appeals found that the trial court erred in admitting McCrary's statements, but concluded that the error was harmless given the other evidence presented at trial, including Knox's testimony. *See Dorchy, 2001 Mich. App. LEXIS 2554, 2001 WL 1134733 at *3*.

As noted, a constitutional error that implicates trial procedures is considered harmless if it did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht, 507 U.S. at 637*; [*33] *see also O'Neal, 513 U.S. at 445*. Given the Court's determination that the admission of Knox's

Case 1:00-cv-00727-SSB-TSH   Document 58-2   Filed 07/19/2004   Page 14 of 17

Page 9
2004 U.S. Dist. LEXIS 9436, *

testimony from co-defendant Martin's trial violated the *Confrontation Clause* and was not harmless, this Court cannot conclude that the Michigan Court of Appeals' finding of harmless error with regard to Deon McCrary's prior testimony is reasonable. Absent Knox's testimony, the only eyewitness testimony remaining which would establish the requisite intent to support Petitioner's first-degree premeditated murder conviction is that of McCrary. While Petitioner admitted shooting Larry Adams, he presented a plausible theory of self-defense based upon his dealings with Adams and Adams' conduct before the shooting. Without Knox's testimony from co-defendant Martin's trial, this Court cannot conclude that the remaining properly admitted evidence was so strong as to render the erroneous admission of McCrary's prior testimony harmless. In other words, this Court is left with grave doubt about whether the improper admission of McCrary's police statement, particularly in conjunction with the erroneous admission of Knox's prior testimony, had a substantial and injurious effect or influence [*34] on the jury's verdict. Habeas relief is therefore also warranted on this claim.

C. Admission of Threats

Petitioner also claims that he is entitled to habeas relief because the trial court erred in allowing Melody Hurst to testify that Petitioner's girlfriend threatened her while she was in the county jail. It is well-settled that alleged trial court errors in the application of state procedure or evidentiary law, particularly regarding the admissibility of evidence, are generally not cognizable as grounds for federal habeas relief. *See Estelle v. McGuire, 502 U.S. 62, 67-68, 116 L. Ed. 2d 385, 112 S. Ct. 475 (1991); Pulley v. Harris, 465 U.S. 37, 41, 79 L. Ed. 2d 29, 104 S. Ct. 871 (1984); Serra v. Michigan Dept. of Corrections, 4 F.3d 1348, 1354 (6th Cir. 1993).* Questions concerning the admissibility of evidence are properly left to the sound discretion of the trial court. *Oliphant v. Koehler, 594 F.2d 547, 555 (6th Cir. 1979).* Only where admission of the disputed evidence rendered the trial "so fundamentally unfair as to constitute a denial of federal rights" may it provide grounds for granting a writ of habeas corpus. *Clemmons v. Sowders, 34 F.3d 352, 356 (6th Cir. 1994).* [*35]

In this case, the Michigan Court of Appeals concluded that the testimony was properly admitted under state law because it was relevant to the witness' state of mind and probative of her credibility. The court further found that Petitioner was not unduly prejudiced because the threats were not attributed to him. *See Dorchy, 2001 Mich. App. LEXIS 2554, 2001 WL 1134733 at *1.* The Court of Appeals did not address whether the alleged error constituted a denial of Petitioner's federal rights. Accordingly, this Court must conduct an independent review of the state court's decision. *See Harris v. Stovall, 212 F.3d 940, 943 (6th Cir. 2000).* This independent review requires the federal court to "review the record and applicable law to determine whether the state court decision is contrary to federal law, unreasonably applies clearly established law, or is based on an unreasonable determination of the facts in light of the evidence presented." *Id.* This independent review "is not a full, *de novo* review of the claims, but remains deferential because the court cannot grant relief unless the state court's result is not in keeping with the strictures of the AEDPA." *Id.*

