HARRY C. JOHNSON, Petitioner, v. PAUL RENICO, Respondent,
Civil No. 03-CV-40185-FL

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OFMICHIGAN, SOUTHERN DIVISION

314 F. Supp. 2d 700; 2004 U.S. Dist. LEXIS 7105

April 21, 2004, Decided

**PRIOR HISTORY:** *People v. Johnson, 467 Mich. 852, 649 N.W.2d 79, 2002 Mich. LEXIS 1323 (2002)*

**DISPOSITION:** [*1] Petition for writ of habeas corpus dismissed.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Petitioner inmate, who was convicted in a Michigan state court of possession with intent to deliver cocaine and marijuana, filed a petition for a writ of habeas corpus pursuant to *28 U.S.C.S. § 2254*.

**OVERVIEW:** The inmate was arrested following a search of a hotel room where drugs and identification belonging to other persons were found; booking records revealed that one of those persons was in jail at the time of the search. The inmate claimed that his right of confrontation was violated when a detective testified about the information in the booking records. At the time of the inmate's trial and direct appeal, admission of hearsay that bore adequate indicia of reliability did not violate the Confrontation Clause; as the trial court found that the evidence was admissible both as a business record and as the admission of a party opponent, there was no Confrontation Clause violation. The prosecutor's conduct during closing argument in waving papers purporting to be the booking records, which were not admitted, was harmless. The inmate offered no evidence supporting his claim that the prosecutor threatened a defense witness, and the witness testified that she had not been threatened. Counsel was not ineffective for failing to object to an erroneous but harmless jury instruction. A claim of improper denial of a sentence reduction was not cognizable on habeas review.

**OUTCOME:** The inmate's habeas petition was denied.

**CORE TERMS:** prosecutor, booking, parole, arrest, motel, detective, wearing, credibility, jumpsuit, vest, federal habeas, hearsay rule, business records exception, admissible, prejudiced, harmless, writ of habeas corpus, motel room, harmless error, hearsay, prosecutorial misconduct, sentence, prior conviction, cocaine, paroled, sheet, prior assault, identification, recovered, properly admitted

**LexisNexis(R) Headnotes**

Criminal Law & Procedure: Habeas Corpus: Standards of Review
[HN1] See *28 U.S.C.S. § 2254*(d).

Criminal Law & Procedure: Habeas Corpus: Standards of Review
[HN2] For purposes of *28 U.S.C.S. § 2254*(d), a decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the United States Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. An "unreasonable application" occurs when the state court identifies the correct legal principle from a Supreme Court's decision but unreasonably applies that principle to the facts of the prisoner's case. A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly."

Criminal Law & Procedure: Evidence: Hearsay Rule & Exceptions: Hearsay Rule Components
Criminal Law & Procedure: Habeas Corpus: Cognizable Issues
[HN3] To the extent that a habeas petitioner is contending that a state trial court improperly determined that allegedly hearsay statements were admissible under state law, he is not entitled to habeas relief on such a claim. What is or is not hearsay evidence in a state court trial is governed by state law.

Criminal Law & Procedure: Evidence: Hearsay Rule & Exceptions: Hearsay Rule Components


EXHIBIT

314 F. Supp. 2d 700; 2004 U.S. Dist. LEXIS 7105, *

Criminal Law & Procedure: Habeas Corpus: Cognizable Issues
[HN4] A federal habeas court is bound by a state appellate court's ruling that certain testimony is not hearsay, because state law governs questions concerning the admissibility of evidence. Any claim that the trial court improperly admitted this evidence as an exception to the hearsay rule is therefore noncognizable in federal habeas review.

Constitutional Law: Criminal Process: Right to Confrontation
Criminal Law & Procedure: Evidence: Hearsay Rule & Exceptions
Criminal Law & Procedure: Habeas Corpus: Standards of Review
[HN5] When a state court finds hearsay evidence admissible under a state-law hearsay exception, but does not explicitly consider the hearsay's admissibility under the Confrontation Clause, a federal habeas court should review the state court decision by assessing whether it was reasonably supported by the record and whether its legal analysis is constitutionally sound.

Constitutional Law: Criminal Process: Right to Confrontation
[HN6] The Confrontation Clause does not require that no hearsay evidence be introduced against a criminal defendant.

Constitutional Law: Criminal Process: Right to Confrontation
Criminal Law & Procedure: Evidence: Hearsay Rule & Exceptions
[HN7] Prior to 2004, the United States Supreme Court held that the veracity of hearsay statements is sufficiently dependable to allow the untested admission of such statements against an accused when (1) the evidence falls within a firmly rooted exception to the hearsay rule; or (2) it contains particularized guarantees of trustworthiness such that adversarial testing would be expected to add little, if anything, to the statement's reliability. Thus, certain types of hearsay were considered admissible if the declarant was unavailable and the statement bore adequate indicia of reliability. On March 8, 2004, the United States Supreme Court overruled its holding in Ohio v. Roberts and held that out of court statements that are testimonial in nature are barred by the Sixth Amendment Confrontation Clause unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness, regardless of whether such statements are deemed reliable by the court.

Criminal Law & Procedure: Habeas Corpus: Standards of Review

[HN8] The phrase "clearly established federal law," for purposes of 28 U.S.C.S. § 2254(d)(1), is the governing legal principle or principles set forth by the United States Supreme Court at the time that the state court renders its decision. A habeas court may therefore look only at the holdings of the United States Supreme Court as they existed at the time of the relevant state court decision to determine whether the state court decision was contrary to, or an unreasonable application of, clearly established federal law.

Constitutional Law: Criminal Process: Right to Confrontation
Criminal Law & Procedure: Evidence: Hearsay Rule & Exceptions: Business Records
[HN9] The business records exception to the hearsay rule is considered a firmly-rooted exception to the hearsay rule and the admission of any evidence pursuant to this exception does not violate the Confrontation Clause.

Constitutional Law: Criminal Process: Right to Confrontation
Evidence: Hearsay Rule & Exceptions: Admissions by Party Opponent
[HN10] When out of court statements which are made by a defendant are admitted as the admission of a party opponent pursuant to Mich. R. Evid. 801(d)(2)(A), there is no violation of the Confrontation Clause.

Constitutional Law: Criminal Process: Right to Confrontation
Criminal Law & Procedure: Evidence: Hearsay Rule & Exceptions: Business Records
[HN11] When nontestimonial hearsay is at issue, it would be wholly consistent with the Framers' design to afford the states flexibility in their development of hearsay law--as does Roberts, and as would an approach that exempted such statements from Confrontation Clause scrutiny altogether. The business records exception to the hearsay rule covers statements that by their nature are not testimonial.

Constitutional Law: Criminal Process: Right to Confrontation
Criminal Law & Procedure: Appeals: Standards of Review: Harmless & Invited Errors
[HN12] A Confrontation Clause error is subject to harmless error analysis.

Criminal Law & Procedure: Appeals: Standards of Review: Harmless & Invited Errors
Criminal Law & Procedure: Habeas Corpus: Standards of Review
[HN13] The standard for showing harmless error on collateral review is "considerably less favorable" to a habeas petitioner than the standard which is applied on

Case 1:00-cv-00727-SSB-TSH    Document 58-3    Filed 07/19/2004    Page 3 of 21

Page 6
314 F. Supp. 2d 700; 2004 U.S. Dist. LEXIS 7105, *

direct review. On direct review, before a federal constitutional error can be held harmless, the court must be able to declare that the error was harmless beyond a reasonable doubt. However, the harmless error test for collateral review is different. A federal court can grant habeas relief only if the trial error had a substantial and injurious effect or influence upon the jury's verdict. Under this standard, a habeas petitioner is not entitled to habeas relief unless he or she can establish that the error resulted in "actual prejudice." Thus, a federal habeas court, in reviewing a state appellate court's harmless error determination, can grant habeas relief only if a habeas petitioner carries the burden of showing that an error had a substantial and injurious effect or influence on the jury's verdict.

Criminal Law & Procedure: Appeals: Prosecutorial Misconduct
Criminal Law & Procedure: Habeas Corpus: Standards of Review
[HN14] When a petitioner seeking habeas relief makes a claim of prosecutorial misconduct, the reviewing court must consider that the touchstone of due process is the fairness of the trial, not the culpability of the prosecutor. On habeas review, a court's role is to determine whether the conduct was so egregious as to render the entire trial fundamentally unfair. Where the case is a habeas case and is not a direct appeal, the inquiry into this issue is less stringent.

Criminal Law & Procedure: Appeals: Prosecutorial Misconduct
Criminal Law & Procedure: Habeas Corpus: Standards of Review
[HN15] When analyzing a claim of prosecutorial misconduct, a habeas court must initially decide whether the challenged statements were improper. If the conduct is improper, the district court must then examine whether the statements or remarks are so flagrant as to constitute a denial of due process and warrant granting a writ of habeas corpus. In evaluating prosecutorial misconduct in a habeas case, consideration should be given to the degree to which the challenged remarks had a tendency to mislead the jury and to prejudice the accused, whether they were isolated or extensive, whether they were deliberately or accidentally placed before the jury, and, except in the sentencing phase of a capital murder case, the strength of the competent proof against the accused.

Criminal Law & Procedure: Trials: Closing Arguments: Reference to Evidence Not Admitted
[HN16] It is improper for a prosecutor during closing arguments to bring to the jury any purported facts which have not been introduced into evidence and which are prejudicial.

Criminal Law & Procedure: Jury Instructions
Criminal Law & Procedure: Habeas Corpus: Standards of Review
[HN17] A jury must be presumed to have followed a trial court's instructions.

Criminal Law & Procedure: Appeals: Prosecutorial Misconduct
Criminal Law & Procedure: Appeals: Standards of Review: Harmless & Invited Errors
[HN18] Prosecutorial actions which are aimed at discouraging defense witnesses from testifying on a defendant's behalf deprive a defendant of his right to due process. Police actions which intimidate witnesses from testifying may also be attributable to the state in its prosecution. However, even where a defendant can prove prosecutorial misconduct which amounts to substantial interference with a witness, such misconduct will not result in a new trial if it is harmless. A defendant who claims that he was denied the due process of law through government intimidation of defense witnesses must establish, as a "threshold matter," that the actions of the government worked to deprive him of a witness who would have testified on his behalf.

Criminal Law & Procedure: Appeals: Prosecutorial Misconduct
[HN19] Conclusory allegations do not state a claim of prosecutorial misconduct.

Criminal Law & Procedure: Counsel: Effective Assistance: Tests
[HN20] To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two-prong test. First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. Second, the defendant must show that such performance prejudiced his defense.

Criminal Law & Procedure: Counsel: Effective Assistance: Tests
[HN21] The prejudice question, for purposes of an ineffective assistance of counsel claim, is essentially the same inquiry as made in a harmless-error analysis.