Having reviewed [*36] the record, this Court finds that the Michigan Court of Appeals' decision is neither contrary to United States Supreme Court precedent nor an unreasonable application thereof. Under federal law, threats are generally considered "verbal acts" not admitted for the truth of the matter asserted and such evidence is admissible under *Federal Rule of Evidence 403* unless the potential for unfair prejudice substantially outweighs its probative value. *See United States v. Thomas, 86 F.3d 647, 653-54 (7th Cir. 1996).* Possible threats to a witness are relevant to assess credibility. *See United States v. Pierson, 121 F.3d 560, 563 (9th Cir. 1997); see also Sadler v. Jabe, 96 F.3d 1448, 1996 WL 506375, *1 (6th Cir. 1996)* (testimony that defendant's father threatened witness was relevant to witness's credibility and was properly admitted to rehabilitate her when her motive to testify was called into question). When evidence of a threat is necessary to impeach or rehabilitate a witness's credibility, and there is no indication that its use is pretextual, it may be admissible despite its potential for prejudice. [*37] *See Gomez v. Ahitow, 29 F.3d 1128, 1139 (7th Cir. 1994).* Defense counsel in this case challenged Melody Hurst's credibility in opening statements (and on crossexamination ). Accordingly, the trial court properly determined that the threat evidence was relevant to her credibility and was admissible. Further, given that the alleged threats were not attributed to Petitioner, it cannot be said that he was so prejudiced by such testimony that his trial was rendered fundamentally unfair on such a basis. *See Pierson, 121 F.3d at 563.* Habeas relief is not warranted on this claim.

D. Bind-over Claim

Petitioner also contends that he is entitled to habeas relief because there was insufficient evidence to bind him over for trial. The United States Supreme Court has held that the federal Constitution does not require that a probable cause hearing be conducted prior to a criminal trial. *See Gerstein v. Pugh, 420 U.S. 103, 119, 125 n. 26, 43 L. Ed. 2d 54, 95 S. Ct. 854 (1975).* Accordingly, the bind-over decision constitutes a state-law issue which does not implicate a federal constitutional right and is not subject to review in a habeas proceeding. *See* [*38]

Case 1:00-cv-00727-SSB-TSH   Document 58-2   Filed 07/19/2004   Page 15 of 17

Page 10
2004 U.S. Dist. LEXIS 9436, *

*Shacks v. Tessmer,* 9 Fed. Appx. 344, No. 00-1062, 2001 WL 523533, *6 (6th Cir. May 8, 2001) (unpublished) (refusing to review state court determination that second-degree murder conviction rendered bind-over sufficiency of the evidence challenge moot). Habeas relief is not warranted on this claim.

 E. Prosecutorial Misconduct/Admission of Alias Testimony

 Petitioner next asserts that he is entitled to habeas relief because the prosecutor erred by introducing evidence that Petitioner used an alias while living in Florida after fleeing Michigan. The United States Supreme Court has stated that prosecutors must "refrain from improper methods calculated to produce a wrongful conviction." *Berger v. United States, 295 U.S. 78, 88, 79 L. Ed. 1314, 55 S. Ct. 629 (1935).* To prevail on a claim of prosecutorial misconduct, a habeas petitioner must demonstrate that the prosecutor's remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo, 416 U.S. 637, 643, 40 L. Ed. 2d 431, 94 S. Ct. 1868 (1974).* When addressing a claims of prosecutorial misconduct, the court must first determine whether the challenged statements [*39] were indeed improper. *See United States v. Francis, 170 F.3d 546, 549 (6th Cir. 1999).* Upon a finding of such impropriety, the court must then "look to see if they were flagrant and warrant reversal." *Id.* Flagrancy is determined by an examination of four factors: 1) whether the statements tended to mislead the jury or prejudice the accused; 2) whether the statements were isolated or among a series of improper statements; 3) whether the statements were deliberately or accidentally before the jury; and 4) the total strength of the evidence against the accused. *See Boyle v. Million, 201 F.3d 711, 717 (6th Cir. 2000)* (citing *Francis, 170 F.3d at 549-50*); *Pritchett v. Pitcher, 117 F.3d 959, 964 (6th Cir. 1997).* "To constitute the denial of a fair trial, prosecutorial misconduct must be 'so pronounced and persistent that it permeates the entire atmosphere of the trial,' or 'so gross as probably to prejudice the defendant.'" *Pritchett, 117 F.3d at 964* (citations omitted).