Criminal Law & Procedure: Habeas Corpus: Cognizable Issues

314 F. Supp. 2d 700; 2004 U.S. Dist. LEXIS 7105, *

Criminal Law & Procedure: Counsel: Effective Assistance: Tests

[HN22] Where a habeas petitioner cannot affirmatively demonstrate that but for his counsel's error, the outcome of the case would have been different, an error by counsel does not require the issuance of a writ of habeas corpus.

Criminal Law & Procedure: Postconviction Proceedings: Parole

[HN23] Pursuant to 2002 Mich. Pub. Acts 670, effective March 1, 2003, a defendant who was convicted under *Mich. Comp. Laws Ann. § 333.7401(2)(a)(iii)* will be eligible for parole consideration after he or she serves their minimum sentence minus any sentencing credits or after serving five years of the sentence, whatever is less. *Mich. Comp. Laws Ann. § 791.234(12)*.

Criminal Law & Procedure: Habeas Corpus: Exhaustion of Remedies

[HN24] A habeas petitioner's failure to exhaust his or her state court remedies does not deprive a federal court of its jurisdiction to consider the merits of the habeas petition. A habeas petitioner's failure to exhaust his or her state court remedies is not a bar to federal habeas review of the claim when the claim is plainly meritless and it would be a waste of time and judicial resources to require additional court proceedings. *28 U.S.C.S. § 2254(b)(1)(A)(c)*.

Criminal Law & Procedure: Postconviction Proceedings: Parole

[HN25] There is no constitutional right of a convicted person to be conditionally released before the expiration of a valid sentence. Stated more succinctly, there is no federal constitutional right to be paroled.

Criminal Law & Procedure: Postconviction Proceedings: Parole
Constitutional Law: Procedural Due Process: Scope of Protection

[HN26] In Michigan, a prisoner's release on parole is discretionary with the parole board. The Michigan parole statute therefore does not create a right to be paroled. Because the Michigan Parole Board has the discretion whether to grant parole, a prisoner does not have a protected liberty interest in being paroled prior to the expiration of his or her sentence.

Criminal Law & Procedure: Postconviction Proceedings: Parole
Criminal Law & Procedure: Habeas Corpus: Cognizable Issues
 Constitutional Law: Procedural Due Process: Scope of Protection

[HN27] *Mich. Comp. Laws Ann. § 791.233*, Michigan's parole statute, does not create a protected liberty interest in parole, because the statute does not place any substantive limitations on the discretion of the parole board through the use of particularized standards that mandate a particular result. As a result, a habeas petitioner does not have a sufficient liberty interest in his future parole release to be entitled to due process in his parole release proceedings. Where a prisoner has no state created liberty interest in being paroled, he or she may not challenge the procedures used to deny him or her parole. Because a petitioner has no protected liberty interest in parole, he has no right to expect the parole board to follow state procedural rules as a matter of federal due process. Where an inmate has no legitimate expectation of, and thus no liberty interest in, receiving parole, a parole board's failure to set an inmate's release date in accordance with parole guidelines does not give rise to a due process claim.

COUNSEL: Harry Johnson, Petitioner, Pro se, Ionia, MI.

For Paul Renico, Respondent: Laura G. Moody, LEAD ATTORNEY, Michigan Department of Attorney General, Lansing, MI.

JUDGES: HONORABLE PAUL V. GADOLA, UNITED STATES DISTRICT COURT.

OPINIONBY: PAUL V. GADOLA

OPINION: OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

Harry C. Johnson, ("petitioner"), presently confined at the Handlon Correctional Facility in Ionia, Michigan, seeks the issuance of a writ of habeas corpus pursuant to *28 U.S.C. § 2254*. In his application, filed pro se, petitioner challenges his conviction on one count of possession with intent to deliver more than 50 but less than 225 grams of cocaine, *M.C.L.A. 333.7401(2)(a)(iii)*; M.S.A. 14.15 (7401)(2)(a)(iii); and one count of possession with intent to deliver marijuana, *M.C.L.A. 333.7401(2)(d)(iii)*; M.S.A. 14.15(7401)(2)(d)(iii). For the reasons stated below, petitioner's application for writ of habeas corpus shall be denied.

I. Background

Petitioner was convicted of the above offenses following a jury trial in the Kent County Circuit Court.

Police executed a[*2] search warrant at the Residence Inn in Kentwood, Michigan on October 19, 1998. The first officer to enter the motel room observed petitioner and his girlfriend, Tanesha Hines, running from one

Case 1:00-cv-00727-SSB-TSH    Document 58-3    Filed 07/19/2004    Page 5 of 21

Page 8

314 F. Supp. 2d 700; 2004 U.S. Dist. LEXIS 7105, *

room towards another room past the top of the steps. Police recovered a plastic bag containing another plastic bag which contained marijuana, sixteen sandwich bags, and a scale from the toilet tank in the motel bathroom. Police had observed petitioner walking out of this bathroom. Police also discovered a small plastic baggy containing crack cocaine in a pair of blue jeans found between the bed and the wall. Hines informed the police that the jeans were hers. Police also found a vest lying on the other side of this bed. Police recovered five baggies containing seventy-nine grams of cocaine from this vest. Hines told the police that she had seen petitioner wear this vest several days earlier. This cocaine was valued at $16,000.00. Police also found a pair of black fleece pants, inside of which were a pair of fatigue pants. Inside of these fatigue pants police recovered a pager, identification, and a key. The identification belonged to Cory Colbert. Police located several items of clothing and[*3] a wallet with the identification for a Douglas Johnson in a closet in the downstairs bedroom. Police learned that this hotel room had been rented out by a man named Louis James.

Petitioner and Hines were arrested. Petitioner told the police his name was James Thomas. When petitioner was booked at the police station, he informed the police that Louis James was his uncle. One of the officers also went to the Kent County Jail and reviewed the booking records for Cory Colbert. Over defense objection, the officer testified that the county jail's records indicated that Cory Colbert was admitted to the jail on September 11, 1998 and was still incarcerated at the jail on October 17, 18, and 19, 1998. This officer also spoke with Cory Colbert, who verified this information.

Tanesha Hines testified that she went to the Residence Inn on October 19, 1998, because petitioner called her and asked her to come over to the motel to visit with him. Hines and petitioner were smoking marijuana on the bed when the police raided the motel room. Hines denied telling the police that she had seen petitioner pick a bag up off the dresser and run towards the motel room's bathroom at the time of the raid. Hines[*4] denied telling the police that she had seen petitioner wearing the vest that the cocaine was recovered from.

On cross-examination, Hines claimed that the prosecutor and the detective in charge of the case had spoken with her on the previous day and had attempted to get her to say something which was untrue. However, Hines denied being intimidated or threatened in any way. Hines admitted that she became emotional and left the room crying after speaking with the prosecutor and the detective, because they were not happy with the answers that she gave them, telling her that her answers were not the same as the ones that she had given the police on the

night of her arrest. When Hines was asked about the vest by the prosecutor and the detective, she informed them that she thought that petitioner actually had been wearing an olive jumpsuit and not the vest. Hines indicated that petitioner was wearing the same jumpsuit at his trial that he wore at the time of his arrest.

Detective O'Brien was recalled. O'Brien indicated that Hines had told her at the time of her arrest that she had seen petitioner pick a plastic bag up off the dresser and run towards the motel room's bathroom at the time[*5] of the raid. Hines had also told O'Brien that she had seen petitioner wearing the vest where the cocaine had been found the previous Sunday. Hines also informed the police that she and petitioner had been at the motel room since the day before the police raid.

Petitioner testified that he was visiting his girlfriend at the motel room for five or six hours. Petitioner admitted smoking marijuana, but denied renting the room or selling narcotics. Petitioner denied possessing the cocaine recovered from the vest. Petitioner admitted that Douglas Johnson was his brother and that his brother's identification had been found in the closet of the downstairs bedroom of the motel. Petitioner admitted that Louis James was his uncle.

Petitioner's conviction was affirmed on appeal. *People v. Johnson, 2001 Mich. App. LEXIS 2675, 225867 (Mich.Ct.App. December 14, 2001)*; lv. den. *467 Mich. 852, 649 N.W. 2d 79 (2002)*. Petitioner now seeks the issuance of a writ of habeas corpus on the following grounds:

I. Whether the trial court's numerous prejudicial evidentiary errors, coupled with the trial court's evident lack of impartiality, denied Mr. Johnson a fair trial.

II. The prosecutor's[*6] numerous errors in closing argument denied defendant a fair trial.

III. Whether defendant was denied effective assistance of counsel when counsel failed to object to [the] instruction on impeachment of credibility with criminal history; [and] failed to examine transcripts for error before allowing jury to examine transcripts.

IV. Whether prosecution engaged in improper conduct by threatening witness Hines [the] day before her testimony in this trial, in an attempt to have Ms. Hines perjure herself.

V. Whether defendant is being denied time reduction under PA 670, do (sic) to trial court's error?

II. Standard of Review

314 F. Supp. 2d 700; 2004 U.S. Dist. LEXIS 7105, *

[HN1] An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
(2) resulted in a decision that was based on an unreasonable determination of the[*7] facts in light of the evidence presented in the State court proceeding.

*28 U.S.C. § 2254(d).*

[HN2] A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. An "unreasonable application" occurs when the state court identifies the correct legal principle from a Supreme Court's decision but unreasonably applies that principle to the facts of the prisoner's case. *Williams v. Taylor, 529 U.S. 362, 412-13, 146 L. Ed. 2d 389, 120 S. Ct. 1495 (2000).* A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id. at 411.*

III. Discussion

A. Claim # 1. The *Confrontation Clause* claim.

Petitioner first claims that his right of confrontation was violated when the trial court permitted Detective O'Brien to[*8] testify about information that she had received from petitioner's and Cory Colbert's booking records. The Michigan Court of Appeals rejected this claim, finding that these booking information sheets were properly admitted pursuant to the business records exception to the hearsay rule found in *M.R.E. 803(6). People v. Johnson, 2001 Mich. App. LEXIS 2675 at *4.* The Michigan Court of Appeals further found that petitioner's booking information sheet was admissible as a party opponent admission pursuant to *M.R.E. 801(d)(2)(A). 2001 Mich. App. LEXIS 2675 at *3.*

The Court initially notes that [HN3] to the extent that petitioner is contending that the state trial court improperly determined that these statements were admissible under Michigan law, he would not be entitled to habeas relief on such a claim. What is or is not hearsay

evidence in a state court trial is governed by state law. *Gochicoa v. Johnson, 118 F.3d 440, 445 (5th Cir. 1997); Diaz v. Curtis, 2000 U.S. Dist. LEXIS 17249, 2000 WL 1769571, * 7 (E.D. Mich. October 31, 2000).* In this case, the Michigan Court of Appeals determined that information from petitioner's and Colbert's booking information sheets was properly admitted under the business records exception[*9] to the hearsay rule and further held that petitioner's statements were also admissible as the admission of a party opponent. [HN4] A federal habeas court is bound by a state appellate court's ruling that certain testimony is not hearsay, because state law governs questions concerning the admissibility of evidence. See *Maynard v. Lockhart, 981 F.2d 981, 986 (8th Cir. 1992).* Any claim that the trial court improperly admitted this evidence as an exception to the hearsay rule is therefore noncognizable in federal habeas review. See e.g. *Cathron v. Jones, 190 F. Supp. 2d 990, 996 (E.D. Mich. 2002)* (petitioner's claim that state court erred in admitting hearsay testimony under state evidentiary rule governing declarations against penal interest not cognizable in federal habeas review, where the claim alleged a violation of state law, not a violation of federal constitutional rights).