 In this case, the Michigan Court of Appeals determined that the prosecutor did not err in soliciting evidence of Petitioner's aliases [*40] because such evidence was relevant to Petitioner's credibility and his claim of self-defense. This Court agrees and finds that Petitioner has failed to establish that the prosecution erred in eliciting testimony of Petitioner's use of aliases. The use of alias evidence to impeach credibility is permissible where there is strong evidence against a defendant. *See Givens v. Yukins, 238 F.3d 420, 2000 WL 1828484, *7 (6th Cir. 2000)* (citing *United States v. Wilkerson, 456 F.2d 57 (6th Cir. 1972)).* The United States Supreme Court has not addressed the issue of when admission of alias evidence may render a trial fundamentally unfair. *Givens, supra.* Petitioner has thus not shown that the Michigan Court of Appeals' decision is contrary to United States Supreme Court precedent nor an unreasonable application of federal law. Habeas relief is not warranted on this claim.

 F. Evidence of Flight

 Petitioner relatedly claims that he is entitled to habeas relief because the trial court erred in admitting evidence of his flight from Michigan to Florida. As noted, trial court errors in the application of state procedure or evidentiary law, particularly [*41] regarding the admissibility of evidence, are generally not cognizable as grounds for federal habeas relief. *See Estelle, 502 U.S. at 67-68.* Only where admission of the disputed evidence rendered the trial "so fundamentally unfair as to constitute a denial of federal rights" may it provide grounds for granting a writ of habeas corpus. *Clemmons, 34 F.3d at 356.*

 The Michigan Court of Appeals determined that this evidence was admissible to show consciousness of guilt as a matter of state law. *See Dorchy, 2001 Mich. App. LEXIS 2554, 2001 WL 1134733 at *3.* Because the court did not address this issue as a matter of federal constitutional law, this Court will conduct an independent review of the state court's decision pursuant to *Harris v. Stovall, supra, 212 F.3d at 943.*

 Having done so, this Court concludes that the Michigan Court of Appeals' decision is consistent with United States Supreme Court precedent law and constitutes a reasonable application of federal law. Although the United States Supreme Court has expressed skepticism as to the probative value of evidence of flight, *see Wong Sun v. United States, 371 U.S. 471, 483 n. 10, 9 L. Ed. 2d 441, 83 S. Ct. 407 (1963),* [*42] it has recognized that such evidence may be relevant to show consciousness of guilt. *See United States v. Scheffer, 523 U.S. 303, 331, 140 L. Ed. 2d 413, 118 S. Ct. 1261 (1998)* (dissenting opinion of Stevens, J.). Federal appellate courts have held that evidence of flight is generally admissible as evidence of consciousness of guilt. *See United States v. Dillon, 870 F.2d 1125, 1126 (1989); accord United States v. Glenn, 312 F.3d 58, 67 (2nd Cir. 2002); United States v. Lupino, 301 F.3d 642, 646 (8th Cir. 2002); United States v. Murphy, 996 F.2d 94, 96 (5th Cir. 1993).* In this case, the flight evidence was properly admitted under state law as an indication of Petitioner's guilt and to counter his claim of self-defense. Moreover, such evidence was relevant to explain the more than two-year lapse of time between the shooting and Petitioner's arrest and criminal proceedings. Petitioner has not shown that the admission of this

Case 1:00-cv-00727-SSB-TSH   Document 58-2   Filed 07/19/2004   Page 16 of 17

Page 11
2004 U.S. Dist. LEXIS 9436, *

evidence rendered his trial fundamentally unfair. Habeas relief is thus not warranted on this claim.