The Court further notes that the Michigan Court of Appeals did not explicitly address petitioner's *Confrontation Clause* claim in its opinion. [HN5] When a state court finds hearsay evidence admissible under a state-law hearsay exception, but does not explicitly consider the hearsay's admissibility[*10] under the *Confrontation Clause*, a federal habeas court should review the state court decision by assessing whether it was reasonably supported by the record and whether its legal analysis is constitutionally sound. See *Woodward v. Williams, 263 F.3d 1135, 1140 (9th Cir. 2001).*

[HN6] The *Confrontation Clause* does not require that no hearsay evidence be introduced against a criminal defendant. *Dutton v. Evans, 400 U.S. 74, 80, 27 L. Ed. 2d 213, 91 S. Ct. 210 (1970).* [HN7] At the time of petitioner's conviction and direct appeal, the United States Supreme Court held that the veracity of hearsay statements is sufficiently dependable to allow the untested admission of such statements against an accused when:

1. the evidence falls within a firmly rooted exception to the hearsay rule; or
2. it contains particularized guarantees of trustworthiness such that adversarial testing would be expected to add little, if anything, to the statement's reliability.

*Ohio v. Roberts, 448 U.S. 56, 66, 65 L. Ed. 2d 597, 100 S. Ct. 2531 (1980).*

314 F. Supp. 2d 700; 2004 U.S. Dist. LEXIS 7105, *

Thus, at the time of petitioner's trial and direct appeal, certain types of hearsay were considered admissible if the declarant was unavailable[*11] and the statement bore adequate indicia of reliability. *Bruton v. Phillips, 64 F. Supp. 2d 669, 678 (E.D. Mich. 1999).*

On March 8, 2004, the United States Supreme Court overruled its holding in *Ohio v. Roberts, supra,* and held that out of court statements that are testimonial in nature are barred by the *Sixth Amendment Confrontation Clause* unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness, regardless of whether such statements are deemed reliable by the court. *Crawford v. Washington, 158 L. Ed. 2d 177, 124 S. Ct. 1354, 1365-74 (2004).* At the time of petitioner's conviction and direct appeal, however, Ohio v. Roberts was still good law. [HN8] The phrase "clearly established federal law", for purposes of *§ 2254(d)(1)*, is the governing legal principle or principles set forth by the United States Supreme Court at the time that the state court renders its decision. *Lockyer v. Andrade, 538 U.S. 63, 71-72, 155 L. Ed. 2d 144, 123 S. Ct. 1166 (2003).* A habeas court may therefore look only at the holdings of the United States Supreme Court as they existed at the time of the relevant state[*12] court decision to determine whether the state court decision was contrary to, or an unreasonable application of, clearly established federal law. *Mitzel v. Tate, 267 F.3d 524, 530-31 (6th Cir. 2001).* Because *Ohio v. Roberts, supra,* was still good law at the time that the Michigan Court of Appeals rendered its decision in this case, this Court must determine whether the Michigan Court of Appeals' decision was contrary to, or an unreasonable application of, the Supreme Court's holding in Ohio v. Roberts.

The Michigan Court of Appeals indicated that the information contained within both petitioner's and Colbert's booking information sheets was properly admitted under the business records exception to the hearsay rule. [HN9] The business records exception to the hearsay rule is considered a firmly-rooted exception to the hearsay rule and the admission of any evidence pursuant to this exception does not violate the *Confrontation Clause. Ohio v. Roberts, 448 U.S. at 65, n. 8 ; United States v. Waters, 158 F.3d 933, 940-41 (6th Cir. 1998); Perfetto v. Hoke, 898 F. Supp. 105, 112 (E.D.N.Y. 1995).* The admission[*13] of information from petitioner's and Colbert's booking information sheets pursuant to the business records exception contained in *M.R.E. 803(6)* did not violate petitioner's *Sixth Amendment* right to confrontation.

Petitioner's statement to the police at the time of his booking was also admissible as the admission of a party opponent. [HN10] When out of court statements which

are made by a defendant are admitted as the admission of a party opponent pursuant to *M.R.E. 801(d)(2)(A),* there is no violation of the *Confrontation Clause. United States v. Zizzo, 120 F.3d 1338, 1354 (7th Cir. 1997); United States v. Moran, 759 F.2d 777, 786 (9th Cir. 1985); United States v. Rios Ruiz, 579 F.2d 670, 676 (1st Cir. 1978); Avincola v. Stinson, 60 F. Supp. 2d 133, 154 (S.D.N.Y. 1999).* Therefore, the admission of petitioner's out of court statements at his trial would not violate the *Confrontation Clause.*

The Court notes that even if the Supreme Court's holding in *Crawford v. Washington, supra,* was controlling in this case, the admission of this evidence would not violate the *Sixth Amendment.* The Supreme Court in Crawford[*14] noted that [HN11] when nontestimonial hearsay is at issue, it would be "wholly consistent with the Framers' design to afford the states flexibility in their development of hearsay law- - as does Roberts, and as would an approach that exempted such statements from *Confrontation Clause* scrutiny altogether." *Crawford v. Washington, 124 S. Ct. at 1374.* The Supreme Court noted that the business records exception to the hearsay rule "covered statements that by their nature were not testimonial." *Id. at 1367.* Because petitioner's and Colbert's statements to the police during the bookings were admitted pursuant to the business records exception, they are by their nature nontestimonial, and their admission would not violate the holding in *Crawford v. Washington, supra.*

Petitioner further contends that the trial court erred when it permitted Detective O'Brien to testify that she had spoken with Cory Colbert the night before trial and he had indicated that he had been incarcerated at the Kent County Jail since September 11, 1998. The Michigan Court of Appeals concluded that the admission of Colbert's statement to Officer O'Brien was harmless error, in light[*15] of the fact that Colbert's incarceration had already been proven by properly admitted evidence. *People v. Johnson, 2001 Mich. App. LEXIS 2675 at *7.*

[HN12] A *confrontation clause* error is subject to harmless error analysis. *Delaware v. Van Arsdall, 475 U.S. 673, 684, 89 L. Ed. 2d 674, 106 S. Ct. 1431 (1986); Alder v. Burt, 240 F. Supp. 2d 651, 676 (E.D. Mich. 2003).* [HN13] The standard for showing harmless error on collateral review is "considerably less favorable" to a habeas petitioner than the standard which is applied on direct review. On direct review, before a federal constitutional error can be held harmless, the court must be able to declare that the error was harmless beyond a reasonable doubt. However, the harmless error test for collateral review is different. A federal court can grant habeas relief only if the trial error had a substantial and injurious effect or influence upon the jury's verdict. *Ford*

Case 1:00-cv-00727-SSB-TSH    Document 58-3    Filed 07/19/2004    Page 8 of 21

Page 11

314 F. Supp. 2d 700; 2004 U.S. Dist. LEXIS 7105, *

v. Curtis, 277 F.3d 806, 809 (6th Cir. 2002) (quoting Brecht v. Abrahamson, 507 U.S. 619, 637, 123 L. Ed. 2d 353, 113 S. Ct. 1710 (1993)). Under this standard, a habeas petitioner is not entitled to habeas relief unless he or she can establish that the trial error[*16] resulted in "actual prejudice." Id. Thus, a federal habeas court, in reviewing a state appellate court's harmless error determination, can grant habeas relief only if a habeas petitioner carries the burden of showing that a *confrontation clause* error had a substantial and injurious effect or influence on the jury's verdict. *Bulls v. Jones,* 274 F.3d 329, 335 (6th Cir. 2001); *Alder v. Burt,* 240 F. Supp. 2d at 676.

In this case, any error in the admission of Colbert's hearsay statement was harmless, because the information contained in it was brought before the jury through other admissible forms of evidence. *Hill v. Brigano,* 199 F.3d 833, 847 (6th Cir. 1999). Petitioner is therefore not entitled to habeas relief on his first claim.

B. Claims # 2 and # 4. The prosecutorial misconduct claims.

The Court will consolidate petitioner's second and fourth claims because they are interrelated.

[HN14] When a petitioner seeking habeas relief makes a claim of prosecutorial misconduct, the reviewing court must consider that the touchstone of due process is the fairness of the trial, not the culpability of the prosecutor. On habeas review, [*17] a court's role is to determine whether the conduct was so egregious as to render the entire trial fundamentally unfair. *Serra v. Michigan Department of Corrections,* 4 F.3d 1348, 1355-56 (6th Cir. 1993). Because this case is a habeas case and is not a direct appeal, the inquiry into this issue is less stringent. *Millender v. Adams,* 187 F. Supp. 2d 852, 875 (E.D. Mich. 2002). [HN15] When analyzing a claim of prosecutorial misconduct, a court must initially decide whether the challenged statements were improper. *Boyle v. Million,* 201 F.3d 711, 717 (6th Cir. 2000). If the conduct is improper, the district court must then examine whether the statements or remarks are so flagrant as to constitute a denial of due process and warrant granting a writ. Id. In evaluating prosecutorial misconduct in a habeas case, consideration should be given to the degree to which the challenged remarks had a tendency to mislead the jury and to prejudice the accused, whether they were isolated or extensive, whether they were deliberately or accidentally placed before the jury, and, except in the sentencing phase of a capital murder case, the strength of the competent[*18] proof against the accused. *Serra,* 4 F.3d at 1355-56.

In his second claim, petitioner contends that the prosecutor engaged in misconduct during closing argument when he waved papers purporting to be Colbert's booking records from the jail even though the records themselves were never admitted into evidence. The Michigan Court of Appeals rejected petitioner's claim that the prosecutor's conduct deprived petitioner of a fair trial, by noting that even though Colbert's booking records were not introduced into evidence at trial, the officer testified that she had reviewed Colbert's booking records which showed that Colbert had been incarcerated since September 11, 1998. The Michigan Court of Appeals further noted that the jury was instructed to consider only the sworn testimony and exhibits introduced at trial and that the lawyers' arguments and statements were not evidence. Lastly, the Michigan Court of Appeals noted that there was no indication that the jurors were able to discern the contents of the papers that the prosecutor waved in the air. *People v. Johnson,* 2001 Mich. App. LEXIS 2675 at *7.