### G. Ineffective Assistance of Counsel

Petitioner also claims that he is entitled to habeas [*43] relief because defense counsel was ineffective for failing to object to a $ 20,000 restitution order based upon Petitioner's inability to pay. In *Strickland v. Washington, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984)*, the United States Supreme Court set forth a two-pronged test for determining whether a habeas petitioner has received the ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the *Sixth Amendment. 466 U.S. at 687*. Second, the petitioner must establish that counsel's deficient performance prejudiced the defense. Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal. *Id.*

With respect to the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance" in order to prove deficient performance. *Id. at 690*. The reviewing court's scrutiny of counsel's performance is highly deferential. *Id. at 689*. The court must recognize that counsel [*44] is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id. at 690*. The petitioner bears the burden of overcoming the presumption that the challenged actions might be considered sound trial strategy. *Id. at 689*.

To satisfy the prejudice prong under *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id. at 694*. A reasonable probability is one that is sufficient to undermine confidence in the outcome. *Id.* "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Strickland, 466 U.S. at 686*.

Applying the *Strickland* standard, the Michigan Court of Appeals considered this claim and concluded that counsel was not ineffective because Michigan law provides that a trial court is no longer required to consider a defendant's [*45] inability to pay when ordering restitution. See *Dorchy, 2001 Mich. App. LEXIS 2554, 2001 WL 1134733 at *3*. The court found that the rule, *Mich. Comp. L. § 780.767*, as amended effective June 1, 1997, applied retroactively to Petitioner's case.

*Id.* Thus, even assuming that Petitioner could establish that counsel erred in failing to object to the restitution order at the time of sentencing, he cannot establish that he was prejudiced by counsel's conduct. Further, Petitioner has not discussed this claim in his pleadings before this Court nor explained what counsel could have or should have done to obtain a different result at sentencing. Conclusory allegations, without evidentiary support, do not provide a basis for habeas relief. See, e.g., *Workman v. Bell, 160 F.3d 276, 287 (6th Cir. 1998)* (conclusory allegations of ineffective assistance of appellate counsel do not warrant habeas relief); *Zettlemoyer v. Fulcomer, 923 F.2d 284, 301 (3rd Cir. 1991)* (bald assertions and conclusory allegations do not provide sufficient basis to hold an evidentiary hearing in habeas proceedings). Habeas relief is not warranted on this claim.

### H. Cumulative [*46] Error

Lastly, Petitioner asserts that he is entitled to habeas relief based upon the cumulative effect of the alleged errors at trial. The Michigan Court of Appeals rejected this claim because Petitioner had not established entitlement to relief on any of the alleged errors. See *Dorchy, 2001 Mich. App. LEXIS 2554, 2001 WL 1134733 at *4*. Given this Court's determination that Petitioner is entitled to habeas relief on his two *Confrontation Clause* claims, the Court need not address this issue as a separate claim. Further, the Court is mindful that the United States Supreme Court "has not held that distinct constitutional claims can be cumulated to grant habeas relief." *Lorraine v. Coyle, 291 F.3d 416, 447 (6th Cir. 2002)*. Accordingly, Petitioner is not entitled to relief on his cumulative error claim, except to the extent that the two *Confrontation Clause* errors operated to deny him a fair trial.

### V. Conclusion

For the reasons stated, the Court concludes that Petitioner is entitled to federal habeas relief on the two *Confrontation Clause* claims presented in his petition. Accordingly;

**IT IS ORDERED** that the petition for writ of habeas corpus is **CONDITIONALLY** [*47] **GRANTED**. The State shall either release Petitioner from custody or institute proceedings to retry him within 120 days of the date of this order. Should the State appeal this decision to the United States Court of Appeals for the Sixth Circuit, this order is stayed pending the outcome of that proceeding.

/s/

ARTHUR J. TARNOW

UNITED STATES DISTRICT JUDGE

Page 12
2004 U.S. Dist. LEXIS 9436, *

DATED: May 26, 2004