[HN16] It is improper for a prosecutor during closing arguments to bring to the jury any[*19] purported facts which have not been introduced into evidence and which are prejudicial. *Byrd v. Collins,* 209 F.3d 486, 535 (6th Cir. 2000) (internal citations omitted).

In the present case, any improper insinuation by the prosecutor during closing argument that the papers that he was waving were Colbert's booking records was harmless, in light of the testimony from Detective O'Brien that she had reviewed Colbert's booking records and that they established that Colbert had been incarcerated since September 11, 1998. See e.g. *United States v. Neal,* 27 F.3d 1035, 1051 (5th Cir. 1994) (prosecutor's alleged misconduct of allowing government witness to improperly display to the jury a pouch containing a syringe and pills, which were seized from defendant at the time of his arrest but not admitted into evidence, did not constitute reversible error, where the witness had already testified that such items had been seized from the defendant); *Perez v. Jones,* 2004 U.S. Dist. LEXIS 8319, 2004 WL 192820, * 8-9 (E.D. Mich. January 26, 2004) (any improper display of adult videos and magazine which had been seized from petitioner's house but not admitted into evidence was harmless,[*20] in light of the testimony from several witnesses at trial, including petitioner, that petitioner owned adult videos and magazines). Additionally, the judge instructed the jury that evidence consisted only of the sworn testimony of witnesses and any exhibits that had been admitted into evidence and advised the jury that the lawyers' arguments were not evidence. [HN17] A jury must be presumed to have followed a trial court's instructions. See *Washington v. Hofbauer,* 228 F.3d 689, 706. Because the trial judge informed the jury that the lawyers' arguments were not

314 F. Supp. 2d 700; 2004 U.S. Dist. LEXIS 7105, *

evidence, federal habeas relief is not warranted. See *Byrd v. Collins, 209 F.3d at 532-33.*

In his fourth claim, petitioner contends that he was deprived of a fair trial because the prosecutor and the detective threatened and intimidated Tanesha Hines to attempt to get her to commit perjury. The Michigan Court of Appeals rejected this claim, noting that Hines testified at trial that the prosecutor did not threaten or intimidate her and there was no indication that Hines committed perjury. In fact, the Michigan Court of Appeals noted that Hines's testimony actually benefited petitioner, because she testified[*21] that she never saw petitioner wear the vest which contained the cocaine. *People v. Johnson, 2001 Mich. App. LEXIS 2675 at *16.*

[HN18] Prosecutorial actions which are aimed at discouraging defense witnesses from testifying on a defendant's behalf deprive a defendant of his right to due process. *United States v. Pierce, 62 F.3d 818, 832 (6th Cir. 1995)* (citing to *Webb v. Texas, 409 U.S. 95, 34 L. Ed. 2d 330, 93 S. Ct. 351 (1972)).* Police actions which intimidate witnesses from testifying may also be attributable to the state in its prosecution. *Guerra v. Collins, 916 F. Supp. 620, 626 (S.D. Tex. 1995).* However, even where a defendant can prove prosecutorial misconduct which amounts to substantial interference with a witness, such misconduct will not result in a new trial if it is harmless. *United States v. Foster, 128 F.3d 949, 953 (6th Cir. 1995)* (citing to *Bank of Nova Scotia v. United States, 487 U.S. 250, 255-56, 101 L. Ed. 2d 228, 108 S. Ct. 2369 (1988)* (additional citations omitted)). A defendant who claims that he was denied the due process of law through government intimidation of defense witnesses must establish, as a "threshold matter", that[*22] the actions of the government "worked to deprive him of a witness who would have testified on his behalf." *Wynne v. Renico, 279 F. Supp. 2d 866, 888 (E.D. Mich. 2003)* (quoting *United States v. Stewart, 820 F.2d 370, 375 (11th Cir. 1987)).*

Petitioner's claim fails for two reasons. First, petitioner has presented no evidence that the prosecutor and the detective actually threatened or intimidated Hines. Hines testified at trial that she had not been intimidated or threatened. [HN19] Conclusory allegations do not state a claim of prosecutorial misconduct. See *Gregg v. Scully, 657 F. Supp. 257, 259 (S.D.N.Y. 1987).* More importantly, assuming that the prosecutor and the detective attempted to threaten or intimidate Hines into not testifying for petitioner, any such threats were harmless in light of the fact that Hines testified favorably for petitioner. *Wynne v. Renico, 279 F. Supp. 2d at 888.* In light of the fact that Hines was not dissuaded from testifying favorably for petitioner, there is no due process

violation and petitioner is therefore not entitled to habeas relief on his fourth claim. Id.

C. Claim # 3. The ineffective [*23] assistance of counsel claims.

Petitioner next contends that he was deprived of the effective assistance of counsel.

[HN20] To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two-prong test. First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the *Sixth Amendment. Strickland v. Washington, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984).* In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. Id. In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland, 466 U.S. at 689.* Second, the defendant must show that such performance prejudiced his defense. Id.

1. Failure to object to an erroneous jury instruction.

Petitioner first alleges that his trial counsel was ineffective for failing to object to the trial court's erroneous jury instruction that[*24] the jury could consider petitioner's prior assault with intent to do great bodily harm conviction to determine his credibility. Petitioner contends that this instruction should not have been given because under Michigan law, only a felony which contains an element of dishonesty, false statement, or theft can be admitted for impeachment purposes and the crime of assault with intent to do great bodily harm does not contain any of those elements.

The Michigan Court of Appeals agreed that the trial court erred in instructing the jury that this assault conviction could be used to determine petitioner's credibility. However, the Michigan Court of Appeals further noted that the prosecutor did not use this assault conviction to impeach petitioner's credibility. Instead, petitioner had introduced this conviction into evidence during the defense case to explain why he had given the police a false name at the time of his arrest. The Michigan Court of Appeals further ruled that petitioner was unable to show that he was prejudiced by counsel's failure to object to this instruction, because it was clear that the trial court's intent in giving this instruction was to prevent the jury from using[*25] petitioner's prior assault

conviction to find him guilty of these charges. *People v. Johnson, 2001 Mich. App. LEXIS 2675 at \*13.*

[HN21] The prejudice question, for purposes of an ineffective assistance of counsel claim, "is essentially the same inquiry as made in a harmless-error analysis." *Arnold v. Evatt, 113 F.3d 1352, 1362 (4th Cir. 1997).* In *United States v. Malasanos, 472 F.2d 642, 644-45 (7th Cir. 1973),* the Seventh Circuit held that the giving of an instruction on impeachment by a prior conviction did not warrant reversal, notwithstanding the fact that the defendant's prior conviction was too old to have been admitted against him, where the defendant's prior conviction was not put before the jury in the form of an impeaching question by the prosecutor, but was part of the defendant's direct testimony to show lack of intent. The Seventh Circuit further concluded that the giving of such an instruction was harmless because the instruction merely reflected on the defendant's credibility, but at the same time instructed the jurors that the prior conviction could not be used as evidence that the defendant committed the crime charged. *Id.*

In the present case, the[\*26] giving of this erroneous jury instruction by the trial court was harmless error and petitioner was therefore not prejudiced by counsel's failure to object to the giving of this instruction. Petitioner's prior assault conviction had not been used by the prosecutor to impeach petitioner's credibility, but had been admitted by the defense to explain petitioner's use of an alias at the time of his arrest. Secondly, while this instruction informed the jury that they could use this prior assault conviction to determine petitioner's credibility, the instruction also informed the jury that this prior conviction could not be used as substantive evidence to determine petitioner's guilt to this offense. Finally, the trial court's erroneous instruction that the jury could consider petitioner's prior assault conviction to determine his credibility was harmless error, because petitioner's credibility was already called into question by some of the evidence at trial, and thus, his credibility was not compromised only by this erroneous jury instruction. See *People v. Ortiz, 249 Mich. App. 297, 312-13, 642 N.W.2d 417; 249 Mich. App. 297, 642 N.W. 2d 417 (2001).*

In this case, [HN22] petitioner cannot affirmatively[\*27] demonstrate that but for his counsel's error in failing to object to the improper impeachment instruction, the outcome of the case would have been different. Therefore, any error by counsel in this regard does not require the issuance of a writ of habeas corpus. *Knapp v. White, 296 F. Supp. 2d 766, 782 (E.D. Mich. 2003).*

2. Failure to review the trial transcripts for typographical errors before the transcripts were sent into the jury room.

Petitioner next claims that his trial counsel was ineffective for failing to review the trial transcripts for typographical errors before they were sent into the jury room upon the jurors' request. Petitioner claims that the typographical error involves what petitioner was wearing at the time of his arrest. Ms. Hines and two police officers both testified that petitioner was wearing a black jumpsuit at the time of his arrest. However, later during Hines's testimony, the transcript states that she indicated that petitioner was wearing an olive jumpsuit at the time of his arrest. Petitioner claims that this was a typographical error which prejudiced him, because it would have led the jury to believe that petitioner had more[\*28] than one jumpsuit at the motel and would bolster the prosecution's theory that petitioner had been staying for a prolonged period at the motel.

The Michigan Court of Appeals rejected this claim, finding the presence of an olive jumpsuit at the motel to be "of little significance" in light of other evidence, including Hines's testimony, which established petitioner's prolonged presence at the motel. *People v. Johnson, 2001 Mich. App. LEXIS 2675 at \*14.*

In the present case, petitioner is not entitled to habeas relief on this claim, because he has failed to show that he was prejudiced by counsel's failure to object to the alleged typographical error in the transcript. See e.g. *Jackson v. State, 252 Ga. App. 157, 162-63, 555 S.E.2d 835; 252 Ga. App. 157, 555 S.E. 2d 835 (Ga. App. 2001)* (failure of counsel, who represented defendant on new trial motion, to determine whether the trial transcript had been altered did not establish ineffective assistance of counsel, where the defendant failed to articulate how the transcript errors prejudiced him). In this case, there was abundant evidence linking petitioner to this motel room. The motel room had been taken out in petitioner's uncle's name. The identification[\*29] of petitioner's brother was found in the downstairs bedroom of the motel room. Tanesha Hines indicated that she and petitioner had been at the motel for one day prior to the raid. In light of this evidence, the fact that the jury may have erroneously believed that petitioner may have had more than one jumpsuit at the motel would have added little to the prosecutor's case. Furthermore, Hines had testified at trial that petitioner was wearing the same jumpsuit at trial, which was black, that he had been wearing at the time of his arrest. The jury was therefore aware that petitioner had been wearing this jumpsuit, and not an olive one, at the time of his arrest. Accordingly, petitioner was not prejudiced by his counsel's failure to review the trial transcripts prior to their submission to the jury.

Therefore, petitioner's ineffective assistance of counsel claims are without merit.

D. Claim # 5. The sentence reduction claim.

In his final claim, petitioner alleges that he is being denied time reduction against his ten-year minimum sentence for possession with intent to deliver over 50 but less than 225 grams of cocaine, because the judgment of sentence erroneously indicates that[*30] petitioner was convicted of a lesser drug offense for which he would not be entitled to such a reduction. [HN23] Pursuant to 2002 Public Act 670, effective March 1, 2003, a defendant like petitioner who was convicted under *M.C.L.A. 333.7401(2)(a)(iii)*, will be eligible for parole consideration after he or she serves their minimum sentence minus any sentencing credits or after serving five years of the sentence, whatever is less. See *M.C.L.A. 791.234(12)*. M.S.A. 28.2304(12). Petitioner claims that he is being denied early parole eligibility because the trial court has failed to correct the judgment of sentence to reflect the correct conviction. Respondent notes that this claim is unexhausted because it has never been raised in the Michigan courts, but alternatively argues that the claim should nonetheless be adjudicated because it is a noncognizable claim.

[HN24] A habeas petitioner's failure to exhaust his or her state court remedies does not deprive a federal court of its jurisdiction to consider the merits of the habeas petition. *Granberry v. Greer, 481 U.S. 129, 131, 95 L. Ed. 2d 119, 107 S. Ct. 1671 (1987)*. A habeas petitioner's failure to exhaust his or her state court remedies is not[*31] a bar to federal habeas review of the claim "when the claim is plainly meritless and it would be a waste of time and judicial resources to require additional court proceedings." *Friday v. Pitcher, 200 F. Supp. 2d 725, 744 (E.D. Mich. 2002)*; aff'd *2004 U.S. App. LEXIS 4401, 2004 WL 435856 (6th Cir. March 4, 2004)*; 28 U.S.C. § 2254(b)(1)(A). Because petitioner's claim lacks merit, in the interests of efficiency and justice, the Court will address petitioner's claim, rather than dismiss the petition on exhaustion grounds. *Welch v. Burke, 49 F. Supp. 2d 992, 998 (E.D. Mich. 1999)*.

[HN25] There is no constitutional right of a convicted person to be conditionally released before the expiration of a valid sentence. *Greenholtz v. Inmates of Nebraska Penal and Correctional Complex, 442 U.S. 1, 7, 60 L. Ed. 2d 668, 99 S. Ct. 2100 (1979)*; see also *Board of Pardons v. Allen, 482 U.S. 369, 377, fn. 8, 96 L. Ed. 2d 303, 107 S. Ct. 2415 (1987)*. Stated more succinctly, there is no federal constitutional right to be paroled. *Gavin v. Wells, 914 F.2d 97, 98 (6th Cir. 1990); Lee v. Withrow, 76 F. Supp. 2d 789, 792 (E.D. Mich. 1999)*.[*32]

[HN26] In Michigan, a prisoner's release on parole is discretionary with the parole board. *Lee v. Withrow, 76 F. Supp. 2d at 792* (citing to In Re Parole of Johnson, 235 Mich. App. 21, 596 N.W.2d 202; 235 Mich. App. 21, 596 N. W. 2d 202, 204 (1999)). The Michigan parole statute therefore does not create a right to be paroled. Id.; see also *Hurst v. Department of Corrections Parole Bd., 119 Mich. App. 25, 29, 325 N.W.2d 615; 119 Mich. App. 25, 325 N.W. 2d 615 (1982)*. Because the Michigan Parole Board has the discretion whether to grant parole, a prisoner does not have a protected liberty interest in being paroled prior to the expiration of his or her sentence. *Canales v. Gabry, 844 F. Supp. 1167, 1171 (E.D. Mich. 1994); Hurst, 119 Mich. App. at 28. M.C.L.A. 791.233*, [HN27] Michigan's parole statute, does not create a protected liberty interest in parole, because the statute does not place any substantive limitations on the discretion of the parole board through the use of particularized standards that mandate a particular result. *Janiskee v. Michigan Dep't of Corrections, 932 F.2d 968, 1991 WL 76181, *1 (6th Cir. 1991)* (citations omitted). [*33] As a result, petitioner does not "have a sufficient liberty interest in his future parole release to be entitled to due process in his parole release proceedings." *Sharp v. Leonard, 611 F.2d 136, 137 (6th Cir. 1979)*. Where a prisoner has no state created liberty interest in being paroled, he or she may not challenge the procedures used to deny him or her parole. See *Johnson v. Tyszkiewicz, 2001 U.S. Dist. LEXIS 3024, 2001 WL 278172, * 4 (E.D. Mich. February 28, 2001); Thomas v. Morgan, 109 F. Supp. 2d 763, 768 (N.D. Ohio 2000)*. Because petitioner had no protected liberty interest in parole, he has no right to expect the parole board to follow state procedural rules as a matter of federal due process. *McCoy v. Grayson, 2001 U.S. Dist. LEXIS 11862, 2001 WL 902618, * 2 (E.D. Mich. June 29, 2001)* (citing to Gavin v. Wells, 914 F.2d at 98 ). As mentioned above, petitioner has no liberty interest in being paroled in Michigan. Where an inmate has no legitimate expectation of, and thus no liberty interest in, receiving parole, a parole board's failure to set an inmate's release date in accordance with parole guidelines does not give rise to a due process claim. [*34] *Parisie v. Morris, 873 F. Supp. 1560, 1562 (N.D. Ga. 1995)*. Accordingly, petitioner is not entitled to habeas relief on his fifth and final claim.

IV. ORDER

Accordingly, the Court DISMISSES WITH PREJUDICE the petition for writ of habeas corpus.

314 F. Supp. 2d 700; 2004 U.S. Dist. LEXIS 7105, *

IT IS FURTHER ORDERED that if Petitioner desires to seek a certificate of appealability ("COA"), Petitioner may file a MOTION for a COA within TWENTY-ONE (21) DAYS of filing a Notice of Appeal and shall support this motion with an appropriate brief, both of which shall comply with the Local Rules of this Court. See *Castro v. United States, 310 F.3d 900, 903 (6th Cir. 2002)* ("We do encourage petitioners as a matter of prudence to move for a COA at their earliest opportunity so that they can exercise their right to explain their argument for issuance of a COA.") (emphasis added)). Respondent may file a response with an appropriate brief, both of which shall comply with the Local Rules, within FOURTEEN (14) DAYS of service of Petitioner's motion for a COA.

s/

HONORABLE PAUL V. GADOLA

UNITED STATES DISTRICT COURT

DATED: April 21, 2004

LEXSEE 316 F. SUPP.2D 744

**EDWARD A. MURILLO, Petitioner, v. MATTHEW FRANK n1, Respondent.**

**n1 Pursuant to Fed. R. Civ. P. § 25(d)(1) Matthew Frank is substituted for the previous defendant Jon Litscher.**

**Case No. 01-C-1285**

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF WISCONSIN**

*316 F. Supp. 2d 744; 2004 U.S. Dist. LEXIS 7983*

**April 6, 2004, Decided**

**PRIOR HISTORY:** *State v. Murillo, 240 Wis. 2d 666, 623 N.W.2d 187, 2001 WI App 11, 2000 Wisc. App. LEXIS 1215 (2000)*

**DISPOSITION:** **[*1]** Petition for writ of habeas corpus granted.

**LexisNexis(R) Headnotes**

**COUNSEL:** For Edward A Murillo, Petitioner: Craig W Albee, LEAD ATTORNEY, Glynn Fitzgerald & Albee, Milwaukee, WI.

For Jon E Litscher, Wisconsin Department of Corrections, Respondents: William L Gansner, LEAD ATTORNEY, Wisconsin Department of Justice, Madison, WI.

**JUDGES:** William C. Griesbach, United States District Judge.

**OPINIONBY:** William C. Griesbach

**OPINION:**

### DECISION AND ORDER

On January 29, 1999, Petitioner Edward A. Murillo was convicted in the Circuit Court for Racine County of first degree intentional homicide and related crimes arising out of the shooting death of Santiago Herrera. He is presently serving a life sentence in the custody of the Wisconsin Department of Corrections. Petitioner claims

that his conviction was unconstitutionally obtained when the state was allowed to introduce in evidence against him his brother's uncross-examined statement implicating him in the crime. Having exhausted his state court remedies, petitioner now seeks federal habeas corpus under *28 U.S.C. § 2254.* For the reasons that follow, I conclude that his petition must be granted.

### I. FACTS

On June 23, 1998, Santiago Herrera was **[*2]** shot and killed while standing on the porch of his home. Moments earlier, Herrera had been seen on the porch with Zebulon Robinson, a minor at the time, who was attempting to purchase marijuana from Herrera. Robinson later told police that while he was standing on the porch with Herrera, he saw three individuals approach. Robinson identified the three as petitioner Edward Murillo, petitioner's brother Luis, and Mario Garcia, all members of the La Familia gang. Robinson told police that Edward Murillo pointed a gun at him and ordered him to get off the porch. Edward then made a statement to Herrera to the effect that "you Kings don't run nothing over here no more so get off our block." Robinson claimed Edward then shot Herrera, handed the gun to Robinson, and told him to get rid of it. Robinson hid the gun at a friend's house. (R. 61, Doc. 28 at 4-22.)

Six days later, police arrested Luis Murillo and, after reading him his *Miranda* rights, questioned him for more than three hours. Luis, who was himself a suspect, initially told police he was not in the area of the shooting, but was with his girlfriend watching television. Investigator William Warmington, who was conducting the interrogation, **[*3]** left the interview room, but



316 F. Supp. 2d 744; 2004 U.S. Dist. LEXIS 7983, *

returned a short time later and told Luis they had checked out his story and it did not hold up. Luis was then informed that he had been identified as a suspect through a Crime Stoppers tip. Luis became more nervous and told the police that he was near the shooting and saw those involved running away, but that he did not do anything. After a break, Luis became increasingly upset and, according to Warmington, was crying, pacing, praying and collapsing. He ultimately told the officer that he saw his brother Edward shoot Herrera and signed an affidavit to that effect. (R.59, Doc. 26 at 36-0; R. 71, Doc. 32 at 41-42, 54-59.)

Petitioner was thereafter arrested and charged with first degree intentional homicide, intentionally giving a dangerous weapon to a child and possession of a firearm by a felon. Prior to trial, the state attempted to take Luis's deposition. Luis refused to testify, however, asserting his *Fifth Amendment* right against self-incrimination. Luis was granted immunity but still refused to testify and was held in contempt. (R. 58, Doc. 25.) Petitioner then filed a motion *in limine* to exclude Luis's statement in the event he persisted in his **[*4]** refusal to testify at trial on the grounds that it was hearsay and admitting the statement would violate his constitutional right to confront a witness against him. (R. 19, Doc. 3.) The trial court denied the motion, holding that the statement fell under both the penal interest and social interest exceptions to Wisconsin's hearsay rule. *See Wis. Stat. § 908.045(4).* n2 The trial court also held that admission of the statement would not violate the *Confrontation Clause of the Sixth Amendment* because both of the exceptions to the hearsay rule under which it found the statement admissible were "firmly rooted" within the meaning of *Ohio v. Roberts, 448 U.S. 56, 66, 65 L. Ed. 2d 597, 100 S. Ct. 2531 (1980).* (R. 59, Doc. 26 at 53-56.)

n2 *Section 908.045* provides that statements against interest are not excluded by the hearsay rule if the declarant is unavailable. Subsection (4) defines a statement against interest as:

> A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability or to render invalid a claim by the declarant against another or to make the declarant an object of hatred, ridicule, or disgrace, that a reasonable person in the declarant's position would not have made the statement unless

> the person believed the statement to be true.

**[*5]**

At trial, as anticipated, Luis refused to testify and did not appear before the jury. The trial court, over the objection of petitioner's attorney, allowed Investigator Warmington to relate Luis's statement to the jury. The trial court also admitted the affidavit that Luis had signed at the conclusion of the interview. On the basis of this and other evidence introduced over the course of the trial, the jury returned verdicts of guilty on each of the charges.

Following the denial of his motion for post conviction relief, petitioner appealed. The Wisconsin Court of Appeals affirmed his conviction, holding that Luis's statement satisfied the social interest exception to Wisconsin's hearsay rule and its admission did not violate the *Sixth Amendment's Confrontation Clause. State v. Murillo, 2001 WI App 11, 240 Wis.2d 666, 623 N.W.2d 187.* Because the court concluded that Luis's statement qualified under the social interest exception, it found it unnecessary to address the question of whether Luis's statement was against his penal interest. And although the court of appeals rejected the trial court's holding that the social interest exception is a firmly rooted hearsay **[*6]** exception, it nevertheless found that the admission of the statement did not violate the *Confrontation Clause* because it bore "particularized guarantees of trustworthiness" sufficient to justify its use at trial. After the Wisconsin Supreme Court denied further review, Edward filed his petition for federal habeas corpus.

## ANALYSIS

### A. The AEDPA Standard

*Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"),* habeas corpus relief for persons serving sentences imposed by state courts may not be granted on any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the United States Supreme Court; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

316 F. Supp. 2d 744; 2004 U.S. Dist. LEXIS 7983, *

*28 U.S.C. § 2254(d).*

Petitioner does not contend that the state court decision in his case was based on an unreasonable determination of the facts. Thus, *§ 2254(d)(2)* is not [*7] at issue. Instead, his claim is that the decision of the Wisconsin Court of Appeals is contrary to, or involved an unreasonable application of, clearly established federal law under *§ 2254(d)(1)*. Under this standard, lower federal courts must look exclusively to Supreme Court precedent in reviewing petitioners' claims. *Sweeney v. Parke, 113 F.3d 716, 718 (7th Cir. 1997).* Petitioners "must show that the Supreme Court has 'clearly established' the propositions essential to their position." *Mueller v. Sullivan, 141 F.3d 1232, 1234 (7th Cir. 1998).*

A state court decision is "contrary to" Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent." *Williams v. Taylor, 529 U.S. 362, 405, 146 L. Ed. 2d 389, 120 S. Ct. 1495 (2000).* The state court decision involves an unreasonable application of such law if "the state court identifies the correct governing legal rule from [Supreme [*8] Court] cases but unreasonably applies it to the facts of the particular state prisoner's case," or "the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id. at 407.*

**B. *Confrontation Clause* Claim**

Federal law, as determined by the Supreme Court, has long recognized the right of a person accused of a crime to confront the witnesses against him and to subject such witnesses to cross-examination, "the greatest legal engine ever invented for the discovery of truth." *California v. Green, 399 U.S. 149, 158, 26 L. Ed. 2d 489, 90 S. Ct. 1930 (1970).* This fundamental right, specifically enumerated in the *Sixth Amendment*, applies to both federal and state prosecutions. *Pointer v. Texas, 380 U.S. 400, 406, 13 L. Ed. 2d 923, 85 S. Ct. 1065 (1965).* But the Court has never held that the *Confrontation Clause* bars the use of all hearsay evidence at a criminal trial. Such an approach, the Court has noted, has been "long rejected as unintended and too extreme." *Ohio v. Roberts, 448 U.S. at 63.* [*9] The issue over which the courts have struggled is in determining what statements can be admitted without running afoul of the *Sixth Amendment*.

There is no doubt that the decision of the Wisconsin Court of Appeals in petitioner's case is contrary to clearly established federal law as it presently exists. This is because the United States Supreme Court has recently held unequivocally that the *Sixth Amendment Confrontation Clause* bars the use against a defendant of statements made by a non-testifying witness in the course of an interview with the police. In *Crawford v. Washington, 158 L. Ed. 2d 177, 124 S. Ct. 1354 (2004),* the Court reversed a defendant's conviction for assault and attempted murder on the ground that the introduction at his trial of a recorded statement by his wife made during a police interrogation violated his *Sixth Amendment* right to confront the witnesses against him. The Court held that the testimonial statement n3 of a witness who is unavailable can only be admitted at trial if the defendant has had a prior opportunity to cross-examine that witness. *Id. at 1374.* In so ruling, the Court explicitly rejected its language in *Ohio v. Roberts* [*10] that appeared to permit the use of such statements when the witness was unavailable as long as the statement bore "adequate indicia of reliability." *448 U.S. at 66.* Thus, if the Wisconsin Court of Appeals were to rule the same way today, its decision would unquestionably be "contrary to clearly established federal law, as determined by the United States Supreme Court" and petitioner would be entitled to relief under *§ 2254(d)(1)*.

n3 Although the Court declined in *Crawford* to provide a complete definition of what it meant by "testimonial" statements, there is no doubt it is intended to include the kind of statement at issue here. "Whatever else the term covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." *124 S. Ct. at 1374.*

But because *Crawford* was decided after petitioner's conviction became final, it cannot be used to determine whether the state court decision is contrary to established [*11] federal law. It is to federal law as it existed at the time of the state court decision that a federal habeas court must look in deciding whether the petition should be granted. *Schaff v. Snyder, 190 F.3d 513, 522 (7th Cir. 1999)* ("A petitioner must have a Supreme Court case to support his claim, and that Supreme Court decision must have clearly established the relevant principle as of the time of his direct appeal."). The only exception to this principle is that Supreme Court cases that apply what would be considered an "old rule" within the meaning of *Teague v. Lane, 489 U.S. 288, 103 L. Ed. 2d 334, 109 S. Ct. 1060 (1989),* constitute "clearly established federal law as determined by the Supreme Court" under *§ 2254(d)(1)*, and therefore apply retroactively in habeas

Case 1:00-cv-00727-SSB-TSH    Document 58-3    Filed 07/19/2004    Page 16 of 21

Page 4
316 F. Supp. 2d 744; 2004 U.S. Dist. LEXIS 7983, *

cases. *Williams v. Taylor, 529 U.S. at 412*. Thus, *Crawford* would apply only if the rule it announced could be considered "old."

The determination of whether a rule is "old" or "new" for retroactivity purposes is not without its difficulties. *Taylor, 529 U.S. at 381*. According to *Teague*, "a case announces a new rule when it breaks new ground or imposes a new obligation [*12] on the States or the Federal Government." *489 U.S. at 301*. A case announces an old rule, on the other hand, if the result was dictated by precedent that existed at the time the petitioner's conviction became final. *Id.* Although a close question, I conclude that because *Crawford* essentially overruled *Roberts*, at least as it applies to testimonial statements, it's holding must be considered a new rule. n4 I therefore conclude it does not apply and turn to the state of the law as it existed prior to *Crawford*.

> n4 The question is close because although *Crawford* rejected the application of *Roberts* to testimonial statements, the Court had never explicitly applied *Roberts* to such statements. As Justice Scalia noted in his opinion for the *Crawford* majority, "our cases have thus remained faithful to the Framers' understanding: Testimonial statements of witnesses absent from trial have been admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." *124 S. Ct. 1369*. Thus, it can be argued that *Crawford* did not announce a new rule at all.

**[*13]**

Until the Court's recent decision in *Crawford, Ohio v. Roberts* provided the framework for determining the admissibility of out-of-court statements under the *Confrontation Clause*. In *Roberts*, the Court upheld the use at trial of the preliminary hearing testimony of a witness who the state was unable to locate. Despite the fact that the defendant was unable to confront and cross-examine the witness at trial, the Court found no confrontation violation. The unavailability of the witness, combined with the fact that the earlier testimony had been given under oath in a proceeding at which the defendant had an opportunity to cross-examine her, was found sufficient to satisfy the requirements of the *Confrontation Clause*. The Court held that the circumstances under which the prior testimony was given provided "sufficient indicia of its reliability." *448 U.S. at 73*. In summarizing the approach to be taken in determining whether hearsay statements offered against an accused satisfy the *Confrontation Clause*, the Court stated that first, in the usual case, the state must show

that the declarant is unavailable. Second, once unavailability of the witness is established,

> his [*14] statement is admissible only if it bears adequate "indicia of reliability." Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness.

*448 U.S. at 66*.

In cases decided since *Roberts*, the Court has moved away from the requirement that the declarant be shown to be unavailable when the statement being offered is one whose reliability is based on the circumstances under which it is made. In *United States v. Inadi, 475 U.S. 387, 89 L. Ed. 2d 390, 106 S. Ct. 1121 (1986)*, for example, the Court held that co-conspirator statements made in the course and in furtherance of the conspiracy were admissible without a showing that the declarant was unavailable. And in *White v. Illinois, 502 U.S. 346, 355, 116 L. Ed. 2d 848, 112 S. Ct. 736 (1992)*, the Court held that spontaneous declarations, or so-called excited utterances, as well as statements made in the course of receiving medical care, are made under circumstances and in contexts that provide substantial guarantees of their trustworthiness, [*15] notwithstanding the fact that they are not subjected to cross-examination, and thus do not require a showing that the declarant is unavailable.

But while the unavailability rule of *Roberts* was relaxed, the requirement that the offered statement bear "particularized guarantees of trustworthiness," *448 U.S. at 66*, remained in full force. It is on this part of the *Roberts* test that the Wisconsin Court of Appeals relied in upholding the use of Luis's statement in this case and affirming petitioner's conviction. Accepting the state's concession that the social interest exception to Wisconsin's hearsay rule was not "firmly rooted" such that the reliability of the statement could be inferred, the court nevertheless concluded that the statement contained the required "particularized guarantees of trustworthiness" to be admissible.

In so ruling, the court relied primarily upon Luis's emotional condition at the time as reflected in his statements, actions, and demeanor which were described in detail by Investigator Warmington:

> He was very emotional, very upset and very afraid. He was alternately crying with tears just literally streaming down his face, pacing, [*16] his voice was cracking. He asked me several times what

Case 1:00-cv-00727-SSB-TSH    Document 58-3    Filed 07/19/2004    Page 17 of 21

Page 5

316 F. Supp. 2d 744; 2004 U.S. Dist. LEXIS 7983, *

do I do. He collapsed on the floor a
number of times where he just dropped.
He just dropped and was in a position -- in
a seated position on the floor. There were
a couple of times he was in a praying
position on his knees with his elbows on
the chairs, clasped his hands and appeared
to be praying and the entire time he was
continually sobbing and crying.

*623 N.W.2d 187, 189.* Investigator Warmington also
testified that Luis expressed fear of testifying against his
brother. *Id.*

Although the court of appeals recognized that
"suspects have a natural motive to shift the blame to each
other rather than tell the truth," it concluded that was not
the case here. The evidence presented, the court stated,
"convinces us, as it convinced the trial court, that Luis's
statement was not borne out of any motive to shift the
blame." *Id. at 193.* The court therefore concluded that
petitioner's right to confrontation was not violated.

Petitioner contends that the decision of the
Wisconsin Court of Appeals affirming his conviction is
contrary to, or involves an unreasonable application of
clearly established federal law [*17] as enunciated by
the Supreme Court in *Lilly v. Virginia, 527 U.S. 116, 144
L. Ed. 2d 117, 119 S. Ct. 1887 (1999)*, a case decided
four months after his trial. In *Lilly*, the defendant
Benjamin Lilly, his brother Mark, and Mark's roommate
were arrested following a crime spree which included a
series of break-ins and robberies and culminated in the
abduction and murder of Alex DeFilippis. In two tape-
recorded statements, Mark emphasized to police that he
was extremely drunk during the crime spree, but
admitted that he had stolen liquor and beer in the initial
burglary and the robbery of the store, and that he had
handled one of the guns taken in the burglary. When
police suggested his brother may be dragging him into a
life sentence, Mark claimed that his brother had
instigated the car-jacking and ultimately stated it was his
brother who had killed DeFilippis. Later when called as a
witness at Benjamin's trial, however, Mark refused to
testify. The trial court admitted Mark's statement to
police over Benjamin's objection as a statement against
penal interest, and Benjamin was convicted. On appeal,
the Supreme Court of Virginia affirmed, holding that the
introduction of the statement [*18] did not violate the
*Confrontation Clause* because statements against penal
interest were a firmly rooted exception to the hearsay
rule in Virginia. A unanimous Supreme Court reversed.

A plurality of the Court (Justice Stevens, joined by
Justices Souter, Ginsburg and Breyer) held that
"accomplices' confessions that inculpate a criminal
defendant are not within a firmly rooted exception to the

hearsay rule as that concept has been defined in our
*Confrontation Clause* jurisprudence." *527 U.S. at 134.*
The plurality noted that the Court had "over the years
'spoken with one voice in declaring presumptively
unreliable accomplices' confessions that incriminate
defendants.'" *Id. at 131* (quoting *Lee v. Illinois, 476 U.S.
530, 541, 90 L. Ed. 2d 514, 106 S. Ct. 2056 (1986)).*
Thus, Mark's statements did not fall within a firmly
rooted hearsay exception. The plurality then turned to the
question of whether the statements bore "particularized
guarantees of trustworthiness."

The trial court in *Lilly* had held that Mark's
statements "were reliable in the context of the facts and
circumstances under which they were given because (i)
Mark Lilly was cognizant of the import [*19] of his
statements and that he was implicating himself as a
participant in numerous crimes and (ii) elements of his
statement were independently corroborated by other
evidence offered at trial." *527 U.S. at 135* (internal
quotes and brackets omitted). The Commonwealth
argued that these two indicia of reliability, "coupled with
the facts that the police read Mark his *Miranda* rights
and did not promise him leniency in exchange for his
statements, demonstrate that the circumstances
surrounding his statements bore 'particularized
guarantees of trustworthiness' sufficient to satisfy the
*Confrontation Clause's* residual admissibility test." *Id.*

The *Lilly* plurality rejected this argument. It noted
that "the residual 'trustworthiness' test credits the axiom
that a rigid application of the Clause's standard for
admissibility might in an exceptional case exclude a
statement of an unavailable witness that is incontestably
probative, competent, and reliable, yet nonetheless
outside of any firmly rooted hearsay exception." *Id. at
136.* It thus allows admission of statements "when a
court can be confident -- as in the context of hearsay
falling within a firmly [*20] rooted hearsay exception --
that 'the declarant's truthfulness is so clear from the
surrounding circumstances that the test of cross-
examination would be of marginal utility.'" *Id.* (quoting
*Idaho v. Wright, 497 U.S. 805, 820, 111 L. Ed. 2d 638,
110 S. Ct. 3139 (1990)).* The plurality also noted that the
Court had long held that accomplice confessions are
presumptively unreliable. *Id. at 137. See also Lee v.
Illinois, 476 U.S. 530, 545, 90 L. Ed. 2d 514, 106 S. Ct.
2056 (1986)* ("As we have consistently recognized, a
codefendant's confession is presumptively unreliable as
to the passages detailing the defendant's conduct or
culpability because those passages may well be the
product of the codefendant's desire to shift or spread
blame, curry favor, avenge himself, or divert attention to
another.") And while it was true the Court had previously
indicated this presumption of unreliability could
conceivably be rebutted, the plurality stated that the

316 F. Supp. 2d 744; 2004 U.S. Dist. LEXIS 7983, *

Court's prior confrontation cases suggested this was highly unlikely in cases where one suspect accuses another in the course of police interrogation:

> It is highly unlikely that the presumptive unreliability that attaches to accomplices' [**21**] confessions that shift or spread blame can be effectively rebutted when the statements are given under conditions that implicate the core concerns of the old *ex parte* affidavit practice -- that is, when the government is involved in the statements' production, and when the statements describe past events and have not been subjected to adversarial testing.

*527 U.S. at 137.*

Applying these principles to the facts before it, the *Lilly* plurality concluded that Mark's statements implicating his brother were not sufficiently reliable to satisfy the *Confrontation Clause*:

> It is abundantly clear that neither the words that Mark spoke nor the setting in which he was questioned provides any basis for concluding that his comments regarding petitioner's guilt were so reliable that there was no need to subject them to adversarial testing in a trial setting. Mark was in custody for his involvement in, and knowledge of, serious crimes and made his statements under the supervision of governmental authorities. He was primarily responding to the officers' leading questions, which were asked without any contemporaneous cross-examination by adverse parties. Thus, Mark [**22**] had a natural motive to attempt to exculpate himself as much as possible. Mark also was obviously still under the influence of alcohol. Each of these factors militates against finding that his statements were so inherently reliable that cross-examination would have been superfluous.

*527 U.S. at 139.*

Of course, a plurality opinion, by itself, does not clearly establish the law. But when considered with Justice Scalia's succinct concurrence, Justice Stevens' plurality opinion must be viewed as the holding of the Court. "When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may be viewed as

that position taken by those Members who concurred in the judgments on the narrowest grounds . . . .'" *Marks v. United States, 430 U.S. 188, 193, 51 L. Ed. 2d 260, 97 S. Ct. 990 (1977)* (quoting *Gregg v. Georgia, 428 U.S. 153, 169 n. 15, 49 L. Ed. 2d 859, 96 S. Ct. 2909 (1976))*. In his concurring opinion, Justice Scalia characterized the use of Mark Lilly's tape-recorded statements at his brother's trial without making Mark available for cross-examination as "a paradigmatic *Confrontation* [**23**] *Clause* violation." *Id. at 143.* In his view, the only further inquiry required was whether the violation constituted harmless error. It is thus clear that the rationale of the plurality represents the narrowest ground of agreement and may be taken as establishing federal law.

Petitioner argues that the Wisconsin Court of Appeals' decision in his case is contrary to *Lilly* "because it fails to heed *Lilly*'s teaching that custodial statements which shift blame to another without the opportunity for cross-examination are, as a matter of law, unreliable." (Mem. In Supp. of Pet. at 12.) He contends that "*Lilly* established a virtually irrebuttable presumption that custodial statements which shift blame to the defendant are unreliable." (*Id.* at 11.) Petitioner's reading of *Lilly*, however, is overbroad. *Lilly* did not establish an irrebuttable presumption that custodial statements of an accomplice that incriminate a defendant are unreliable as a matter of law. Although the *Lilly* plurality noted that it was highly unlikely the presumption of unreliability that attends such statements could be rebutted, it explicitly recognized that Virginia's contention that the [**24**] presumption may be rebutted was correct. *527 U.S. at 137.* The plurality then proceeded to analyze the specific facts of the case before it and concluded that they were not sufficient to rebut the presumption of unreliability. The possibility that the presumption could be rebutted, however, was implicit in the plurality's analysis. I therefore do not find that the Wisconsin court applied "a rule that contradicts the governing law set forth in [Supreme Court] cases." *Williams v. Taylor, 529 U.S. at 405.*

But a state court decision can still be contrary to clearly established federal law even if the state court does not apply a rule that contradicts Supreme Court precedent. A state court decision will also be found to be contrary to clearly established federal law if "the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a different result from [Supreme Court] precedent." *Id.* It is in this respect that I conclude the court of appeals' decision is contrary to federal law. As to the material facts, this case is indistinguishable from *Lilly*. In both cases, [**25**] the prosecution was allowed to introduce in evidence against the defendant a statement obtained from another suspect

Case 1:00-cv-00727-SSB-TSH    Document 58-3    Filed 07/19/2004    Page 19 of 21

Page 7

316 F. Supp. 2d 744; 2004 U.S. Dist. LEXIS 7983, *

as he was being questioned by police about the same crime for which the defendant was on trial. In both cases, it was the defendant's own brother. Here, Luis had been told he was a suspect in the shooting and, just as the defendant's brother in *Lilly*, had reason to believe that shifting responsibility for the crime to another would be in his interest.

Despite these similarities, the Wisconsin Court of Appeals saw "a world of difference between the facts surrounding Luis's statements and the facts surrounding Mark Lilly's statement." *240 Wis.2d at 680*. It noted that there was a great deal of evidence that demonstrated Luis's actual state of mind and emotional distress, whereas *Lilly* was silent on that issue. The state court also noted that Luis's statement had been admitted as a statement against social interest, while Mark Lilly's was admitted as a statement against penal interest. For this reason, the fact that Mark Lilly was the defendant's brother had not played a role in the *Lilly* plurality's analysis. The state court also stated that "Mark's [*26] statements came in response to an interrogating officer's leading questions, unlike Luis's statements," and that "because Mark was up to his neck in criminal involvement, he had what the Court described as a 'natural motive' to exculpate himself as much as possible, unlike Luis." *Id.* Finally, the state court noted that Mark was under the influence of alcohol, also unlike Luis. Based upon these differences, the court concluded that this case was not governed by *Lilly*.

But it is not enough that there are differences between the two cases. No two cases are ever exactly alike in all respects. To warrant different conclusions, the differences must be material; they must be legally significant. Here, I conclude that they were not.

The trial court and the court of appeals placed great weight on the fact that Luis was emotionally distraught at the time he gave the statement implicating his brother in the shooting. Under the circumstances, such emotional distress was understandable. Luis was, after all, being questioned as a suspect in a murder. What is not clear, however, is how the fact that Luis was distraught makes his claim that his brother was the shooter more reliable. One [*27] might be just as likely to experience emotional distress, fear, and anxiety if he were to falsely accuse his own brother so as to avoid prosecution himself as he would if he were telling the truth. The fact that he was distressed doesn't indicate Luis was being truthful. As the Court noted in *Wright*:

> A statement made under duress ... may happen to be a true statement, but the circumstances under which it is made may provide no basis for supposing that the declarant is particularly likely to be telling the truth -- indeed the circumstances may even be such that the declarant is particularly *un*likely to be telling the truth. In such a case, cross-examination at trial would be highly useful to probe the declarant's state of mind when he made the statements; the presence of evidence tending to corroborate the truth of the statement would be no substitute for cross-examination of the defendant at trial.

*Idaho v. Wright, 497 U.S. at 822-23* (emphasis original).

Nor is it significant that the Wisconsin court analyzed Luis's statement under the "against social interest" exception to the hearsay rule, whereas the *Lilly* plurality considered Mark Lilly's [*28] statement as a statement against penal interest. If anything, this difference makes petitioner's case stronger than *Lilly* since the exception for statements against penal interest is more widely recognized than the "against social interest" exception. This is no doubt based on the common sense judgment that a person is more likely to lie to avoid prison, perhaps for life, than he would to avoid embarrassment or disappointing his family. It is for this reason that the social interest exception was deleted from the proposed draft of the Federal Rules of Evidence and is recognized by only a minority of the States. *See* 2 John W. Strong, *McCormick On Evidence* § 318 at 323 (5th ed. 1999).

In truth, it is questionable whether Luis's statement was even against his social interest as that exception has been traditionally understood. By its terms, the exception applies to statements that would "make the declarant an object of hatred, ridicule or disgrace" such that "a reasonable person in the declarant's position would not have made the statement unless the person believed it to be true." *Wis. Stat. § 908.045(4)*. Here, the court of appeals concluded that [*29] Luis's statement fell within this exception because his brother would have resented him for turning on him, his family would hold him responsible for his brother's arrest and his fellow gang members would likely be angered. *240 Wis.2d at 676*. But in *State v. Stevens, 171 Wis.2d 106, 490 N.W.2d 753 (Ct. App. 1992)*, the Wisconsin courts' most extensive discussion of the exception, the court cautioned against treating accusatory statements as against social interest since statements that accuse another person of a crime will always engender anger and resentment on the part of the person accused, his family and friends. "The exception swallows the rule," the court noted, "if hearsay testimony can be admitted whenever the declarant faces social disapproval simply for making an accusation." *171 Wis.2d at 117*.

Case 1:00-cv-00727-SSB-TSH    Document 58-3    Filed 07/19/2004    Page 20 of 21

Page 8
316 F. Supp. 2d 744; 2004 U.S. Dist. LEXIS 7983, *

The *Stevens* court went on to note that in determining whether a statement is against one's social interest, the crucial issue is the extent of the declarant's personal connection to, or involvement with, the activity reported in his or her declaration. According to the court,

> Just as is the case for statements against penal or [*30] proprietary interest, the social interest exception demands that the declarant have a personal interest in keeping the statement secret. It is that personal interest that guarantees reliability. Without this requirement for personal connection to the event or activity reported in the hearsay statement, the social interest exception would permit the admission of any statement where it can be shown that the declarant will be intensely disliked by someone for making the statement.

*171 Wis.2d at 118*. In this case, Luis's statement purported to relate his brother's conduct, not his own. He acknowledged no conduct on his part that would have made him the object of hatred, ridicule or disgrace. While it is true that accusing his brother may have made people close to his brother angry at him, there was nothing inherent in the statement itself that was against Luis's interest. On the contrary, in light of the fact that police told him he had been named as a suspect in the murder, it was clearly in Luis's interest to shift the blame elsewhere, even if in this case, as in *Lilly*, elsewhere meant his own brother.

The state court also sought to distinguish this case from [*31] *Lilly* by noting that Mark Lilly was "up to his neck in criminal involvement," whereas Luis was not. But the record fails to demonstrate that Luis's position was appreciably different from Mark Lilly's at the time he implicated his brother. Luis had been arrested as a suspect in a murder investigation. He was read his *Miranda* rights and questioned for three hours, during which time he gave several different versions of the events in question. While it is true that Luis was not suspected of other crimes in addition to the murder of Herrera, this fact would not have lessened his desire to avoid a murder charge. Under these circumstances, Luis, like Mark Lilly, had motive to shift the blame for the murder to another. n5

---

n5 Of course, it is true that if Luis was simply attempting to shift the blame from himself, he could have claimed Robinson was the shooter, as his brother did at trial, or that it was Garcia. But in *Lilly*, where a similar option was available to the defendant's brother, the plurality noted that under *Wright*, other evidence in the case cannot be used to establish a statement's reliability: "'To be admissible under the *Confrontation Clause*,' we held, 'hearsay evidence used to convict a defendant must possess indicia of reliability by virtue of its inherent trustworthiness, not by reference to other evidence at trial.'" *Lilly, 527 U.S. at 138* (quoting *Wright, 497 U.S. at 822*).

[*32]

And while it does not appear from Investigator Warmington's testimony that the questions he asked of Luis were leading (in fact, at one point, Luis specifically asked Warmington what he should do)(R. 71, Doc. 32 at 50-55), there was no tape recording made of the interview. In this respect, this case presents a difficulty that *Lilly* did not. Mark Lilly's statement was tape recorded and thus offered the listener an opportunity to evaluate the actual statements that were made based on the sound of Mark's voice and the substance and tone of the questions he was asked. Luis's interrogation, by contrast, was not recorded. Instead, after the interview was completed, Officer Warmington typed an affidavit for Luis's signature, and it was this affidavit that was introduced in evidence against petitioner at trial. In this respect, the procedure used in this case more closely resembles the very procedure that a clear majority of the Supreme Court has now concluded the *Sixth Amendment* was most intended to outlaw. *See Crawford v. Washington, 124 S. Ct. at 1363* ("The principal evil at which the *Confrontation Clause* was directed was the civil-law mode of criminal procedure, and [*33] particularly its use of *ex parte* examinations as evidence against the accused."). *See also White v. Illinois, 502 U.S. at 363* (Thomas, J., concurring) ("Nor does it seem likely that the drafters of the *Sixth Amendment* intended to permit a defendant to be tried on the basis of *ex parte* affidavits found to be reliable.").

In sum, while it is true the facts of the two cases are not identical, I am unable to conclude that the differences are legally significant in light of the Supreme Court's previous rulings in this area. I can find no material difference between the facts of this case and those of *Lilly* that would justify the conclusion here that admission of Luis's statement without affording petitioner an opportunity to confront and cross-examine him did not violate petitioner's rights under the *Confrontation Clause*. I therefore conclude that the decision of the state court of appeals is contrary to clearly established federal law and that the trial court erred in admitting Luis's statement at petitioner's trial.

316 F. Supp. 2d 744; 2004 U.S. Dist. LEXIS 7983, *

## C. Harmless Error

As a general rule, an error that does not cause the petitioner's custody is not a basis for relief under § 2254(d). [*34] In other words, habeas relief should not be granted even if there was constitutional error, unless the error resulted in harm to the petitioner. The standard for whether constitutional error is harmless under § 2254(d) is whether it had "a substantial and injurious effect or influence in determining the jury's verdict. *Brecht v. Abrahamson, 507 U.S. 619, 623, 123 L. Ed. 2d 353, 113 S. Ct. 1710 (1993); Aleman v. Sternes, 320 F.3d 687, 690 (7th Cir. 2003)*. On this question, the burden is on the respondent. "When a habeas court is in grave doubt as to the harmlessness of an error that affects substantial rights, it should grant relief." *O''Neal v. McAninch, 513 U.S. 432, 445, 130 L. Ed. 2d 947, 115 S. Ct. 992 (1995)*. In this case, I am not convinced that the error was harmless.

The state's primary witness against petitioner at his trial was Zebulon Robinson, who testified that he had seen petitioner approach Herrera as he was standing on his porch and shoot him. However, there was no physical evidence that could tie petitioner to the crime and corroborate Robinson's testimony. Petitioner's fingerprints were not found on the gun and none of Herrera's blood was found [*35] on his clothing.

Petitioner's theory of defense, on the other hand, was that Robinson himself was the shooter. In support of this theory, petitioner pointed to evidence that Robinson had been seen arguing with Herrera about drugs shortly before the shooting and had fled from the scene immediately afterwards, taking with him the murder weapon which he gave to a friend to hide. In addition, petitioner was able to challenge Robinson's credibility by introducing evidence of his drug use, his previous delinquency adjudications, and the inconsistencies between his trial testimony, his statements to the police, and his preliminary hearing testimony.

Under these circumstances, the statement of petitioner's own brother naming him as the shooter was an important piece of evidence. It not only provided corroboration for Robinson's version of the events, but because Luis was petitioner's brother, the statement carried added weight, a fact apparently appreciated by the jury. Of the two questions they asked in the course of their deliberations, both related to Luis's statement. They asked for a copy of his sworn statement and why he was not called to the stand to testify. (R. 31, Doc. 10.)

The [*36] Supreme Court of Virginia was confronted with essentially the same question on remand in *Lilly. Lilly v. Commonwealth, 258 Va. 548, 523 S.E.2d 208 (1999)*. Of the three individuals that were present at the murder in that case, only one testified at the defendant's trial. The statement of the defendant's brother was used, as was Luis's statement here, to corroborate that witness's testimony. Under these circumstances, the court concluded, "we must presume that such evidence had the potential to influence the jury into accepting the properly admitted evidence as more credible and, thus, to taint the jury's determination of the facts." *523 S.E.2d at 210*.

I reach the same conclusion here. The admission of Luis's uncross-examined statement at petitioner's trial had a substantial and injurious effect or influence in determining the jury's verdict. The error in admitting the statement was not harmless and the writ sought by petitioner must therefore be granted.

**IT IS THEREFORE ORDERED** that the petition for a writ of habeas corpus should be and hereby is granted. The order will be stayed for a period of 30 days, however, to allow the respondent an opportunity [*37] to determine whether he will appeal this decision. In the event an appeal is filed, the court will consider a motion to extend the stay. If instead the state elects to retry petitioner, he shall be returned to the Circuit Court for Racine County for consideration of bail.

Dated this 6th day of April, 2004.

William C. Griesbach

United States District Judge